HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
CUAUHTEMOC ORTEGA (Bar No. 257443
(E Mail: Cuautemoc_Ortega@fd.org)
Chief Deputy Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(E Mail: Angela_Viramontes@fd.org)
Deputy Federal Public Defender
CAROLINE R. HAHN (Bar No. 231576)
(E Mail: Caroline_Hahn@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
JOHN JACOB OLIVAS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. ED CR 18-231-JGB |
| Plaintiff, | |
| v. | **OPPOSITION TO GOVERNMENT'S** *EX PARTE* **APPLICATION FOR PROTECTIVE ORDER** |
| JOHN JACOB OLIVAS, | |
| Defendant. | |

## I. INTRODUCTION

On April 8, 2019, the government filed an *ex parte* application for an order "limiting use and wider disclosure of discovery," some of which Mr. Olivas has had for seven years. (*Ex Parte*, Dkt. No. 23, at 1.) The government seeks a protective order on all discovery produced thus far, which includes law enforcement investigative reports, defendant's criminal history, extraction reports of cellular telephones used by alleged victims and defendant, emails, text messages, photographs, video recordings, audio recordings, transcripts of video and audio recordings, and cellular telephone subscriber information and call detail records; and on all future discovery. The discovery includes approximately 30,000 pages, 180 video recordings and 2,020 audio recordings. (*Ex Parte*, Dkt. No. 23, ¶¶ 2, 8, 12.) An indictment against Mr. Olivas was filed on August 1, 2018. (Dkt. No. 1.) Mr. Olivas appeared for his Post Indictment Arraignment ("PIA") on August 15, 2018. (Dkt. No. 9.) From August 28, 2018 to November 26, 2018, the government made two productions of discovery. No additional discovery has been produced by the government since November 26, 2018. None of the discovery has been disseminated outside of Mr. Olivas' defense team.

## II. ARGUMENT

The government seeks a protective order to apply retroactively--eight months after producing the first set of discovery in August 2018. The government fails to show good cause that a protective order is necessary in this case. "In this circuit, to prevent access to unfiled discovery materials, 'a party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted.'" *United States v. Patkar*, No. CR 06-00250 JMS, 2008 WL 233062, at *4 (D. Haw. Jan. 28, 2008) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)); *see also United States v. Arredondo*, No. CR-12-1055, 2012 WL 1946955, at *1 (D. Ariz. May 30, 2012) ("The injury must be shown with specificity. Broad allegations of arm, unsubstantiated

by specific examples or articulated reasoning, do not support a good cause showing." (quoting *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)).

The government's request for a protective order fails for two independent reasons.

**A.  First, the government has not met its burden of showing (1) which items of discovery need to be protected, and (2) the specific harm or injury that would result if a protective order is not issued.**

The government simply requests a protective order for "the discovery that has been and will be produced." (*Ex Parte*, Dkt. No. 23, ¶ 8;) (Caroline R. Hahn's Decl. ¶ 2.)  It explains that *some* of the discovery has "PII of victims, witnesses, other individuals unrelated to the case" and "private and sensitive information pertaining to the victims such as photographs and video records of explicit sexual acts", so *all* of the discovery should be covered by a protective order. (*Ex Parte*, Dkt. No. 23, ¶ 3.)  The government makes a blanket statement that a protective order should be entered in this case to "safeguard the PII of individuals unrelated to this case as well as the victims and to protect the privacy interests of the victims." (*Ex Parte*, Dkt. No. 23, ¶ 5.)  However, it fails to identify those "other individuals unrelated to this case" (*Ex Parte*, Dkt. No. 23, ¶ 3) who it seeks to protect, and how these individuals "would be subject to physical or economic harm if their identities were revealed." Fed. R. Crim. Proc. 16(d)(1).

The government also alleges that some of the discovery includes "private and sensitive information pertaining to victims such as photographs and video recordings of explicit sexual acts--*some* of which were made without consent by the victim involved and later transmitted by defendant to the victim in an apparent attempt to blackmail the victim into silence and to humiliate the victim."[1] (*Ex Parte*, Dkt. No. 23, ¶ 3 (emphasis

---

[1] The government cannot claim all photographs were without consent. In most of the sexually explicit photographs, the alleged victim, N.B., is taking the photographs with her cellular phone as she posed with Mr. Olivas.

