NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JULIUS J. NAM (Cal. Bar No. 288961)
ELI A. ALCARAZ (Cal. Bar No. 288594)
Assistant United States Attorneys
Riverside Branch Office
    3403 10th Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6942/6938
    Facsimile: (951) 276-6202
    E-mail:    julius.nam@usdoj.gov
                eli.alcaraz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN JACOB OLIVAS, <br><br> Defendant. | No. ED CR 18-231-JGB <br><br> GOVERNMENT'S REPLY IN SUPPORT OF EX PARTE APPLICATION FOR PROTECTIVE ORDER REGARDING PRIVACY OF VICTIM AND WITNESS INFORMATION |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Julius J. Nam and Eli A. Alcaraz, hereby files a reply in support of its ex parte application for an order limiting use and wider disclosure of the discovery ("Protective Order") in this case.

    The opposition filed by defendant JOHN JACOB OLIVAS on April 16, 2019 (Dkt. No. 26) misstates the law, the proposed Protective Order, and the government's good-faith attempts to balance the privacy interests of the victims and third parties against defendant's need to present a vigorous defense. The Protective Order offers a

reasonable path forward that balances the competing interests present in this case by preventing dissemination of the discovery to third parties, permitting defendant to take possession of the discovery except as designated by the government (which will be limited to personally identifiable information of victims and third parties as well as depictions of sexual acts between defendant and the victims), and permitting defendant to review all discovery in the "Defense Team's" possession. The Court should grant the ex parte application (Dkt. No. 23) and issue the Proposed Order as presented.

## I. AMPLE GOOD CAUSE EXISTS TO ISSUE THE PROTECTIVE ORDER

Pursuant to Federal Rule of Criminal Procedure 16(d)(1), "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" (emphasis added). Rule 16 further provides that "[t]he court may permit a party to show good cause by a written statement that the court will inspect ex parte" (emphasis added).

As evident in the language of Rule 16, good cause may be found "[a]t any time" for the issuance of a protective order, not just at the beginning of a case. Contrary to defendant's suggestion in the opposition, good cause to enter a protective order placing reasonable limits on the handling and dissemination of sensitive discovery materials does not expire with passage of time. Nor does a party forfeit its right to seek a protective order by not seeking one at the outset of a case. Regardless of when a party makes a request for a protective order, the Court's inquiry should be whether good cause exists, rather than when the request was made or whether the request should have been made earlier. "At any time," this Court may find

good cause to issue the Protective Order requested by the government, as Rule 16 makes clear.

Furthermore, Rule 16's provision that a court "may permit" a party to make a good cause showing <u>ex parte</u> demonstrates, in turn, that Rule 16 does not require such a showing. Otherwise, Rule 16(d)(1) would have read "shall require," rather than "may permit." Relying on this language, one court in the Ninth Circuit has even held that that Rule 16 "does not require a party to demonstrate good cause; it requires that the Court act for good cause." <u>United States v. Chow</u>, No. CR 14-00196 CRB, 2014 WL 2093488, at *1 (N.D. Cal. May 19, 2014) (explaining Rule 16(d)(1)'s good cause requirement).

Here, in the <u>ex parte</u> application, the government has presented the Court with ample good cause to enter the Protective Order because "[t]he discovery contains a substantial amount of personally identifiable information ('PII') of victims, witnesses, and other individuals unrelated to this case, including personal names, social security numbers, dates of birth, home addresses, and telephone numbers," and "the discovery includes private and sensitive information pertaining to victims such as photographs and video recordings of explicit sexual acts – some of which were made without consent by the victim involved and later transmitted by defendant to the victim in an apparent attempt to blackmail the victim into silence and to humiliate the victim." (<u>Ex Parte</u> Application, Dkt. No. 23, ¶ 3.) That showing of good cause for a protective order is consistent with what this Court has approved in many other cases,

including deprivation of civil rights cases.[1]  Also, as noted in the ex parte application, the government's request is consistent with the substantial concerns for privacy and sensitive materials found in Federal Rule of Criminal Procedure 49.1, the Central District of California's Local Rules regarding redaction (L.R. 5.2-1), and the Privacy Policy of the United States Judicial Conference (https://www.uscourts.gov/rules-policies/judiciary-policies/privacy-policy-electronic-case-files (last accessed April 17, 2019)). Indeed, the showing made in the government's ex parte application is sufficient to establish good cause.  Nothing more is required.

