1  NICOLA T. HANNA
   United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   JULIUS J. NAM (Cal. Bar No. 288961)
4  Assistant United States Attorney
   Criminal Appeals Section
5  ELI A. ALCARAZ (Cal. Bar No. 288594)
   Assistant United States Attorney
6  Riverside Branch Office
        3403 10th Street, Suite 200
7       Riverside, California 92501
        Telephone: (951) 276-6942/6938
8       Facsimile: (951) 276-6202
        E-mail:    julius.nam@usdoj.gov
9                  eli.alcaraz@usdoj.gov

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

11
                    UNITED STATES DISTRICT COURT
12
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
   UNITED STATES OF AMERICA,          No. ED CR 18-231-JGB
14
             Plaintiff,               GOVERNMENT'S OPPOSITION TO
15                                     DEFENDANT JOHN JACOB
             v.                        OLIVAS' EX PARTE, IN CAMERA
16                                     APPLICATION FOR AN ORDER
   JOHN JACOB OLIVAS,                  CONTINUING THE TRIAL DATE
17
             Defendant.               **CURRENT TRIAL DATE:  12-3-2019 at
18                                     9:00 a.m.**

19

20      Plaintiff United States of America, by and through its counsel

21 of record, the United States Attorney for the Central District of

22 California and Assistant United States Attorneys Julius J. Nam and

23 Eli A. Alcaraz, hereby files its opposition to defendant JOHN JACOB

24 OLIVAS' Ex Parte, In Camera Application seeking a continuance of the

25 trial date, filed on October 7, 2019 (Dkt. 36).

26 //

27 //

28 //

1    This opposition is based upon the attached memorandum of points

2  and authorities, the files and records in this case, and such further

3  evidence and argument as the Court may permit.

4   Dated: October 8, 2019                    Respectfully submitted,

5                                             NICOLA T. HANNA
                                              United States Attorney
6
                                              BRANDON D. FOX
7                                             Assistant United States Attorney
                                              Chief, Criminal Division
8

9                                                    /s/
                                              JULIUS J. NAM
10                                            ELI A. ALCARAZ
                                              Assistant United States Attorneys
11
                                              Attorneys for Plaintiff
12                                            UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.     INTRODUCTION..................................................1

II.    FACTS AND PROCEDURE..........................................1

       A.    Facts.................................................1

             1.    Victim 1.......................................2

             2.    Victim 2.......................................4

       B.    Procedure.............................................8

III. AN IN CAMERA FILING IS INAPPROPRIATE.........................10

IV.  A LENGTHY CONTINUANCE TO JUNE 30, 2020 IS UNREASONABLE.......11

V.     CONCLUSION..................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On October 7, 2019, defendant JOHN JACOB OLIVAS ("defendant")

filed an Ex Parte Application to file an application in camera, to

seek a continuance of the December 3, 2019 trial date.  Based on

communications with defense counsel, the government understands the

proposed in camera document to seek a continuance of the trial to

June 30, 2020.[1]  Both the application to file in camera and the

request for a continuance should be denied.  To do otherwise would

substantially prejudice the charged victims and the government and

run counter to the principle of administration of justice without

unreasonable delay.  For the reasons set forth below, this second

attempt in a year by defendant to continue the trial just before the

pretrial motions deadline, over the objection of the charged victims,

should be denied.  Further, the government requests that the Court

deny defendant's request for an in camera filing.

**II.  FACTS AND PROCEDURE**

**A.  Facts**

This is a case about a federal agent's abhorrent abuse of his

official power to control, threaten, intimidate, manipulate, sexually

assault, and silence his intimate partners.

Between August 2011 and November 2012, while defendant was

entrusted with the power and position of a Special Agent with

Homeland Security Investigations ("HSI"), defendant used his official

authority to threaten, intimidate, and physically and sexually

---

[1] On October 4, 2019, counsel for defendant informed the
government via email that the defense was seeking a trial date of
June 30, 2020.

1  assault Victim 1 and Victim 2, with whom defendant had intimate

2  relationships in August 2011 through January 2012 and March 2012

3  through November 2012, respectively.  Repeatedly, defendant would

4  prevent the victims from reporting defendant's violent and abusive

5  behavior to the authorities by, inter alia, (1) telling them no law

6  enforcement officer would believe the victims because he was an HSI

7  agent, he is friends with many local police officers, no law

8  enforcement would go after another law enforcement officer, and thus

9  defendant's criminal conduct was "invisible" to law enforcement,

10 (2) calling and pretending to call the local law enforcement to ask

11 to ignore any calls from the victims, and (3) brutally assaulting the

12 victims on multiple occasions, which caused the victims to remain

13 silent about defendant's abhorrent criminal conduct toward them.

