NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ELI A. ALCARAZ (Cal. Bar No. 288594)
Assistant United States Attorney
Riverside Branch Office
     3403 10th Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6938
     Facsimile: (951) 276-6202
     E-mail:   Eli.Alcaraz@usdoj.gov
FRANCES S. LEWIS (Cal. Bar No. 291055)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     312 North Spring Street, 15th Floor
     Los Angeles, CA 90012
     Telephone: (213) 894-4850
     Facsimile: (213) 894-0141
     E-mail:   Frances.Lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. ED CR 18-231-JGB |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION TO CONTINUE TRIAL |
| v. | |
| JOHN JACOB OLIVAS, | **CURRENT TRIAL DATE:** |
| Defendant. | **June 30, 2020 at 9:00 a.m.** |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Frances S. Lewis and Eli A. Alcaraz, hereby files its opposition to defendant's Ex Parte Application to Continue Trial, filed on May 11, 2020, consisting of a publically filed Ex Parte Application, (Dkt. 49), and separately filed in camera declaration of counsel, (Dkt. 48).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 13, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

  /s/
ELI A. ALCARAZ
FRANCES S. LEWIS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES...................................1
I.   INTRODUCTION......................................................1
II.  FACTS AND PROCEDURE...............................................2
     A.   Facts........................................................2
     B.   Procedure....................................................4
          1.   Filings and Continuances................................4
          2.   Defense Counsel.........................................5
          3.   Discovery...............................................6
     C.   COVID-19 in the Central District.............................6
III. AN IN CAMERA FILING IS INAPPROPRIATE..............................7
IV.  IF THE COURT GRANTS A COVID-19 RELATED CONTINUANCE, IT
     SHOULD BE A MODEST ONE TO JULY OR AUGUST 2020.....................8
V.   ANOTHER FOUR MONTH CONTINUANCE IS UNREASONABLE, EVEN IN
     LIGHT OF COVID-19, AND THE CURRENT TRIAL DATE SHOULD REMAIN
     ABSENT PUBLIC SAFETY REASONS FOR A CONTINUANCE....................9
VI.  CONCLUSION.......................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

For the third time, defendant John Jacob Olivas seeks a lengthy continuance of his trial date over the objections of the government and his victims.  The government has begun meaningful trial preparations, and defense counsel has had ample opportunity to do the same and to engage in any investigative due diligence they desire.  Unless the Court (or the Central District) imposes COVID-19 health and safety precautions that prohibit jury trials from proceeding in June, the trial should proceed as scheduled on June 30, 2020.

Although society is responding dynamically to the COVID-19 pandemic, that reality does not change the fact that defendant has had continuity of at least one counsel (Deputy Federal Public Defender ("DFPD") Angela C. C. Viramontes) since his initial appearance on August 15, 2018.  It does not change the fact that, before the Central District issued its first COVID-19 related order, defendant and the Office of the Federal Public Defender had 576 days[1]--over a year and a half--to prepare this case for trial.  Now, one week before the May 18, 2020 pretrial motions filing deadline and 50 days before the June 30, 2020 trial, defendant filed yet another Ex Parte Application to Continue the Trial, (Dkt. 49), with accompanying in camera declaration of counsel, (Dkt. 48).  His request to continue the trial, from June 30, 2020 to October 27, 2020, should be denied, as should the application to file in camera.  To do otherwise would substantially prejudice the charged victims and

---

[1] The number of days between defendant's August 15, 2018 initial appearance and March 13, 2020, the day that Central District of California issued General Order No. 20-02, its first COVID-19 related order, is 576 days.

the government and run counter to the principle of administration of justice without unreasonable delay.  This trial should go forward on the current date.

The government recognizes the uncertainty created by COVID-19. The health and safety of the community and the safe administration of jury trials is of paramount importance.  If the Court determines, or if the Central District orders, that there be further delay due to COVID-19, the government submits that a continuance of the trial should be to no later than August 25, 2020.

## II.  FACTS AND PROCEDURE

### A.  Facts

This is a case about a federal agent's abhorrent abuse of his official power to control, threaten, intimidate, manipulate, sexually assault, and silence his intimate partners.

