CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(E-Mail: Angela_Viramontes@fd.org)
CRAIG A. HARBAUGH (Bar No. 194309)
(E-Mail: Craig_Harbaugh@fd.org)
Deputy Federal Public Defenders
3801 University Avenue, Suite 700
Riverside, California  92501
Telephone:  (951) 276-6346
Facsimile:  (951) 276-6368

Attorneys for Defendant
JOHN JACOB OLIVAS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN JACOB OLIVAS,<br><br>Defendant. | Case No. ED CR18-00231-JBG<br><br>**JOHN JACOB OLIVAS' NOTICE OF MOTION AND MOTION TO DISMISS INDICTMENT BASED ON STATUE OF LIMITATIONS**<br><br>**Hearing Date:** August 23, 2021<br>**Hearing Time:** 2:00 p.m.<br>**Location:**        Courtroom of the Honorable Jesus G. Bernal |

Please take notice that defendant, John Jacob Olivas, by and through his counsel of record, Deputy Federal Public Defenders Angela C. C. Viramontes and Craig A. Harbaugh, moves this Honorable Court for an order dismissing Counts 1, 2, and 3 of the Indictment in this matter as time-barred. This motion is made pursuant to Federal Rule of Criminal Procedure 12 and 18 U.S.C. § 3282, which state the applicable statute of limitations for the counts at issue.

///

///

1

1    This motion is based on the attached memorandum of points and authorities, all

2    files and records in this case, and such additional evidence and argument as may be

3    presented at the hearing on the motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  July 19, 2021          By   /s/ Angela C. C. Viramontes

ANGELA C. C. VIRAMONTES
CRAIG A. HARBAUGH
Deputy Federal Public Defenders

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

John Jacob Olivas is charged with aggravated sexual abuse and attempted aggravated sexual abuse based on incidents that are alleged to have occurred in 2012. But he was not charged until 2018. The indictment was not filed within the five-year statute of limitations for non-capital offenses under 18 U.S.C. § 3281. Though certain violations of § 242--those that result in death--may be subject to the death penalty and thus have no statute of limitations, a violation premised on aggravated sexual assault is not "punishable by death." Because it is presumed that Congress legislates against the backdrop of existing law, and does not intentionally write unconstitutional statutes, § 242 should be read to extend its "punishable by death" standard only to those violations of § 242 that result in death--as was Congress's intent--and not to a violation like the ones alleged against Mr. Olivas. For these reasons, dismissal of the indictment is appropriate.

## II.  STATEMENT OF FACTS

The relevant facts are not in dispute. The indictment was filed on August 1, 2018. It charged as follow:

In Count 1 of the indictment, Mr. Olivas is charged with attempting to engage in vaginal intercourse with K.L. without her consent and by using force, a violation of 18 U.S.C. § 242, in or about January 2012.

In Count 2 of the indictment, Mr. Olivas is charged with engaging in vaginal intercourse with N.B. without her consent and by using force, a violation of 18 U.S.C. § 242, in or about September 2012.

In Count 3 of the indictment, Mr. Olivas is charged with engaging in vaginal intercourse with N.B. without her consent and by using force, a violation of 18 U.S.C. § 242, on or about November 9, 2012.

None of the charges were filed within five years of 2012. Based on discussions of counsel, it appears the government's position will be that the indictment is timely

1

because a violation of § 242 that includes aggravated sexual abuse is punishable by death under the statute, and thus can be charged at any time.

### III. ARGUMENT

**A.    Counts One Through Three Are Barred by the Statute of Limitations.**

The government bears the burden of proving that the prosecution was initiated within the applicable statute of limitations period. *Grunewald v. United States*, 353 U.S. 391, 396 (1957). "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970).

Here, law enforcement failed to diligently and promptly investigate the alleged offenses, and the passage of time has made it more difficult for Mr. Olivas to defend himself against charges that allegedly occurred almost a decade ago. Because the indictment was not filed within the statute of limitations, it should be dismissed.

