CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(E-Mail: Angela_Viramontes@fd.org)
CRAIG A. HARBAUGH (Bar No. 194309)
(E-Mail: Craig_Harbaugh@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California  92501
Telephone:  (951) 276-6346
Facsimile:  (951) 276-6368

Attorneys for Defendant
JOHN JACOB OLIVAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN JACOB OLIVAS,<br><br>Defendant. | Case No. ED CR 18-00231-JGB<br><br>**JOHN JACOB OLIVAS' NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE OR LIMIT "SEXUAL ASSAULT EXPERT" TESTIMONY; EXHIBIT; [PROPOSED] ORDER**<br><br>**Hearing Date:**  August 23, 2021<br>**Hearing Time:**  2:00 p.m.<br>**Location:**      Courtroom 1<br><br>**UNDER SEAL** |

PLEASE TAKE NOTICE THAT defendant, John Jacob Olivas, by and through his counsel of record, Deputy Federal Public Defenders Angela C. C. Viramontes and Craig A. Harbaugh, moves this Honorable Court for an order excluding or limiting Dr. Janine S. Shelby's expert testimony on sexual assault.  This motion is made pursuant to Federal Rules of Evidence 401, 402, 403, 702, 703, and 704.

/ / /

/ / /

/ / /

1       This motion is based on the attached memorandum of points and authorities, any

2 declarations of counsel and any exhibits attached hereto, all files and records in this

3 case, and such further information as may be provided to the Court with respect to this

4 motion.

5                               Respectfully submitted,

6                               CUAUHTEMOC ORTEGA
                              Federal Public Defender

7

8 DATED:  July 19, 2021        By  */s/ Angela C. C. Viramontes*

9                               ANGELA C. C. VIRAMONTES
                              CRAIG A. HARBAUGH

10                               Deputy Federal Public Defenders
                              Attorneys for JOHN JACOB OLIVAS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABEL OF CONTENTS**

I. INTRODUCTION AND STATEMENT OF FACTS.................................................. 2

II. LEGAL ARGUMENT .......................................................................................... 4

     A.    The Court should exclude domestic violence perpetrator testimony........... 6

     B.    Dr. Shelby's proposed testimony does not satisfy Rules 701, 702, 703, and 704 .............................................................................................................. 8

III. CONCLUSION.................................................................................................... 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND STATEMENT OF FACTS

The defense objects to Dr. Shelby's proposed testify on the grounds that it violates Federal Rules of Evidence 401, 402, 403, 702, 703, and 704.

On July 18, 2019, the government gave notice that it intends to call Dr. Janine Shelby as an expert witness to testify as to the following:

> 1. Common responses, reactions, and behaviors of sexual assault and interpersonal violence victims, including testimony about the reasons why many victims do not report sexual assault or interpersonal violence (e.g., fear they will not be believed by authorities, their families, or their friends; fear of retaliation; desire to avoid stigmatization as a sexual distress from acknowledging the reality of the abuse) as well as similar reasons why victims often delay reporting, report in a piecemeal fashion, or never report these crimes. These responses include internally and externally derived fears, such as fear of unwanted or frightening emotional repercussions, as well as fear of physical or emotional retaliation by the abuser.
> 2. The influence of mental health, culture, knowledge of rights/education, as well as childhood, familial, personal, and prior relationship experiences on how victims respond to sexual assault and traumatic events. These may include, but will not be limited to, testimony that some cultural/subcultural experiences can lead to victims' silence, responses that appear to be passive, or behaviors that seem supportive toward those to whom the victim has made a commitment; sometimes individuals with less knowledge, education, or less familiarity with healthy relationships and/or their entitlement to relationships free from abuse are less likely to report abuse/assault; and that prior childhood, familial, personal, or interpersonal relationship experiences, such as being disbelieved when reporting abusive experiences, being or seeing others ostracized, shamed, or stigmatized following abusive experiences/disclosures, or expecting abuse as an inevitable part of a relationship may lead individuals to abstain from reporting, delay reporting, minimize information in reports, engage in piecemeal reporting patterns, and/or continue interactions with their abusers.
> 3. The roles that power imbalances and control dynamics in interpersonal relationships play in how victims may respond to sexual assault and interpersonal violence. These may include, but will not be limited to, testimony that victims with power deficits relative to their partners in a relationship—whether it be due to significant discrepancies in financial stability, social power, physical power, mental health, or education/knowledge—may continue to interact with their abusers.
> 4. The roles that stigma and sense of shame from being a victim of sexual or interpersonal violence play in how victims interact with their abusers. These may include, but will not be limited