3

1  added).) However, this discovery is not new.  The government had an obligation to
2  review the discovery before producing it, and now it is trying to force the defense to fix
3  its supposed mistake and thereby, exposing the defense to liability if it does not
4  properly fix that mistake.  *United States v. Pedersen*, No. 3:12-CR-00431-HA, 2014
5  WL 3871197, at *23 (D. Or. Aug. 6, 2014) (recognizing that the prosecution has an
6  obligation to review discovery before producing it).  The prosecutor assigned to this
7  case from August 1, 2018 to March 12, 2018, Assistant United States Attorney
8  ("AUSA"), Joseph B. Widman did not request a protective order on any of the
9  discovery produced by the government.  All the discovery pertaining to this case was
10 produced by AUSA Widman.  He did *not* once ask the defense or the Court to issue a
11 protective order on any of the discovery.  As required by law, AUSA Widman
12 presumably reviewed all the discovery and determined that a protective order was not
13 necessary.  It has been over eight months since the commencement of defendant's case.
14 The lengthy delay in requesting a protective order, especially when the nature of the
15 discovery has not changed, confirms the notion that a protective order is not necessary.
16     Moreoever, the government states that in its "initial assessment, defendant was
17 presumed to be already in possession of the PII and the sexual materials prior to the
18 government's production of the discovery, thereby appearing to obviate the need for a
19 protective order." (*Ex Parte*, Dkt. No. 23, ¶ 4.)  This is still true.  Mr. Olivas was
20 already in possession of much of the discovery produced by the government because he
21 was charged by way of a felony complaint in a Riverside County criminal case, *People*
22 *v. John Jacob Olivas*, Case No. RIF1403028, in 2015.  The victim in that case was the
23 same alleged victim in this case--N.B., and both involve conduct from 2012.
24 Therefore, much of the discovery that the government is seeking to protect has already
25 been in Mr. Olivas' possession for *seven years*.  To retrieve and destroy all that
26 discovery as stated by the government's proposed protective order, would not only be
27 //
28 //

4

burdensome and time consuming for the defense, it would also be ineffective given that the information has been in defendant's possession for years. (*Ex Parte*, Dkt. No. 23, ¶ 14.)

**B.     Second, the protective order that the government seeks is overbroad.**

The government has already produced the discovery and now wants to force the defense to take it back from anyone who received it as part of the defense team's investigation and preparation for trial, including the defendant. (*Ex Parte*, Dkt. No. 23, ¶ 12.)  The government here is trying to put a genie back in its bottle by asking for a take-back on documents it has already shared.  Defense counsel has the right, and the *obligation*, to share the discovery with Mr. Olivas and any experts or witnesses who could be of use in trial. In light of defense counsel's obligation to share the discovery with Mr. Olivas, and anyone else who could aid in the defense, it would be unfair to place a requirement on defense counsel to get all that discovery back.  This protective order potentially exposes the defense to contempt if it cannot retrieve all the documents previously shared -- documents it had an obligation to share with the defendant.

Moreover, the government's proposed protective order requires that any witness or potential witness to whom the defense seeks to show protected information must first agree *in writing* to be bound by the terms of the protective order. (*Ex Parte*, Dkt. No. 23, ¶ 13 (emphasis added).)  If the defense is required to obtain a written statement by all defense witnesses prior to sharing discovery with them, that will severly restrict the defense's ability to investigate, and therefore its ability to provide effective representation in this case. Witnesses are often hesitant to get involved in federal criminal cases at all. They may refuse to be bound in writing to a protective order because signing a document may be intimidating or because they are hostile towards defense attorneys. Moreover, the resulting list would be protected attorney work product. It would therefore be privileged from disclosure and would not have the desired ability to verify that the government hopes it would.  The government's proposed protective order is simply too broad.

### III. CONCLUSION

The defense requests that the Court deny the government's stale *ex parte* application for a protective order because the government has failed to show good cause, especially in light of the fact that no protective order was ever requested by the government when all of the discovery was originally produced to the defense eight months ago. The government has failed to articulate with specificity, the harm that each item of discovery would cause for every victim, witness, or individual unrelated to the case, if a protective order was not issued.

Moreover, all the discovery has been produced to Mr. Olivas already. In fact, Mr. Olivas has had most of the discovery in his possession since 2012. To retrieve all the discovery from Mr. Olivas and other members of the defense team would be unreasonable and burdensome.

Additionally, the government's proposed protective order is overbroad. It is the defense's position that a protective order is not necessary. If, however, the Court is inclined to issue a protective order, the defense requests a hearing in order to require the government to narrowly tailor its protective order to specific types of discovery, and to order the government to provide redacted materials for review by the defendant and unredacted materials to defense counsel subject to the protective order to allow effective trial preparation and conservation of the Federal Public Defender's limited resources.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: April 16, 2019          By  /s/ Caroline R. Hahn
                                   CAROLINE R. HAHN
                                   Deputy Federal Public Defender
                                   Attorney for JOHN JACOB OLIVAS

**DECLARATION OF CAROLINE R. HAHN**

I, Caroline R. Hahn declare:

1. I am an attorney with the Office of the Federal Public Defender for the Central District of California and, along with Chief Deputy Federal Public Defender Cuauhtemoc Ortega and Deputy Federal Public Defender Angela C. C. Viramontes, represent John Jacob Olivas.

2. On April 1, 2019, I had a phone conversation with AUSA Julius Nam, who indicated he would be filing an *ex parte* request for a protective order on all of the discovery previously produced by the government. I asked him what specific discovery he was seeking to protect and why. AUSA Nam was unable to articulate exactly which photographs, video recordings, or witness statements he was seeking to protect, and the specific harm that would follow if no order was issued. Additionally, he indicated there was additional discovery the government was going to produce, but was not seeking a protective order on that discovery as it had to do with Mr. Olivas' internal affairs' records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 16, 2019, at Riverside, California.

*Caroline R. Hahn*
CAROLINE R. HAHN