Defendant wrongly asserts in the opposition that the Ninth Circuit has required that the party seeking a protective order in a criminal case should make a good cause showing as to each discovery item and demonstrate specific harm without a protective order, as required by Federal Rule of Civil Procedure 26(c).  (See Opp'n at 2, 3 (citing United States v. Patkar, No. CR. 06-00250 JMS, 2008 WL 233062, at *4 (D. Haw. Jan. 28, 2008)).)  But the very case that defendant relies on for that proposition – United States v. Patkar – correctly noted that "[t]he Ninth Circuit has yet to define what constitutes 'good cause' to restrict discovery pursuant to Federal Rule of Criminal Procedure 16," and cautioned against directly importing the civil standard of requiring specific harm and individualized good cause under Federal Rule of Civil Procedure

---

[1] See, e.g., Stipulation and Joint Request for a Protective Order Regarding Discovery Containing Personally Identifiable Information and Other Private and Law Enforcement Sensitive Information, United States v. Stauffer, ED CR 17-174-JGB (C.D. Cal. Sept. 25, 2017), ECF No. 6, ¶¶ 2-4; Stipulation Regarding Protective Order, United States v. Flores, ED CR No. 16-85-JGB (C.D. Cal. Sept. 16, 2016), ECF No. 7, ¶¶ 2-4.

26(c), even while recognizing reference to Rule 26(c) as "a useful tool." Patkar, 2008 WL 233062, at *4. As noted above, this Court, as well as district judges throughout the Central District of California, regularly issues protective orders based on showings of good cause – whether stipulated or not – that are substantively identical to the showing made by the government in the ex parte application here. Although the request for the Protective Order was made some time after the commencement of the case, and in light of the low showing the government may make, there is no principled reason for this Court to change the standard now.

Good cause clearly exists for this Court to restrict possession and dissemination of the discovery that contains PII and the explicit depictions of sexual acts involving victims. That defendant has possessed some of those materials for many years and that some months have elapsed since the government's initial production do not diminish the objective fact that the materials are extremely private, and sensitive, and deserve protection by this Court.

**II.   THE PROTECTIVE ORDER APPROPRIATELY BALANCES THE PRIVACY INTERESTS OF THE VICTIMS AND THIRD PARTIES WITH DEFENDANT'S RIGHT TO PREPARE FOR TRIAL AND PRESENT A DEFENSE**

After his counsel twice declined to discuss the language of a reasonable stipulation for a protective order to address the PII and explicit sexual materials in the discovery, defendant now asserts that the Protective Order is "overbroad," and in so doing mischaracterizes the Protective Order. The Protective Order, as proposed, balances the privacy rights of the victims and third-party individuals while preserving defendant's ability to prepare for trial and present a vigorous defense. The Court thus should enter the Protective Order as requested.

In a nutshell, the cornerstone of the Protective Order is that the discovery may not be transmitted to persons outside the "Defense Team," which is a standard provision found in protective orders entered in federal criminal cases. (Ex Parte Application, Dkt. No. 23, ¶¶ 6, 8.) In light of defendant's representation in the opposition that "[n]one of the discovery has been disseminated outside of Mr. Olivas' defense team" since the discovery was produced in August 2018 (Opp'n at 2), the restriction on dissemination preserves the status quo and would not create an unreasonable impediment to the defense.[2]

Unlike many protective orders entered in the Central District, the Protective Order does not prevent defendant from retaining possession of the discovery, except for a subset of materials that contain private and sensitive content such as PII (such as social security numbers, dates of birth, and home addresses of victims and other individuals) and sexually explicit photos and video recordings. (Ex Parte Application, Dkt. No. 23, ¶ 14.) As defendant notes, his longstanding possession of some of the materials at issue has a mitigating effect on the significant concern that remains for transmission outside the defense team and for purposes outside this case. But the fact remains that defendant has no cause to retain possession of the victims' and third parties' PII or the sexually explicit materials that were created during the time period when, according to the indictment and the government's assessment of the evidence, defendant was continually depriving the victims of their