14 Defendant then used his official power and authority to attempt to

15 rape Victim 1 in or about January 2012 and rape Victim 2 twice, in or

16 about September 2012 and on or about November 9, 2012.

17      By grossly abusing his power in such a manner, defendant

18 violated the victims' constitutional rights--namely, the right to be

19 free from deprivation of liberty without due process of law,

20 including the right to bodily integrity.

21          1.   Victim 1

22               a.   *Threats and intimidation using color of law*

23      Defendant and Victim 1 met in or about August 2011 and began

24 dating.  Within about a month into their relationship, defendant

25 turned violent toward Victim 1, used his law enforcement authority

26 and connections to prevent Victim 1 from reporting his criminal

27 conduct, and threatened to use his official powers to arrest her,

28 remove her children from her, and kill her.  On multiple occasions,

1    defendant squeezed Victim 1's face to the point of giving her two

2    black eyes, choked her to the point of nearly passing out, grabbed

3    her arms to the point of bruising, slapped her across the mouth, and

4    threw her violently against the walls.

5        After Victim 1 threatened to call the police, defendant told her

6    that he was the police, nothing could ever happen to him, and his

7    abusive conduct was always going to be "invisible" to local law

8    enforcement because he too was law enforcement.  If Victim 1 were to

9    report, defendant said the police would believe him over her, he

10   could get her arrested instead, and the arrest would result in

11   Victim 1 losing custody of her children.  Defendant also told

12   Victim 1 that he could make her lose her children "in a heartbeat" by

13   using defendant's official authority.  At another time, defendant

14   told Victim 1 that he could make her "disappear," and implied that he

15   could use a confidential informant ("CI") to make that happen.

16   Defendant would also routinely tell Victim 1 that he had access to

17   her Facebook account through his work as an HSI agent, and that

18   defendant monitored his ex-wife's electronic communications through

19   work.  Defendant's use and exercise of his official power toward

20   Victim 1 were so profound and pervasive that Victim 1 felt she had no

21   choice but remain silent about defendant's abusive criminal conduct

22   toward her.

23                  *b.    Attempted rape using color of law*

24       In January 2012, defendant again exerted his official power over

25   Victim 1, this time to attempt to rape Victim 1 in the residence they

26   shared.  After Victim 1 refused to have sexual intercourse, defendant

27   held her down by the shoulders using his considerable advantage in

28   weight and physical power and attempted to have sexual intercourse

                                     3

1  with her.  Victim 1 emphatically told defendant that she did not want

2  to have sex with him, but defendant kept holding her down.  Victim 1

3  began screaming but defendant persisted and proceeded to attempt to

4  remove Victim 1's clothing.  It was not until Victim 1 continued to

5  scream and began kicking defendant in his stomach area that he

6  relented and allowed Victim 1 to leave.  After this incident,

7  Victim 1 ended her relationship with defendant.

8      Victim 1 never reported defendant's attempted rape of her or

9  defendant's abusive conduct toward her to the police because she

10 remained in fear of what defendant would do in retaliation and she

11 felt the police would not help her based on defendant's past

12 statements about his power and authority as a federal agent.

13 Victim 1 described defendant's conduct only after special agents from

14 the Federal Bureau of Investigation identified her as a previous

15 intimate partner of defendant's and interviewed her.  Victim 1

16 remains deeply affected and traumatized by defendant's abuse of her

17 using his official powers, lives in fear of defendant and his threats

18 of retaliation, and thus desires a speedy resolution of this matter.

19          2.   Victim 2

20              a.   *Threats and intimidation using color of law*

21      Defendant and Victim 2 met in or about March 2012.  On their

22 first date, defendant identified himself as a federal agent and

23 showed his official credentials to her.  In addition, defendant

24 prominently displayed his department-issued tactical vest and other

25 agency-issued equipment in the back seat of his car.  At the

26 conclusion of their first date, Victim 2 was under the impression

27 that defendant was a member of a federal Special Weapons and Tactics

28

4

1  (or SWAT) team, even though that was not true.  The two began dating

2  within about a week.

3       Approximately five to six weeks in their relationship, defendant

4  became physically abusive towards Victim 2.  Defendant would throw

5  objects at Victim 2, physically restrain her by pinning her against

6  walls, pull her hair, and choke her to the point where she would

7  nearly pass out.  During one incident, on November 4, 2012, defendant

8  grabbed and squeezed Victim 2's body with enough force that she

9  fractured her ribs and had to be put in a binder.  Defendant also

10 pulled his HSI-issued service pistol on Victim 2 on at least two

11 occasions, pointed the gun at her head with his finger on the

12 trigger, and threatened to kill her.  Defendant also threatened to

13 shoot Victim 2's father in the head.