Between August 2011 and November 2012, while defendant was entrusted with the power and position of a Special Agent with Homeland Security Investigations ("HSI"), defendant used his official authority to threaten, intimidate, and physically and sexually assault Victim 1 and Victim 2, with whom defendant had intimate relationships in August 2011 through January 2012 and March 2012 through November 2012, respectively.

During Victim 1's romantic relationship with defendant, he repeatedly exhibited violent and controlling behavior, including grabbing her by the head and squeezing so hard she got black eyes. When she threatened to call the police, he claimed he "was the police" and was therefore "invincible."  During another violent episode, defendant threw his HSI badge at her and refused to let her leave because he was "Homeland Security."  Defendant's violent

behavior toward Victim 1 culminated with his attempt to rape her in January 2012 (Count 1), after which she ended their relationship, but was still too scared to report his conduct because of his claims about his federal law enforcement position.

Victim 2 dated and lived with defendant and experienced the same violent, controlling, and intimidating behavior, with defendant repeatedly showing off his credentials to her and claiming to be above the law.  Defendant raped Victim 2 in September 2012 (Count 2) after pulling his HSI-issued service weapon on her and threatening to pull the trigger earlier that day.  In November 2012, defendant again used his service weapon to threaten Victim 2 and her parents after Victim 2 told him she wanted to end their relationship.  The next day, he used physical force to restrain Victim 2 to prevent her from leaving their residence and squeezed her so hard he fractured her ribs.  Defendant raped Victim 2 again a few days later (Count 3). And just a few days after that, he videotaped himself sodomizing her while she was sedated from a sleeping pill.

During both relationships, defendant would repeatedly prevent his victims from reporting his violent and abusive behavior to the authorities by, <u>inter alia</u>, (1) telling them no law enforcement officer would believe the victims because he was an HSI agent, he is friends with many local police officers, no law enforcement would go after another law enforcement officer, and thus defendant's criminal conduct was "invisible" to law enforcement, (2) calling and pretending to call the local law enforcement to ask to ignore any calls from the victims, and (3) brutally assaulting the victims on multiple occasions, which caused the victims to remain silent about defendant's abhorrent criminal conduct toward them.

3

By grossly abusing his power as a federal law enforcement agent in this manner, defendant violated the victims' constitutional rights--namely, the right to be free from deprivation of liberty without due process of law, including the right to bodily integrity. To this day, both victims live with the trauma caused by defendant's abuse of them through the use of his official powers and desire a speedy resolution of this matter.[2]

**B.   Procedure**

1.   Filings and Continuances

This case was indicted on August 1, 2018.  (Dkt. 1.)  On August 15, 2018, defendant made his initial appearance and was appointed DFPD Viramontes as counsel.  (Dkt. 9.)  On September 21, 2018, upon the parties' stipulation, (Dkt. 15), the Court continued the October 9, 2018 trial date to May 28, 2019, (Dkt. 16).  It set April 15, 2019 as the pretrial motions filing deadline.  (Dkt. 16.)

On April 10, 2019, five days before the pretrial motions filing deadline, defendant sought to continue the May 28, 2019 trial to

---

[2] Three additional individuals with whom defendant has been in intimate relationships over the past two decades have offered strikingly similar descriptions of defendant's violent and abusive conduct, including through the use of official power and authority.

Two additional individuals have provided vivid descriptions of violent rape and physical assault by defendant in the course of their relationships while defendant was in the military and working as a correctional officer with the federal Bureau of Prisons.

Another individual has provided details of violent physical assaults, use of official power to intimidate and prevent reporting, and use of service pistol to threaten.

The government anticipates introducing one or more of these individuals as victim witnesses at trial.  Although they are not charged victims in this case, their rights to be free from unreasonable delay of the proceedings in this matter are significantly affected by yet another continuance of the trial date.

4

December 3, 2019. (Dkt. 24.) On or about April 12, 2019, over the government's and victims' objections, the Court granted defendant's <u>in camera</u> request to continue the trial date to December 3, 2019. (Dkt. 33.) The Court set October 21, 2019 as the new pretrial motions filing deadline. (Dkt. 34.)