**1.    The Facts Are Not in Dispute and This Court Can and Should Resolve This Pure Issue of Law Pretrial.**

As a threshold matter, the Court can and should resolve the statute-of-limitations question pretrial. As another court considering a pretrial motion to dismiss a charge based on statute-of-limitations grounds stated, "a defendant ought not be put to the task of defending a criminal charge that is barred by the inapplicable statute of limitations. This due process concern raised in the motion to dismiss the indictment presents a question of law for the court not the grand jury." *United States v. Jensen*, 690 F. Supp. 2d 901, 910 (D. Alaska 2010). *Accord United States v. Craft,* 105 F.3d 1123, 1126 (6th

2

Cir.1997) (criminal defendant's statute of limitations defense is appropriately resolved by way of pretrial motion); *United States v. Grimmett*, 150 F.3d 958 (8th Cir.1998) (a pretrial motion to dismiss is the appropriate vehicle for testing whether prosecution for violation of 21 U.S.C. § 846 was barred by the statute of limitations).

Resolution of this statute-of-limitation issue is appropriate pretrial where, as here, there are no facts in dispute. Because this motion presents a pure question of law, the question is ripe for pretrial decision. *See Craft*, 105 F.3d at 1126.

**B.    Counts One through Three of the Indictment are Time-Barred.**

The vast majority of federal crimes have a five-year statute of limitations. Specifically, the statute provides that "except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282. As a corollary, § 3281 provides that "an indictment for any offense punishable by death may be found at any time without limitation." The plain reading of these statutes is clear: federal crimes have a five-year statute of limitations unless (1) the statute explicitly provides otherwise; or (2) the offense is a "capital" offense, one "punishable by death." Because § 242 contains no contrary indication, the sole question presented here is whether the offenses charged in the indictment are "punishable by death." Clearly it is not.

**1.    A violation of § 242 involving aggravated sexual abuse is not subject to imposition of the death penalty.**

First, it is beyond dispute that Mr. Olivas' offense is not actually subject to the death penalty. In 1977, the Supreme Court held that the sentence of death for the crime of rape of adult woman was a "grossly disproportionate and excessive punishment" forbidden by Eighth Amendment. *Coker v. Georgia*, 433 U.S. 584, 592 (1977). Thus, from 1977 onward, it has been unconstitutional to impose the death penalty for sexual

assault of an adult woman. The maximum sentence that can possibly be imposed, if the jury returns a guilty verdict in this case, is life imprisonment.

      **2.**      **Congress never intended for aggravated sexual abuse under 18 U.S.C. § 242 to be subject to death, and the statute should be read to avoid this absurd result.**

The question, then, is whether § 242's "punishable by death" penalty provision applies to aggravated sexual assault violations. The statute states:

> Whoever, under color of any law . . . willfully subjects any person to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . shall be fined under this title or imprisoned not more than one year, or both . . . and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242. The government would have this Court reach that last clause to authorize a death sentence for a violation of § 242 that involves aggravated sexual abuse. But Congress could not have intended its language to be read that way.

After the Civil War, Congress enacted the Civil Rights Act of 1866, which made it a crime for "any person, who under color of any law" causes the "deprivation of any right" because of the victim "having at any time been held in a condition of slavery." Civil Rights Act of 1866, Pub. L. No. 39-31 § 2, 14 Stat. 27 (later codified at 18 U.S.C. § 242). As it was originally enacted, this crime was a misdemeanor which was punishable "by fine not exceeding one thousand dollars, or imprisonment not exceeding one year, or both, in the discretion of the court." *Id.* Thus, the offense was not originally a capital crime, nor even a felony.

Congress has amended § 242 several times since. In 1968, it authorized a statutory maximum sentence of life imprisonment for violations of § 242 where death

4

resulted; it left all other violations of the law as misdemeanors. *See* Pub. L. 90-284. In 1988, Congress added that a violation resulting in bodily injury was subject to a ten-year statutory maximum--while, again, leaving all other violations of § 242 subject to misdemeanor treatment. *See* Pub. L. 100-690.

Finally, and of particular relevance here, in 1994, Congress made two separate changes to the statute, in two separate sections of the Violent Crime Control and Law Enforcement Act of 1994. In one section of the bill, Congress created additional aggravating circumstances under § 242 that would not be subject to misdemeanor treatment, but would instead be subject to a heightened statutory maximum. One such aggravator is where the violation of § 242 involved "aggravated sexual abuse." *See* Pub. L. No. 103-322, § 320103(b)(2). In doing so, it incorporated a separate provision, 18 U.S.C. § 2241, a statute that has a statutory maximum of life.