2

to, testimony that fear of being labeled a victim leads some victims to continue to interact with their abusers, in attempt to avoid stigmatization and an overwhelming sense of shame. The testimony may further include explanations that the desire to avoid stigmatization and shame can provide an incentive for survivors to continue their interactions with abusers.

5. Reasons why a victim of sexual assault and interpersonal violence might delay or forego reporting or engage in selective reporting or piecemeal reporting over time. The reasons may include, but will not be limited to, the following: fear of retaliation; belief that reporting will accomplish little to bring about safety; desire to avoid stigma; few mental health resources to cope with the demands of reporting; intense distress when remembering abusive episodes/avoidance of trauma-related topics; dissociative coping responses that interfere with memory processes; other neurobiological responses to trauma; desire to re-interpret sexual assault as a consensual act to avoid facing the reality of the abusive nature of the relationship; fear of not being believed; belief that one cannot change one's circumstances, but must merely endure them; and other reactions related to childhood, multiple, or extreme experiences of sexual assault/traumatic events.

6. Reasons why a victim of sexual assault and trauma might remain in a relationship, romantic or otherwise, where the victim continues to suffer at the hands of the abuser. The reasons may include, but will not be limited to, staying in relationships because of fear of further physical, sexual, or emotional abuse and/or retaliation for leaving; having mental health conditions that make it more difficult for a person to end the relationship; holding the maladaptive belief that violence/abuse is part of all relationships; hoping that the abuser will stop and change for the better; having a reduced sense of personal agency, such as the belief that there is little or nothing the victim can do to escape the relationship; vulnerability to dependency on the abuser, in cases where the abuser has isolated the victim and cultivated a strong sense of dependency on the abuser; and holding cultural/religious beliefs that a person should remain in a relationship despite the shortcomings or mistakes made by the person's romantic partner.

7. Coping mechanisms used by victims of sexual assault and other forms of trauma, including but not limited to denial, wishful thinking, avoidance of the assault- and trauma-related topics due to significant distress associated with these recollections; use maladaptive problem-focused coping (e.g., trying to enhance safety by acquiescing, or complying, or attempting to appease the abuser), maladaptive use of emotion-focused coping (e.g., using strategies to endure one's suffering), and other cognitive strategies, such as minimizing or rationalizing the abuser's behavior as less egregious than is true or as beyond the control of the abuser.

8. Characteristics shared by domestic violence perpetrators, including but not limited to mental health/personality disorders involving antisocial traits, mental health/personality disorders involving borderline traits, acceptance of male dominance ideology, lack of empathy, narcissism, preoccupation with the

3

desire to control or to have power over others, sexual arousal linked to aggression/violence, and exposure to family-of-origin interpersonal violence.

9. Typical methods by which some perpetrators of domestic violence and sexual assault gain and maintain power and control over victims, including but not limited to creating emotional, financial, physical, and/or some other type of dependence; isolating the victim from family members and friends; repeatedly attempting to undermine the victim's self-esteem; and gradual escalation of abuse and trauma.

## II. LEGAL ARGUMENT

Fed. R. Evid. 702 states:

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data; and
(c) the testimony is the product of reliable principles and methods;
(d) the expert has reliably applied the principles and methods to the facts of the case."

Thus, a district court's role is to act as a gatekeeper, and "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 597, 125 L. Ed. 2d 469 (1993). This requirement applies to nonscientific fields of expertise, such as the case here. *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167; 143 L. Ed. 2d 238 (1999). Thus, the Court must assess Dr. Shelby's qualifications to testify about each subject independently and to independently consider the relevance of each subject area and the reliability of each area of the proposed testimony. The Court must also consider Rules 401, 702, 703, 704, and 403 in carrying out its gatekeeper function.