---

[2] "Defense Team" was defined in the government's ex parte application (Dkt. No. 23, ¶ 9) and the government continues to adopt that definition in this reply.

rights secured by the Constitution and the laws of the United States, including the right to be free from deprivations of liberty without due process of law, which includes the right to bodily integrity. Those materials, given defendant's charged conduct that includes aggravated sexual abuse and attempted aggravated sexual abuse, deserve added protection.

If the Court enters the requested Protective Order, the government intends to designate the materials containing PII and sexual act materials that deserve heightened protection, as envisioned in paragraph 14 of the ex parte application, to give defendant clear notice as to which materials should only be in the rest of the Defense Team's possession but not in his personal possession.  Even if the implementation of the Protective Order may create some inconvenience for defendant and the Defense Team, the significant privacy interests of the victims and third parties outweigh the logistical inconvenience defendant would face.  With the trial date continued by more than six months and modest additional discovery envisioned by the government (except for any created in the course of trial preparation), any burden to the defense imposed by the Protective Order will not be substantial, and definitely not unreasonable.

Finally, defendant's complaint that requiring witnesses to agree to be bound by the Protective Order is too burdensome is unpersuasive and speculative.  (See Opp'n at 5.)  Defendants before this Court and throughout the Central District regularly enter into protective orders like the one the government has proposed, and their defense teams and witnesses regularly agree to the terms of similar protective orders without undue diminishment of their ability to

defend against the charges in those cases.  It strains credulity to think that the defense witnesses would refuse to agree to non-disclosure of the private, sensitive information in this case involving serious sexual abuse conduct and PII of various individuals.

The Protective Order reasonably protects the privacy interests of the victims and third parties without creating a substantial impediment to defendant's right to prepare for trial and present a defense.

**III. DEFENDANT MISCHARACTERIZES GOVERNMENT COUNSELS' GOOD-FAITH EFFORTS TO BALANCE THE COMPETING INTERESTS IN THIS CASE**

Defendant's opposition mischaracterizes the government's conduct and representations regarding the discovery and the Protective Order. Principally, defendant incorrectly suggests that the government did not "review the discovery before producing it, and now it is trying to force the defense to fix its supposed mistake" of not seeking a protective order at the outset. (Opp'n at 4.)  As the government explained in the ex parte application, the government did not initially request a protective order because "defendant was presumed to be already in possession of the PII and the sexual materials prior to the government's production of the discovery" (Ex Parte Application, Dkt. No. 23, ¶ 4) – not because, as defendant insinuates, it had failed to fully review the discovery or because it had mistakenly neglected to request a protective order.  Nor was the government's decision not to seek a protective order at the outset an acknowledgment that there was no good cause for a protective order. Rather, the government's decision was an attempt at balancing the competing interests of defendant and the victims, while recognizing

that a protective order may not be effective, given the length of defendant's possession of some of the materials at issue.  The government's recent re-assessment and decision to request the Protective Order does not make its initial decision a mistake, much less an irreversible mistake that effected a waiver or forfeiture of the government's right to seek a protective order, as defendant suggests.[3]  The Court should enter the Protective Order as submitted.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant the government's ex parte application and issue the Protective Order.

| | |
|---|---|
| Dated: April 18, 2019 | NICOLA T. HANNA<br>Acting United States Attorney<br><br>LAWRENCE S. MIDDLETON<br>Assistant United States Attorney<br>Chief, Criminal Division<br><br>         /s/<br>JULIUS J. NAM<br>ELI A. ALCARAZ<br>Assistant United States Attorneys<br><br>Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

---

[3] The government disputes several statements contained in the opposition regarding the parties' April 1, 2019 telephone call.  But since those statements do not bear directly on the government's ex parte request, the government is not addressing those disputes here.

9