14      Defendant used his position as a federal agent to intimidate

15 Victim 2 into not reporting any of his physical or sexual attacks to

16 law enforcement officials.  After physical attacks, defendant would

17 take phones away from Victim 2, keep Victim 2's car blocked using

18 defendant HSI vehicle, and tell Victim 2 that even if she filed a

19 report, the police would not believe her word over his.  Defendant

20 would also tell her that he was "well-connected" to local police

21 management and, as a special agent, that he had more authority than

22 local police officers.  After physical attacks against Victim 2,

23 defendant would appear to call "Sector" (HSI's version of a watch

24 commander), and would ask to be connected to the watch commander.  He

25 would then get a call back from someone Victim 2 believed to be a law

26 enforcement officer.  Defendant once even threatened to send a CI to

27 Victim 2's house to "put [her] in a hospital."  Defendant also

28

1  threatened to enter false criminal charges against Victim 2 on law

2  enforcement databases using HSI computer.

3      Moreover, defendant told Victim 2 that he could access her

4  Facebook messages through his government computer, and that he used

5  his government computer to keep track of one of his ex-wives.  He

6  also told Victim 2 that he "ran" all of her friends using HSI

7  resources to gain information about them.

8      Defendant's threats and claims regarding his power and position

9  contributed to Victim 2's fear of him.  And defendant's flaunting of

10 his authority as a federal agent and connection to local law

11 enforcement discouraged Victim 2 from reporting instances of physical

12 and sexual abuse to the police.  She believed that defendant was

13 above the law, untouchable by the criminal justice system, and well-

14 positioned to retaliate against her and her family if she reported

15 his abuse to law enforcement.

16          *b.   Two charged incidents of rape using color of law*

17     It was within that current of violence, threats, intimidation,

18 and coercion through official power and authority that defendant

19 raped Victim 2 at least three times between September and November of

20 2012.  Two of the rapes are charged in the indictment.

21     The first rape occurred in late September 2012, shortly after

22 defendant held a gun to Victim 2's head.  After a night out,

23 defendant became enraged when he perceived other men to be catcalling

24 Victim 2  Sitting in the passenger's seat while Victim 2 was driving

25 home, he pulled his HSI-issued service pistol and put it to

26 Victim 2's head.  He asked her, "What would you do if I pulled the

27 trigger?"  After they arrived at home, he pinned Victim 2 to the

28 ground of the living room and forcefully raped her despite Victim 2

6

1  emphatically telling defendant that she did not want to have sex with

2  him.  When Victim 2 tried to get up off the floor and away from

3  defendant, he began dragging her around the carpet.  As a result, she

4  sustained an injury on her arms and began bleeding.  Defendant yelled

5  at Victim 2 for bleeding on the carpet and continued to rape her.

6  During this rape, defendant's HSI-issued service pistol was on a

7  table directly above Victim 2's head within defendant's reach and

8  Victim 2's view.  Victim 2 did not report this rape to law

9  enforcement because defendant had led Victim 2 to believe that law

10  enforcement would protect defendant and defendant would retaliate

11  against her for reporting him.

12       The second rape occurred on November 9, 2012.  Few days earlier,

13  defendant had fractured Victim 2's ribs by grabbing and squeezing her

14  tightly while preventing her from leaving their residence.  On

15  November 9, defendant wanted to have sex, but Victim 2's ribs hurt

16  too much so she refused.  Defendant responded, "Shut the fuck up" and

17  proceeded to force vaginal intercourse with Victim 2 while she cried

18  in pain.  During the rape, defendant's HSI-issued service firearm was

19  on the dresser next to the bed where he raped Victim 2--within

20  defendant's easy reach and Victim 2's clear view.  Victim 2 did not

21  report this rape to law enforcement because defendant had led

22  Victim 2 to believe that law enforcement would protect defendant and

23  defendant would retaliate against her for reporting him.

24            c.    Additional incident of uncharged rape

25       In addition to the two instances of rape charged in the

26  indictment, defendant raped Victim 2 for the third time on November

27  12, 2012.  That night, Victim 2 went to bed after taking a dose of

28  Ambien as a sleeping aid.  She woke up later that night bleeding from

7

1 her anus and without the underwear she had on when she went to bed.