On October 7, 2019, two weeks before the new pretrial motions filing deadline, defendant sought to continue the December 3, 2019 trial to June 30, 2020. (Dkt. 36.) On or about October 16, 2019, over the government's and victims' objection, the Court granted defendant's <u>in camera</u> request to continue the trial date to June 30, 2020. (Dkt. 45.) The Court set May 18, 2020, as the newest pretrial motions filing deadline. (Dkt. 46.) The instant application for relief was filed on May 11, 2020, one week before the pretrial motions filing deadline.

### 2. Defense Counsel

DFPD Angela C. C. Viramontes was appointed to represent defendant on August 15, 2018 at defendant's initial appearance. (Dkt. 9.) On November 28, 2018, DFPD Cuauhtemoc Ortega made his appearance for defendant. (Dkt. 19.) On February 13, 2019, DFPD Caroline Hahn made her appearance for defendant. (Dkt. 20.) On October 4, 2019, DFPD Craig Harbaugh made his appearance for defendant. (Dkt. 35.) On October 7, 2019, after defendant filed his second <u>in camera</u> request for a continuance of the trial date, (Dkt. 36), DFPD Hahn withdrew from this case, (Dkt. 37). On November 6, 2019, after the Court continued the trial to June 30, 2020, DFPD Ortega withdrew from this case. (Dkt. 44.) DFPDs Viramontes and Harbaugh have both been on the case simultaneously since DFPD Harbaugh's appearance on October 4, 2019.

### 3. Discovery

Since defendant's last request for a continuance last fall, the government has only made one additional discovery production to defendant. This production (the seventh in the case)[3] on February 4, 2020, consisted of bates ranges from 100715 through 100773 (58 pages) and comprised recent FBI reports from interviews conducted during the course of trial preparation as well as the expert report of Dr. Janine Shelby, whom the government noticed as an expert on intimate partner abuse for trial.

### C. COVID-19 in the Central District

On March 13, 2020, following the President's declaration of a national emergency in response to COVID-19, the Court entered a General Order suspending jury selection and jury trials scheduled to begin before April 13, 2020. C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (Mar. 13, 2020). The Court subsequently continued that suspension through June 1, 2020. C.D. Cal. General Order No. 20-05, In Re: Coronavirus Public Emergency, Further Order Concerning Jury Trials and Other Proceedings (Apr. 13, 2020).

Also on March 13, 2020, the Court imposed health- and travel-related limitations on access to Court facilities. C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (March 13, 2020). On March 19,

---

[3] The government's first five productions between August 2018 and August 2019 consisted of bates ranges from 1 through 31527 and comprised the vast majority of the written and multimedia evidence in this case. The sixth production in August 2019 was voluminous (bates 31528 through 100714), but as the government explained to defense counsel at the time, comprised predominantly extraction reports of previously produced cellphone content.

6

2020, by Order of the Chief Judge, the Court instituted its Continuity of Operations Plan, closing all Central District of California courthouses to the public (except for hearings on criminal duty matters) and taking other emergency actions.  C.D. Cal. Order of the Chief Judge No. 20-042 (March 19, 2020).  On March 29 and 31, recognizing COVID-19's continued spread in the community, the Court took further action: implementing video-teleconference and telephonic hearings and suspending all grand-jury proceedings.  C.D. Cal. Orders of the Chief Judge Nos. 20-043 (March 29, 2020) and 20-044 (March 31, 2020).

**III. AN IN CAMERA FILING IS INAPPROPRIATE**

The government objects to defendant's request to justify the requested continuance of the trial through an in camera filing. First, an in camera filing prevents the victims in this case from exercising their rights guaranteed by the Crime Victim Rights Act. Because this is the third in camera filing connected to a request to continue the trial in a 13-month period, the victims have woefully inadequate transparency they are owed, and, more importantly, deserve.  Further, an in camera filing prevents the government from effectively communicating with each victim to allow the victim to vindicate her rights, including "[t]he right to reasonable, accurate, and timely notice of any public court proceeding," "[t]he right not to be excluded from any such public court proceeding," and "[t]he right to proceedings free from unreasonable delay."  18 U.S.C. §§ 3771(a)(2), (3), (7).

The government has been in contact with the victims in this case each time the defense has requested a continuance, and each time the victims have voiced strong objections to any continuance.  An in

camera filing allegedly asserting investigative diligence as a primary basis for seeking to continue the trial date another four months significantly impairs the victims' ability to participate in the proceedings. Second, proceeding in camera prevents the government from knowing essential information such as whether COVID-19 has actually derailed defense trial preparations when the restrictions have only been in place for a small portion of the lengthy continuance defense counsel previously sought last October. Accordingly, it hinders the government's ability to respond and oppose defendant's request.