In a separate section of the Act, Congress authorized the death penalty as a punishment for a violation of § 242. When it did so, though, it did not have all violations of § 242 in mind. The section is titled "Death Penalty for Civil Rights *Murders*." *See* Pub. L. 103-322, § 60006(a) (emphasis added). In providing this caveat, Congress recognized the scope of its authority and put the death penalty on the table for certain *homicide* offenses under § 242. *See I.N.S. v. Nat'l Ctr. for Imm. Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text."). That Congress did not go further--in a bill that greatly expanded the scope of federal criminal jurisdiction over violent offenses, and the harshness of the punishment for those offenses--proves the maxim that "Congress is presumed to know the law and to have incorporated judicial interpretations when adopting a preexisting remedial scheme." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189 (9th Cir. 2003).

The text of § 242 gives the appearance of authorizing a sentence of death for a violation of the statute that involves aggravated sexual abuse. And yet, "a thing may be

within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459 (1892). Such is the case here. To read the statute as the government does is to presume that Congress intentionally wrote an obviously unconstitutional statute, when all indicators are that it did not have that intent. The Court should avoid this absurd result, and, as a matter of constitutional avoidance, should interpret the statute so that its text is constitutional. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). The only way to do so is to conclude that the "may be sentenced to death" provision does not apply to sexual-abuse crimes.

> **3.     Regardless of whether § 242 can be interpreted in this manner, because Mr. Olivas' violation of § 242 is not "punishable by death," the five-year statute of limitations applies.**

Mr. Olivas believes this to be the correct interpretation of the statute. If the Court disagrees, however, it should still grant the motion. Aggravated sexual abuse is not in fact punishable by death under *any* circumstances--a fact that has been true from the moment the sexual abuse provision was added to § 242 until now. As discussed above, Congress was apparently aware of its constitutional limits and did not appear to intent the aggravated sexual abuse provision to be subject to punishment by death. As such, this Court should hold that Mr. Olivas' offense is not "punishable by death" and thus does not fall under 18 U.S.C. § 3282, which eliminates, entirely, the statute of limitation for death-eligible offenses.

As an initial point, the Court should not reach the government's preferred reading result lightly. "Criminal limitations statutes are to be liberally interpreted in favor of repose." *Toussie*, 397 U.S. at 115 (citation and quotation marks omitted). And here, the plain text of § 3282 aligns with Congress's apparent intent and demonstrates

6

that the offense charged in this indictment is not "punishable by death." "Punishable" means "subject to a punishment." Black's Law Dictionary (9th ed. 2009); *see also Reino v. State*, 352 So. 2d 853 (Fla. 1977) ("It is apparent that the phrase 'punishable by death' is susceptible of only a single construction [,] a crime for which the death penalty may be imposed."). And the charged offense is not one that is subject to punishment by death--never, under any circumstances, from the moment that provision was added to the statute until now.

Under Ninth Circuit precedent, the statute of limitations for a particular crime is "inextricably tied to the nature of the offense" charged. *United States v. Gallaher*, 624 F.3d 934, 940 (9th Cir. 2010) citing *United States v. Manning*, 56 F.3d 1188, 1196 (9th Cir. 1995). In *Manning*, the Ninth Circuit held that whether a crime if "punishable by death" under § 3281 or "capital" under § 3282 "depends on whether the death penalty may be imposed for the crime under the enabling statute, not 'on whether the death penalty is in fact available for defendants in a particular case." *Gallaher*, 624 F.3d at 940 citing *United States v. Ealy*, 363 F.3d 292, 296–97 (4th Cir.2004).  Because first-degree murder is subject to capital punishment under federal law, it didn't matter that the death penalty could not be imposed on the particular defendant in that case, by virtue of his status as an American Indian. *Id.* at 940. By contrast, here, the death penalty cannot be imposed for sexual assault under *Coker*--not on Mr. Olivas, and not on anyone, for any form of sexual assault that did not result in death. Because the "nature of the offense" is not one for which the death penalty can be imposed, the statute of limitations is five years. The indictment should be dismissed.