Under Rule 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. As stated in the government's expert disclosure and as argued below, much of what Dr. Shelby will

4

testify about is not relevant to whether or not Mr. Olivas committed deprivation of rights under color of law.

Rule 703 contemplates that a court will have fully considered all aspects of an expert witness' proposed testimony before the witness is presented to the jury:

> "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

Fed. R. Evid. 703.  Furthermore, under Rule 703, a court must determine in advance whether or not hearsay sources are of a type reasonably relied upon by experts in the field and that they are in fact necessary predicates for relevant opinions or inferences, contained in a witness' testimony. The Court will need to consider the admissibility of Dr. Shelby's testimony under Fed. R. Evid. 704 as well.

Finally, under Rule 403, the Court must weigh the probative value of Dr. Shelby's testimony against the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R. Evid. 403. This rule exists to prevent the danger that exists in this case, of luring "the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. U.S.*, 519 U.S. 172, 180, 17 S. Ct. 644; 136 L. Ed. 2d 574 (1997). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.  Here, Dr. Shelby's proposed testimony is not only unfairly prejudicial but it will mislead the jury, and create undue delay and waste time.

## A.     The Court should exclude domestic violence perpetrator testimony

First, under Rule 401, the Court should exclude Dr. Shelby's regarding Topics 8 and 9[1], which the defense refers to as domestic violence perpetrator testimony, because her testimony is irrelevant.  Testimony on perpetrators' mental illness and/or personality disorders is simply irrelevant to whether Mr. Olivas committed deprivation of rights under color of law, deprivation of right to bodily integrity because it has no bearing on the underlying facts of an assault nor does it establish whether an accused actually committed a crime.  Moreover, Mr. Olivas has not put mental health conditions and/or personality disorders at issue; he did *not* give notice of expert evidence of a mental condition.  Whether Mr. Olivas was exposed to family-of-origin interpersonal violence is also irrelevant, moreover there is no evidence that he was exposed.  Furthermore, the term "perpetrator" is vague at best, as well as "male dominance ideology".

Testimony about perpetrators' "typical methods" has no bearing on the underlying facts of deprivation of rights under color law, deprivation of bodily integrity, nor does it establish whether an accused actually committed a crime.  Furthermore, testimony about perpetrator's "typical methods" is prohibited profile evidence.  *See U.S. v. Gillespie*, 852 F.2d 475, 480 (9th Cir. 1988) ("testimony of criminal profiles is highly undesirable as substantive evidence because it is of low probativity and inherently prejudicial.").

---

[1]  Topic 8. Characteristics shared by domestic violence perpetrators, including but not limited to mental health/personality disorders involving antisocial traits, mental health/personality disorders involving borderline traits, acceptance of male dominance ideology, lack of empathy, narcissism, preoccupation with the desire to control or to have power over others, sexual arousal linked to aggression/violence, and exposure to family-of-origin interpersonal violence.

Topic 9. Typical methods by which some perpetrators of domestic violence and sexual assault gain and maintain power and control over victims, including but not limited to creating emotional, financial, physical, and/or some other type of dependence; isolating the victim from family members and friends; repeatedly attempting to undermine the victim's self-esteem; and gradual escalation of abuse and trauma.

In addition, Dr. Shelby's testimony on topics 8 and 9 is offender characteristics testimony, and expert opinion on characteristics is only relevant if Mr. Olivas fits those characteristics. Thus, Dr. Shelby's proposed testimony inherently opines on Mr. Olivas' guilt, deprives Mr. Olivas of the jury's uninfluenced determination of facts, ultimately denying Mr. Olivas a fair trial.

Second, under Rules 702 and 703, there is no explanation as to how Dr. Shelby's experience leads to her conclusions. While the rule permits an expert witness to rely "solely or primarily on experience," the witness "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's notes (to the 2000 amendments). In other words, "[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it." *Id.*, (quoting *Daubert*). According to the government's notice, Dr. Shelby does not treat perpetrators, nor has she studied and published on perpetrators. Thus, based on the notice, Dr. Shelby's opinion is not based on empirical evidence or studies on perpetrators. Rather, her opinion seems to be based on anecdotal examples from treating abused women and children. Accordingly, her opinion on topics 8 and 9 exceeds the bounds of her expertise and she seeks to give opinion testimony concerning subjects for which she is not qualified. *See U.S. v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) ("It was not an abuse of discretion . . . to determine that [the expert's] 'practical experience in international finance' did not amount to practical experience determining whether a particular security is counterfeit . . ."). Her testimony on topics 8 and 9 must be excluded.