2 Victim 2 had no recollection of what took place while she was

3 sleeping, but she later learned from a video recording that defendant

4 sent to her cellular telephone that defendant had sodomized her and

5 recorded the rape, while she was semi-conscious.  After sending

6 Victim 2 the video of the rape, defendant threatened to send a copy

7 to Victim 2's father.  Victim 2 understood this threat as yet another

8 attempt to intimidate and blackmail her into silence.

9                                        * * *

10      To this day, Victim 2 lives with the trauma caused by

11 defendant's abuse of her using his official powers, lives in fear of

12 defendant and his threats of retaliation, and thus desires a speedy

13 resolution of this matter.[2]

14      **B.    Procedure**

15      This case was indicted on August 1, 2018 (Dkt. 1).  On September

16 21, 2018, upon the parties' stipulation, the Court continued the

17 trial date to May 28, 2019.  On or about April 12, 2019, over the

18

---

19      [2] Three additional individuals with whom defendant has been in
intimate relationships over the past two decades have offered
20 strikingly similar descriptions of defendant's violent and abusive
conduct, including through the use of official power and authority.

21      Two additional individuals have provided vivid descriptions of
violent rape and physical assault by defendant in the course of their
22 relationships while defendant was in the military and working as a
correctional officer with the federal Bureau of Prisons.
23
     Another individual has provided details of violent physical
24 assaults, use of official power to intimidate and prevent reporting,
and use of service pistol to threaten.
25
     The government anticipates introducing one or more of these
individuals as victim witnesses at trial under Rules 413 and/or
26 404(b).  Although they are not charged victims in this case, their
rights to be free from unreasonable delay of the proceedings in this
27 matter are significantly affected by yet another continuance of the
trial date.
28

1   government's objections, the Court granted defendant's <u>in camera</u>

2   request to continue the trial date to December 3, 2019.

3        Deputy Federal Public Defender ("DFPD") Angela C.C. Viramontes

4   was appointed to represent defendant on August 15, 2018 at

5   defendant's initial appearance (Dkt. 9).  On November 28, 2018, DFPD

6   Cuauhtemoc Ortega made his appearance for defendant (Dkt. 19).  On

7   February 13, 2019, DFPD Caroline Hahn made her appearance for

8   defendant (Dkt. 20).  On October 4, 2019, DFPD Craig Harbaugh made

9   his appearance for defendant (Dkt. 35).  On October 7, 2019, after

10  defendant filed his <u>in camera</u> request for another continuance of the

11  trial date (Dkt. 36), DFPD Hahn withdrew from this case (Dkt. 37).

12       The government has made six discovery productions to the defense

13  in this case on four dates.  The first two productions of August 28,

14  2018 and November 26, 2018 consisted of bates ranges from 1 through

15  30,081, as well as files outside of bates numbering.  The third and

16  fourth productions of May 20, 2019 consisted of bates ranges from

17  30,082 through 31,410.  The fifth production of August 8, 2019

18  consisted of bates ranges from 31,411 through 31,527.

19       The sixth production also of August 8, 2019 consisted of bates

20  ranges from 31,528 through 100,714 (comprised of extraction reports

21  of previously produced three cell phone contents), as well as files

22  outside of bates numbering that corresponded to the information in

23  the extraction reports.  As the government informed the defense on

24  August 8, 2019 regarding the sixth production, the government is <u>not</u>

25  aware of any <u>new</u> potentially and arguably relevant information in

26  that production.  That is because the sixth production contained a

27  re-production of the relevant contents of the same cellular

28  telephones whose information was previously produced on August 28,

9

1  2018.   Whereas on August 28, 2018 the government produced only

2  information that was discoverable under Rule 16, Brady, and Giglio,

3  in an exercise of caution, the sixth production included forensic

4  copies of the entirety of the cellular telephones, well beyond the

5  government's discovery obligations.

6  **III. AN IN CAMERA FILING IS INAPPROPRIATE**

7      The government objects to defendant's apparent request to

8  continue the trial via an in camera filing.   First, an in camera

9  filing prevents the victims in this case from exercising their rights

10  guaranteed by the Crime Victim Rights Act.   Because this is the

11  second in camera filing for a continuance in a year, the victims have

12  woefully inadequate transparency they are owed, and, more

13  importantly, deserve.   An in camera filing prevents the government

14  from effectively communicating with each victim to allow the victim

15  to vindicate her rights, including "[t]he right to reasonable,

16  accurate, and timely notice of any public court proceeding," "[t]he

17  right not to be excluded from any such public court proceeding," and

18  "[t]he right to proceedings free from unreasonable delay."   18 U.S.C.