The government does not expect to know all of the details of defense counsel's trial preparation strategy, but, in all fairness, the government should be given a meaningful opportunity to be heard on the timing of the trial date given that this is the fourth continuance, sought close to the pretrial motions filing deadline, and after the government has begun, again, meaningful trial preparations of its own, while also having to make adjustments to account for local social distancing requirements.

**IV. IF THE COURT GRANTS A COVID-19 RELATED CONTINUANCE, IT SHOULD BE A MODEST ONE TO JULY OR AUGUST 2020**

The government recognizes the uncertain and unique situation created by the COVID-19 pandemic. As noted above, while the situation is ever-changing, the Court is currently scheduled to be open in time for the trial to go forward on the current date--June 30, 2020. To be clear, the government believes the health and safety of the jury, the Court and its staff, the victims and other witnesses, the defendant and defense team, and the public are of paramount importance. If safety precautions for the COVID-19 crisis

8

warrant a continuance because a jury cannot be called in on June 30, 2020, the government requests that the trial be set in July or August 2020, but no later than August 25, 2020.[4]

A COVID-19 based continuance, for example, to August 25, 2020 (the last Tuesday of August) would be a 56-day continuance. If the Court grants the defense's pending continuance request to October 27, 2020, defendant and his initial trial counsel, DFPD Viramontes, would receive a total continuance of 749 days, the last 518 days of which are over the objection of the victims and the government. The Court should keep the current trial date unless COVID-19 precautions warrant otherwise, in which case a continuance to July or August 2020 is an appropriate balance.

**V. ANOTHER FOUR MONTH CONTINUANCE IS UNREASONABLE, EVEN IN LIGHT OF COVID-19, AND THE CURRENT TRIAL DATE SHOULD REMAIN ABSENT PUBLIC SAFETY REASONS FOR A CONTINUANCE**

Another lengthy continuance does not serve the interest of justice and causes great prejudice to the victims and the government. Since April 2019, the government has voiced its strong objections on behalf of the victims to any additional delays in the proceedings in this case. For the third time in a 13-month period, the victims' very strong desire to vindicate their rights is in jeopardy. The victims who remain deeply affected by defendant's criminal conduct have stated to the government that they would like the trial to proceed on June 30, 2020, so that they can find resolution to the trauma that they have been living and reliving over the past seven to eight years. The government asks the Court to consider the victims'

---

[4] Based on emails exchanged with defense counsel and the Court's courtroom deputy on April 30, 2020, it does not appear that the Court is categorically moving all trials currently set for the end of June.

9

ardent desire for a speedy resolution of this case and deny defendant's request for a four-month continuance.

The primary reason advanced by defendant in seeking another lengthy continuance is again the need to prepare for trial and conduct further investigation, although this time it's couched amid the changes brought upon by the COVID-19 pandemic. But the unusual circumstances that are currently in place arose only recently, in the middle of March 2020. The defense has had more than sufficient time to prepare for trial. Nineteen months passed between DFPD Viramontes' August 15, 2018 appearance and the first Central District COVID-19 related order on March 13, 2020 order. DFPD Viramontes is an experienced counsel who has had ample opportunity to review the discovery from the beginning of this case and has overseen the investigation into potential defenses over the 19 months between her appearance and March 13, 2020.

Further, DFPD Viramontes has been able to work with DFPD Harbaugh, another accomplished and experienced counsel, since, at a minimum, his October 4, 2019 appearance. Over five months passed between DFPD Harbaugh's appearance and the first Central District COVID-19 related order on March 13, 2019. The five months they have had together before the first COVID-19 Central District order should not be understated, especially because it follows DFPD Viramontes' substantial time with this case. She provides continuity and knowledge of the case within the defense team that favors denying defendant's request. Further, DFPD Ortega, who was part of the defense team for a year, and DFPD Hahn, who was part of the defense team for eight months, are still with the Office of the Federal Public Defender and their knowledge and preparation are not lost to

defendant and the defense team.  Assertions that local responses to COVID-19 have essentially halted preparation ignore the significant time the defense has already had to prepare for this case.