### 4.    *United States v. Briggs* is not to the contrary.

These facts set this case apart from *United States v. Briggs*, a case with surface similarity to the instant question, but, in fact, a world apart. In *Briggs*, the Court considered a provision of the Uniform Code of Military Justice, enacted in 1950, that made rape punishable by death. There was no question that the original drafters of the provision intended the death penalty to be a permissible punishment for the offense of

rape. And because "every statute's meaning is fixed at the time of enactment," *Wisc.*
*Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), there was no argument (like
the one above) that the statute did not subject violators to the death penalty.
Nevertheless, the petitioner claimed that, though the offense was clearly "punishable by
death" by the terms of the statute, it was not punishable by death under Supreme Court
cases decided subsequent to the enactment of the statute. As such, he argued, the
UCMJ's provision eliminating the statute of limitations for offenses punishable by
death did not apply to his rape offense.

The Court rejected the argument, finding that the phrase "punishable by death"
does not mean punishable by death according to the text of the statute and all
subsequent caselaw that might bear on the interpretation of that text. Rather, the
"natural referent" is the text of the code itself. And since rape is punishable by death,
under the text of the UCMJ, there was no statute of limitations for rape in the military
justice system.

There are several differences between the instant case and *Briggs*. For one, the
Supreme Court has cautioned against mingling criminal law and military justice
concepts. "'Military law . . . is a jurisprudence which exists separate and apart from the
law which governs in our federal judicial establishment.'" *Parker v. Levy*, 417 U.S.
733, 744 (1974) (quoting *Burns v. Wilson*, 346 U.S. 137, 140 (1953)). And the UCMJ
"cannot be equated to a civilian criminal code." *Id.* at 749. And indeed, the Court
emphasized the *uniform* nature of the Uniform Code of Military Justice in deciding
*Briggs*. *Briggs*, 141 S. Ct. at 470.

Second, and most importantly, *Briggs* argued that the statute of limitations
provision should be read to require consideration of the text as written plus all
subsequent decisions. Doing so cannot be said to be an act of statutory interpretation, as
"every statute's meaning is fixed at the time of enactment." *Wisc. Cent. Ltd. v. United*
*States*, 138 S. Ct. 2067, 2074 (2018). Here, by contrast, the issue is a true question of
statutory interpretation: Whether Congress should be presumed to have written a statute

8

that flouts constitutional norms, *despite* giving the provision a title that limited itself to constitutional boundaries. Those two questions are not the same.

Moreover, a driving motivation in *Briggs* was to avoid an interpretation that rendered the statute of limitations less clear. *Briggs*, 141 S. Ct. at 471. Holding that the interpretation of a statute depended on the text plus any caselaw that might bear on the statute going forward would eviscerate any hope of clarity, particularly where the reach of the death penalty depends on "evolving standards of decency," and where several antecedent questions (including the application of the Eighth Amendment to military courts) muddied the waters significantly. *Briggs*, 141 S. Ct. at 472-473. Here, no such concerns exist. *Coker* draws a clear line prohibiting the imposition of the death penalty for a sexual assault. Congress is presumed to legislate against the backdrop of existing laws--and arguably demonstrated its awareness of this limit when adding a provision for death in civil rights *murder* cases. No line-drawing problems are created by Mr. Olivas's interpretation.

For all of these reasons, *Briggs* does not settle this question against Mr. Olivas.

**5.    Any ambiguity as to whether a charge of aggravated sexual abuse under 18 U.S.C. § 242 is an "offense punishable by death" should be resolved in favor of Mr. Olivas.**

"[C]riminal limitations statutes are 'to be liberally interpreted in favor of repose.'" *Toussie v. United States*, 397 U.S. 112, 115 (1970) (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)). Even if "recourse to traditional tools of statutory construction leaves any doubt about the meaning of" a statutory term, "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Yates v. United States*, 574 U.S. 528, 548, (2015) (plurality opinion) (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)); *see also United States v. Davis*, 139 S. Ct. 2319, 2333 (2019) ("[T]he rule of lenity's teaching that ambiguities about the breadth of a criminal statute should be resolved in a defendant's favor" is "'perhaps not much less old than' the task of statutory 'construction itself.'" (quoting *United States v.*

*Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820))). Thus, any ambiguity as to whether aggravated sexual assault under U.S.C. § 242 is an offense punishable by death should be resolved in favor of Mr. Olivas.

## IV.

## CONCLUSION

For all of the foregoing reasons, the defense respectfully requests that the Court dismiss Counts 1, 2, and 3 of the Indictment as time-barred.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  July 19, 2021          By  */s/ Angela C. C. Viramontes*

ANGELA C. C. VIRAMONTES
CRAIG A. HARBAUGH
Deputy Federal Public Defenders