Finally, under Rule 403, Dr. Shelby's testimony regarding topics 8 and 9 should be excluded. Testimony that domestic violence perpetrators suffer from mental illness and/or personality disorders is inflammatory on its face given the stigmatizations and prejudice associated with mental illness and personality disorders and will unfairly prejudice Mr. Olivas, as well as divert the jury's attention from material issues in trial.

7

Furthermore, admission of this testimony will confuse issues at trial and mislead the jury as mental illness/personality disorders and domestic violence perpetrator profile testimony are not material issues in the trial.  Admission of testimony regarding mental illness/personality orders will waste time as it will create a mini-trial as to what constitutes a particular illness and/or disorder, how they are diagnosed, what are the symptoms, etc.  Thus, Rule 403 requires that testimony of topics 8 and 9 be excluded.

## B.   Dr. Shelby's proposed testimony does not satisfy Rules 701, 702, 703, and 704

In terms of topic 1[2], the government seeks to have Dr. Shelby testify to "common responses, reactions, and behaviors of sexual assault victims . . .". If a response is "common" then no "scientific, technical or other specialized knowledge" is needed. Furthermore, allowing Dr. Shelby to testify as to topic 1 would bolster the government's allegations and invade the province of the jury in deciding witness credibility as to the complainants responses, reactions, and behaviors.  In addition, based on the notice, it appears Dr. Shelby's proposed testimony about what she believes to be "common" is based on her personal experiences.  Without knowing the sample size of her cases or the population size of reported, and more importantly, substantiated sexual abuse cases, the Court cannot conclude her experiences are sufficient to justify her conclusion.  Thus, testimony regarding topic 1 should be excluded under Rule 702.  Such testimony is also unfairly prejudicial as it is inflammatory on its face, and like to confuse issues and waste time.

---

[2] Topic 1 states: Common responses, reactions, and behaviors of sexual assault and interpersonal violence victims, including testimony about the reasons why many victims do not report sexual assault or interpersonal violence (e.g., fear they will not be believed by authorities, their families, or their friends; fear of retaliation; desire to avoid stigmatization as a sexual distress from acknowledging the reality of the abuse) as well as similar reasons why victims often delay reporting, report in a piecemeal fashion, or never report these crimes. These responses include internally and externally derived fears, such as fear of unwanted or frightening emotional repercussions, as well as fear of physical or emotional retaliation by the abuser.

8

As to topic 2[3], Dr. Shelby's proposed testimony is about victim's responses to sexual assault and traumatic events.  The government fails to explain how a range of responses based on an individual's life experiences, is not common knowledge or why a juror would need help from an expert to understand and evaluate why victims have different responses based on their life experiences.  Allowing Dr. Shelby to testify as to topic 2 would bolster the government's allegations and invade the province of the jury in deciding witness credibility about responses.  In addition, based on the notice, it appears Dr. Shelby's proposed testimony is based on her personal experiences.  Without knowing the sample size of her cases or the population size of reported, and more importantly, substantiated sexual abuse cases, the Court cannot conclude her experiences are sufficient to justify her conclusion.  Thus, testimony regarding topic 2 should be excluded under Rule 702.  Such testimony is also unfairly prejudicial as it is inflammatory on its face, and like to confuse issues and waste time.