19  §§ 3771(a)(2), (3), (7).

20      The government has been in contact with the victims in this case

21  and knows that the charged victims have strong objections to any

22  continuance especially because the trial was continued once this year

23  over objection.   An in camera filing that seeks to continue the trial

24  date to a date unspecified to the victims and for reasons unknown to

25  the victims significantly impairs the victims' ability to participate

26  in the proceedings.   Second, proceeding in camera prevents the

27  government from knowing essential information such as the requested

28  date and why a continuance is necessary and, accordingly, hinders the

10

1  government's ability to respond and oppose defendant's request.  In

2  all fairness, the government should be given a meaningful opportunity

3  to be heard.

4  **IV.    A LENGTHY CONTINUANCE TO JUNE 30, 2020 IS UNREASONABLE**

5      Defendant's request for a continuance of the trial for nearly

6  seven months to June 30, 2020, knowing well that the victims'

7  objections, is unreasonable and should be denied.

8      First, to the extent the defense's request for a continuance is

9  based on the October 7, 2019 appearance of DFPD Harbaugh in this case

10 and his need to review the discovery and conduct further

11 investigation, this should not be convincing for the Court.  Ms.

12 Viramontes is an experienced counsel who has had ample opportunity to

13 review the discovery from the beginning of this case and has overseen

14 the investigation into potential defenses over the past 14 months.

15 She provides continuity and knowledge of the case within the defense

16 team that favors denying defendant's request.  DFPD Ortega, another

17 seasoned attorney who made his appearance in November 2018, has had

18 nearly a year to review the discovery and work with Ms. Viramontes to

19 prepare for trial.  Further, when defendant last requested in camera

20 for a continuance to December 3, 2019 (just as the motions deadline

21 was approaching within a week), the defense explained to the

22 government that Ms. Hahn's addition to this case in February and her

23 need to review the discovery was a principal justification for the

24 defense's request for a continuance.  For the past eight months, DFPD

25 Hahn has been the primary counsel with whom the government has

26 interacted on this case and disclosed and discussed matters central

27 and relevant to the case.  Now, immediately after DFPD Harbaugh was

28 added to the case on October 4, 2019, DFPD Hahn withdrew just as

11

1   defendant filed the instant application to continue the trial date

2   (Dkt. 37).  This pattern of changing attorneys within the Office of

3   the Federal Public Defender--as the pretrial motions deadline of

4   October 21, 2019 is fast approaching--then seeking a continuance

5   because of the need to review discovery and conduct new research and

6   investigation that the defense apparently have not engaged in, does

7   not serve the interest of justice and causes great prejudice to the

8   victims and the government.

9       Second, the government has already started trial preparations,

10  including meetings, starting in August 2019, with the charged victims

11  concerning their anticipated trial testimony.  These meetings have

12  been emotionally and mentally taxing on the victims and amounts to

13  them essentially reliving their traumas in this case.  For the second

14  time this year, their very strong desire to vindicate their rights is

15  in jeopardy.  The victims who remain deeply affected by defendant's

16  criminal conduct have stated to the government that they would like

17  the trial to proceed on December 3, 2019 so that they can find

18  resolution to the trauma that they have been living and reliving over

19  the past seven to eight years.  The government thus understands the

20  victims would find a continuance to the middle of 2020 intolerable.

21  In addition, given that the government's trial preparation has begun

22  in earnest, a third lengthy continuance also prejudices the

23  government.  If the Court were to continue the trial again, the

24  government likely would seek a pretrial order that the defense cannot

25  attack the credibility of the victims by arguing that their memories

26  have faded due to time, a delay that would amount to more than one

27  year arising from defendant's requests.  The government believes that

28  the December 3, 2019 trial date should remain.

12

1    By December 3, 2019, the defense will have had more than 16

2   months to prepare for trial, which is more than adequate for a case

3   such as this.  Since April 2019, the defense has been well aware of

4   the government's and especially the victims' strong objections to

5   additional delays in the proceedings in this case.  Yet the defense

6   appears to be unconcerned with the victims' right to be free from

7   unreasonable delay as it reorganizes the defense team yet again and

8   asks for yet another lengthy continuance.  The government asks the

9   Court to consider the victims' ardent desire for a speedy resolution

10  of this case and deny defendant's unreasonable request.

11  **V.    CONCLUSION**

12    The Court should deny defendant's request for a continuance of

13  the December 3, 2019 trial date to June 30, 2020, as well as

14  defendant's request to file the continuance request in camera.

15

16

17

18

19

20

21

22

23

24

25

26

27

28