Additionally, for the third time the government has already started trial preparations.  In April 2019, with trial preparations underway, the defense moved to continue the trial five days before the pretrial motions filing deadline.  In August 2019, the government started meetings with the charged victims concerning their anticipated trial testimony as part of its trial preparations.  These meetings were emotionally and mentally taxing on the victims and amounts to them essentially reliving their traumas in this case.  Then, in October 2019, two weeks before the pretrial motion deadline, the defense again sought a lengthy continuance.  Now, on May 11, 2020, after the government has again begun trial preparations, including drafting motions <u>in limine</u> and coordinating telephonic conferences with the victims, defendant seeks another lengthy continuance.  Given that the government's trial preparation has begun in earnest a third time, a fourth overall lengthy continuance also prejudices the government.

In the government's October 2019 opposition, it explained that if the Court were to continue the trial a second time over objection, the government likely would seek a pretrial order that the defense cannot attack the credibility of the victims by arguing that their memories have faded due to time, a delay that would amount to more than one year arising from defendant's two requests.[5]  Such an order

---

[5] In light of the number of times, due to defendant's requested continuances, that the government has had to initiate contact with victim witnesses, the government is also considering requesting a

11

Case 5:18-cr-00231-JGB   Document 50   Filed 05/13/20   Page 15 of 16   Page ID #:219

would be even more important and appropriate if the Court were to grant a fourth continuance, to October 27, 2020, which would amount to a 17-month continuance from the May 28, 2019 trial date.

Defense counsel also cites to a number of trial conflicts that prevent defendant from agreeing to a shorter continuance, which was discussed during the parties' meet and confer efforts. Many of the trial conflicts listed on page 10 of the Ex Parte Application, however, are generally unavailing. For example, in United States v. Steven Corricelli, CR 19-365-RGK (June 23, 2020 trial date), the docket shows that a plea agreement was filed in March 2020 and a change of plea hearing is set for June 8, 2020. Thus, the current trial date appears to be a mere formality. In United States v. Lee Anthony, 5:18-CR-146-FMO (July 7, 2020 trial date), the trial date only recently became a conflict. This case was previously set for trial on May 26, 2020, and the stipulation to continue to July 7, 2020, was filed on May 7, 2020, after discussions about a potential new date in this case arose. In fact, the stipulations to continue these two cases to June and July 2020 trial dates, respectively, were filed just days before the ex parte application in this case. Defendant offers no explanation as to why those cases can proceed in June and July 2020, notwithstanding COVID-19, but the instant case cannot.

Moreover, this case is older than others listed by the defense, which should carry weight toward denying defendant's request:

---

pretrial order that prohibits the defense from asking the victim witnesses about the number of meetings between them and the government. Additional meetings or contact with victim witnesses is due to the repeated continuances at defendant's request and should not be a fertile grounds for cross examination and impeachment.

12

- United States v. Juarez, ED CR 19-286-JGB, was indicted on August 7, 2019, a year after this case, and is set for trial on July 21, 2020.
- United States v. Frank Power, CR 20-015-FMO, was indicted on January 29, 2020, almost a year and a half after this case, and is set for July 21, 2020. Additionally, defendant is out on bond.
- United States v. Charles Kertesz, ED CR 20-012-JGB, was indicted on January 15, 2020, and is set for trial on July 28, 2020. Although defendant is in custody, defendant has two counsel of record (according to the docket) in DFPD Viramontes and, as of February 12, 2020, DFPD Rebecca Abel.
- United States v. Mark Domingo, CR 19-313-SVW, was initiated by a criminal complaint on April 27, 2019, and is set for trial on August 4, 2020. From the docket, DFPD Viramontes is not the only attorney representing defendant Domingo. DFPD David Wasserman is also counsel of record and has been since defendant's initial appearance on April 29, 2019.

Thus, while the government does not seek to minimize the potential for trial conflicts, those cited by defense counsel do not prohibit either continuing as planned on June 30, 2020, or proceeding to trial at some point in July or August 2020. Therefore, if a continuance is to be granted, the Court should set the trial no later than August 25, 2020.

## VI.  CONCLUSION

The Court should deny defendant's request for a continuance of the June 30, 2020 trial date as well as the defense's request to explain its diligence in camera.