As to topic 3[4], Dr. Shelby's proposed testimony is about how power imbalances and control dynamics effect how victims responds to sexual assault and interpersonal violence.  The government fails to explain how power imbalances and control

---

[3] Topic 2. The influence of mental health, culture, knowledge of rights/education, as well as childhood, familial, personal, and prior relationship experiences on how victims respond to sexual assault and traumatic events. These may include, but will not be limited to, testimony that some cultural/subcultural experiences can lead to victims' silence, responses that appear to be passive, or behaviors that seem supportive toward those to whom the victim has made a commitment; sometimes individuals with less knowledge, education, or less familiarity with healthy relationships and/or their entitlement to relationships free from abuse are less likely to report abuse/assault; and that prior childhood, familial, personal, or interpersonal relationship experiences, such as being disbelieved when reporting abusive experiences, being or seeing others ostracized, shamed, or stigmatized following abusive experiences/disclosures, or expecting abuse as an inevitable part of a relationship may lead individuals to abstain from reporting, delay reporting, minimize information in reports, engage in piecemeal reporting patterns, and/or continue interactions with their abusers.

[4] Topic 3: The roles that power imbalances and control dynamics in interpersonal relationships play in how victims may respond to sexual assault and interpersonal violence. These may include, but will not be limited to, testimony that victims with power deficits relative to their partners in a relationship—whether it be due to significant discrepancies in financial stability, social power, physical power, mental health, or education/knowledge—may continue to interact with their abusers.

9

dynamics in relationships, are not common knowledge or why a juror would need help from an expert to understand and evaluate this.  Allowing Dr. Shelby to testify as to topic 3 would bolster the government's allegations and invade the province of the jury in deciding witness credibility about responses to power imbalances and control dynamics.  In addition, based on the notice, it appears Dr. Shelby's proposed testimony is based on her personal experiences.  Without knowing the sample size of her cases or the population size of reported, and more importantly, substantiated sexual abuse cases, the Court cannot conclude her experiences are sufficient to justify her conclusion. Thus, testimony regarding topic 3 should be excluded under Rule 702.  Such testimony is also unfairly prejudicial as it is inflammatory on its face, and like to confuse issues and waste time.

As to topic 4[5], Dr. Shelby's proposed testimony is about how the stigma and shame victims feel plays into how they interact with their abusers.  The government fails to explain how feeling shame and stigma as a result of being abused and then the shame and stigma effecting how a victim interacts with her abuser, is not common knowledge or why a juror would need help from an expert to understand and evaluate this.  Allowing Dr. Shelby to testify as to topic 4 would bolster the government's allegations and invade the province of the jury in deciding witness credibility about how the complainants in this case allegedly interacted with Mr. Olivas.  In addition, based on the notice, it appears Dr. Shelby's proposed testimony is based on her personal experiences.  Without knowing the sample size of her cases or the population size of reported, and more importantly, substantiated sexual abuse cases, the Court cannot conclude her experiences are sufficient to justify her conclusion.  Thus,

---

[5] Topic 4: The roles that stigma and sense of shame from being a victim of sexual or interpersonal violence play in how victims interact with their abusers. These may include, but will not be limited to, testimony that fear of being labeled a victim leads some victims to continue to interact with their abusers, in attempt to avoid stigmatization and an overwhelming sense of shame. The testimony may further include explanations that the desire to avoid stigmatization and shame can provide an incentive for survivors to continue their interactions with abusers.

10

testimony regarding topic 4 should be excluded under Rule 702.  Such testimony is also unfairly prejudicial as it is inflammatory on its face, and like to confuse issues and waste time.

As to topic 5[6], Dr. Shelby's proposed testimony is about reasons why a victim might delay, forego, selectively, or piecemeal report.  The government fails to explain how a range of reporting reasons and responses, is not common knowledge or why a juror would need help from an expert to understand and evaluate why victims have different reasons and responses to reporting abuse.  Allowing Dr. Shelby to testify as to topic 5 would bolster the government's allegations and invade the province of the jury in deciding witness credibility about reporting reasons and reporting responses.  In addition, based on the notice, it appears Dr. Shelby's proposed testimony is based on her personal experiences.  Without knowing the sample size of her cases or the population size of reported, and more importantly, substantiated sexual abuse cases, the Court cannot conclude her experiences are sufficient to justify her conclusion.  Thus, testimony regarding topic 5 should be excluded under Rule 702.  Such testimony is also unfairly prejudicial as it is inflammatory on its face, and like to confuse issues and waste time.

As to topic 6[7], Dr. Shelby's proposed testimony is about reasons why a victim might remain in a relationship where the victim continues to suffer at the hands of the

---

[6] Topic 5: Reasons why a victim of sexual assault and interpersonal violence might delay or forego reporting or engage in selective reporting or piecemeal reporting over time. The reasons may include, but will not be limited to, the following: fear of retaliation; belief that reporting will accomplish little to bring about safety; desire to avoid stigma; few mental health resources to cope with the demands of reporting; intense distress when remembering abusive episodes/avoidance of trauma-related topics; dissociative coping responses that interfere with memory processes; other neurobiological responses to trauma; desire to re-interpret sexual assault as a consensual act to avoid facing the reality of the abusive nature of the relationship; fear of not being believed; belief that one cannot change one's circumstances, but must merely endure them; and other reactions related to childhood, multiple, or extreme experiences of sexual assault/traumatic events.

[7] Topic 6: Reasons why a victim of sexual assault and trauma might remain in a relationship, romantic or otherwise, where the victim continues to suffer at the hands of

abuser.  The government fails to explain how a wide range of reasons for staying in a relationship, is not common knowledge or why a juror would need help from an expert to understand and evaluate why victims have different reasons for staying in a relationship.  Allowing Dr. Shelby to testify as to topic 6 would bolster the government's allegations and invade the province of the jury in deciding witness credibility about reasons for staying in a relationship.  In addition, based on the notice, it appears Dr. Shelby's proposed testimony is based on her personal experiences. Without knowing the sample size of her cases or the population size of reported, and more importantly, substantiated sexual abuse cases, the Court cannot conclude her experiences are sufficient to justify her conclusion.  Thus, testimony regarding topic 6 should be excluded under Rule 702.  Such testimony is also unfairly prejudicial as it is inflammatory on its face, and like to confuse issues and waste time.

As to topic 7[8], Dr. Shelby's proposed testimony is about coping mechanisms. The government fails to explain how a wide range of coping mechanisms, is not common knowledge or why a juror would need help from an expert to understand and evaluate why victims have different coping mechanisms.  Allowing Dr. Shelby to testify as to topic 7 would bolster the government's allegations and invade the province

---

the abuser. The reasons may include, but will not be limited to, staying in relationships because of fear of further physical, sexual, or emotional abuse and/or retaliation for leaving; having mental health conditions that make it more difficult for a person to end the relationship; holding the maladaptive belief that violence/abuse is part of all relationships; hoping that the abuser will stop and change for the better; having a reduced sense of personal agency, such as the belief that there is little or nothing the victim can do to escape the relationship; vulnerability to dependency on the abuser, in cases where the abuser has isolated the victim and cultivated a strong sense of dependency on the abuser; and holding cultural/religious beliefs that a person should remain in a relationship despite the shortcomings or mistakes made by the person's romantic partner.

[8] Topic 7: Coping mechanisms used by victims of sexual assault and other forms of trauma, including but not limited to denial, wishful thinking, avoidance of the assault- and trauma-related topics due to significant distress associated with these recollections; use maladaptive problem-focused coping (e.g., trying to enhance safety by acquiescing, or complying, or attempting to appease the abuser), maladaptive use of emotion-focused coping (e.g., using strategies to endure one's suffering), and other cognitive strategies, such as minimizing or rationalizing the abuser's behavior as less egregious than is true or as beyond the control of the abuser.

of the jury in deciding witness credibility about coping mechanisms.  In addition, based on the notice, it appears Dr. Shelby's proposed testimony is based on her personal experiences.  Without knowing the sample size of her cases or the population size of reported, and more importantly, substantiated sexual abuse cases, the Court cannot conclude her experiences are sufficient to justify her conclusion.  Thus, testimony regarding topic 7 should be excluded under Rule 702.  Such testimony is also unfairly prejudicial as it is inflammatory on its face, and like to confuse issues and waste time.

### III. CONCLUSION

For the reasons stated above, the Court should exclude Dr. Shelby's testimony.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  July 19, 2021          By  */s/ Angela C. C. Viramontes*

ANGELA C. C. VIRAMONTES
CRAIG A. HARBAUGH
Deputy Federal Public Defenders
Attorneys for JOHN JACOB OLIVAS