TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ELI A. ALCARAZ (Cal. Bar No. 288594)
Assistant United States Attorney
Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6938
     Facsimile: (951) 276-6202
     Email:    Eli.Alcaraz@usdoj.gov
FRANCES S. LEWIS (Cal. Bar No. 291055)
Assistant United States Attorney
Deputy Chief, General Crimes Section
     312 North Spring Street, 15th Floor
     Los Angeles, California 90012
     Telephone: (213) 894-4850
     Facsimile: (213) 894-0141
     Email:    Frances.Lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 18-231-JGB |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT BASED ON STATUTE OF LIMITATIONS (DKT. 76) |
| v. | |
| JOHN JACOB OLIVAS, | Hearing Date: November 15, 2021 |
| Defendant. | Hearing Time: 2:00 P.M.<br>Location:    Courtroom of the<br>             Hon. Jesús G. Bernal |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Eli A. Alcaraz and Frances S. Lewis hereby files its opposition to defendant's motion to dismiss the indictment based on the statute of limitations (dkt. 76).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 26, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

 /s/
ELI A. ALCARAZ
FRANCES S. LEWIS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.   INTRODUCTION................................................1

II.  THE INDICTMENT..............................................1

III. STATUTORY FRAMEWORK.........................................2

IV.  ARGUMENT....................................................3

    A.   NO TEXTUAL AMBIGUITY IN 18 U.S.C. § 242 MEANS THE
        INQUIRY ENDS THERE.....................................3

    B.   DEFENDANT'S FOCUS ON WHETHER DEATH MIGHT PRACTICALLY
        BE IMPOSED IS MISPLACED AND IS NOT A BASIS FOR
        DISMISSAL.............................................4

        1.   Even When a Defendant Is Ineligible for a
            Punishment, the Court Still Looks to the Text of
            the Enabling Statute Regarding What Crimes Are
            Punishable by "Death" to Determine the Statute of
            Limitations.......................................5

        2.   *Coker*'s Prohibition on Actual Death is a
            Distraction.......................................9

        3.   Defendant's Request for Lenity Must Be Rejected.....12

        4.   Relying on the Text of the Enabling Statute
            Rather Than Whether Death Can Actually Be Imposed
            Provides for Certainty and Avoids Disparities.......13

V.   CONCLUSION.................................................15

**Table of Authorities**

Page(s)

**Cases**

BedRoc Ltd., LLC v. United States,
  541 U.S. 176 (2004) ............................................. 3

Campbell v. Allied Van Lines Inc.,
  410 F.3d  (9th Cir. 2005) ....................................... 3

Coker v. Georgia,
  433 U.S. 584 (1977) ........................................... 5, 7

Coon v. United States,
  360 F.2d 550 (8th Cir. 1966) ............................... 14, 15

Dean v. United States,
  556 U.S. 568 (2009) ............................................ 12

Furman v. Georgia,
  408 U.S. 238 (1972) ............................................. 6

I.N.S. v. Nat'l Ctr. for Imm. Rights, Inc.,
  502 U.S. 183 (1991) ............................................. 4

United States v. Briggs,
  141 S.Ct. 467 (2020) .................................... 9, 11, 15

United States v. Cheely,
  36 F.3d 1439 (9th Cir. 1994) ................................... 10

United States v. Dean,
  945 F.Supp.2d 1110 (C.D. Cal. 2013) ............................. 4

United States v. Ealy,
  363 F.3d 292 (4th Cir. 2004) ................................... 11

United States v. Edwards,
  159 F.3d 1117 (8th Cir. 1998) .................................. 11

United States v. Gallaher,
  624 F.3d 934 (9th Cir. 2010) ........................... 5, 6, 7, 12

United States v. Gallenardo,
  579 F.3d 1076 (9th Cir. 2009) .................................. 12

United States v. Helmich,
  521 F.Supp. 1246 (M.D. Fla. 1981) ............................... 7

United States v. Johnson,
  270 F.Supp.2d 1060 (N.D. Iowa 2003) ............................. 7

United States v. Kennedy,
  618 F.2d 557 (9th Cir. 1980) ................................. 6, 7, 8

United States v. Korey,
  614 F.Supp.2d 573 (W.D. Pa. 2009) ................................. 7

United States v. Ledbetter,
  2015 WL 4751468 (S.D. Ohio Aug. 12, 2015) .................... 13, 14

United States v. Manning,
  56 F.3d 1188 (9th Cir. 1995) ............................. 9, 10, 11

United States v. Payne,
  591 F.3d 46 (2d Cir. 2010) ....................................... 14

United States v. Real Property Located at 475 Martin Lane,
  545 F.3d 1134 (9th Cir. 2008) ..................................... 4

United States v. Watson,
  496 F.2d 1125 (4th Cir. 1973) ..................................... 6

United States v. Workinger,
  90 F.3d 1409 (9th Cir. 1996) ..................................... 12

**Statutes**

18 U.S.C. § 242............................................. 3, 1, 2, 3

18 U.S.C. § 1111.................................................... 6

18 U.S.C. § 1716................................................... 10

18 U.S.C. § 2241.................................................... 8

18 U.S.C. § 3281.......................................... 1, 2, 3, 13

18 U.S.C. § 3282.................................................... 2

18 U.S.C. § 3299.................................................... 8

Pub. L. No. 103-322................................................. 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant John Jacob Olivas ("defendant") was indicted on August 1, 2018 (dkt. 1) and made his initial appearance about two weeks later (dkt. 9). The Indictment charges defendant with three counts of deprivation of liberty under color of law, in violation of 18 U.S.C. § 242, for aggravated sexual abuse and attempted aggravated sexual abuse of his intimate partners. (Dkt. 1.) The face of the Indictment alleges that the bases of the charges against defendant took place in or about January and September 2012, and on or about November 9, 2012. (Id.) Nearly three years after his initial appearance, and after receiving several continuances over the United States' objection, defendant filed a motion to dismiss the indictment based on the statute of limitations. ("Motion," Dkt. 76.)

The Court should deny the Motion for several reasons. First, courts look to the plain text of the enabling statutes to determine whether the statute of limitations in 18 U.S.C. § 3281 applies and so the charges here can be brought without limitation. Second, defendant's focus on the practical availability of being put to death is a distraction. Third, the rule of lenity does not apply here. Finally, looking to the text of the enabling statute avoids perverse incentives and other issues. Accordingly, this case should proceed to trial on the currently scheduled date--November 30, 2021.

**II.   THE INDICTMENT**

Count 1 of the Indictment charges defendant with deprivation of liberty (including the right to bodily integrity) under color of law, in violation of 18 U.S.C. § 242. (Dkt. 1.) The charge specifically

alleges that the "offense included attempted aggravated sexual abuse" of victim K.L.  (Id.)

Counts 2 and 3 of the Indictment charge defendant with deprivation of liberty (including the right to bodily integrity) under color of law, in violation of 18 U.S.C. § 242.  (Id.)  Both counts specifically allege that the offenses "included aggravated sexual abuse and attempted aggravated sexual abuse" of victim N.B. (Id.)

### III. STATUTORY FRAMEWORK

Title 18, United States Code, Section 242, concerns "[w]hoever, under color of law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . shall be fined under this title or imprisoned . . . ."  It sets forth specific punishments that "if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, [then a defendant] shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."  Id.

For most federal crimes, 18 U.S.C. § 3282 provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years." But 18 U.S.C. § 3281 provides that "indictment[s] for any offense punishable by death may be found at any time without limitation."

2

**IV. ARGUMENT**

    **A.  NO TEXTUAL AMBIGUITY IN 18 U.S.C. § 242 MEANS THE INQUIRY ENDS THERE**

Section 242, titled "Deprivation of rights under color of law," has no textual ambiguity. Section 242 provides for increased penalties, specifically, the death penalty, if either (1) death results from the acts committed in violation of this section or (2) such acts include kidnapping or attempt to kidnap, <u>aggravated sexual abuse, or attempt to commit aggravated sexual abuse</u>, or an attempt to kill. 18 U.S.C. § 242 (emphasis added). Deprivation of liberty with death resulting or through these enumerated means, including aggravated sexual abuse, "shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death." <u>Id.</u>  In other words, the enabling statue provides that when someone deprives another person of liberty under color of law through aggravated sexual abuse or attempt to commit aggravated sexual abuse (the two means charged in this case), then the offense is punishable by death, among other heightened penalties. As noted earlier in this brief, under 18 U.S.C. § 3281 "any offense punishable by death may be found at any time without limitation."

As the Supreme Court has said, "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." <u>BedRoc Ltd., LLC v. United States</u>, 541 U.S. 176, 183 (2004); <u>accord</u> <u>Campbell v. Allied Van Lines Inc.</u>, 410 F.3d 681, 622 (9th Cir. 2005). Defendant asserts that the "text of § 242 <u>gives the appearance</u> of authorizing a sentence of death for a violation of the statute that involves aggravated sexual abuse (Mot. at 5 (emphasis added)). Yet,

3

he has not pointed to any actual ambiguity in the statutory text. That is because there is none. The inquiry must end there.

Because defendant cannot point to a textual ambiguity, his Motion spends unnecessary pages trying to divine Congress's intent by walking through revisions to Section 242 since the Civil Rights Act of 1866. (Mot. at 4-6.) But, importantly, "[r]esorting to legislative history and other extrinsic evidence as interpretive tools is inappropriate if the statute is clear on its face." United States v. Dean, 945 F.Supp.2d 1110, 1117-18 (C.D. Cal. 2013) (citing United States v. Real Property Located at 475 Martin Lane, 545 F.3d 1134, 1143-44 (9th Cir. 2008)). Relying on I.N.S. v. Nat'l Ctr. for Imm. Rights, Inc., 502 U.S. 183, 189 (1991), for the proposition that a "title of a statute or section can aid in resolving an ambiguity in the legislation's text" (Mot. at 5), defendant tries to cobble together an ambiguity. But there is no ambiguity in Section 242's text and the title, "Deprivation of rights under color of law," neither resolves an ambiguity nor creates one. The Court should decline defendant's apparent invitation to dive into legislative history or other section titles (Mot. at 5) that are not the text of Section 242. Accordingly, by its plain terms, Section 242 charges that allege aggravated sexual abuse and attempt to commit aggravated sexual abuse can be punished by death, the result of which is that Section 3281 permits the return of an indictment without a limitations period. Thus, defendant's Motion should be denied.

**B.   DEFENDANT'S FOCUS ON WHETHER DEATH MIGHT PRACTICALLY BE IMPOSED IS MISPLACED AND IS NOT A BASIS FOR DISMISSAL**

Courts look to the language of enabling statutes themselves for whether a charge is "punishable by death," and in turn is a charge

that can be brought without limitation.  To focus on whether, factually, a penalty might actually be imposed is not the inquiry.

> 1. Even When a Defendant Is Ineligible for a Punishment,[1] the Court Still Looks to the Text of the Enabling Statute Regarding What Crimes Are Punishable by "Death" to Determine the Statute of Limitations

In United States v. Gallaher, 624 F.3d 934 (9th Cir. 2010), the Ninth Circuit made clear that "'punishable by death' is a calibration of the seriousness of the crime as viewed by Congress, not the punishment that could actually be imposed on the defendant in an individual case." Id. at 940-41.  In Gallaher, also cited by defendant (Mot. at 7), the Ninth Circuit explained that under the Federal Death Penalty Act of 1994, the death penalty was conditionally eliminated for Native American defendants prosecuted under the Major Crimes Act or the General Crimes Act, subject to the penalty being reinstated by a tribe's governing body.  624 F.3d at 936.  That defendant was indicted for first degree murder more than 14 years after he killed another person on a reservation.  Id.  He moved to dismiss the indictment and argued that the five-year federal statute of limitations for noncapital crimes applied to his first degree murder indictment because he was not eligible for the death penalty.  Id. at 937.  The Ninth Circuit recognized that the relevant tribes had not elected to permit capital punishment for enumerated crimes in the Major Crimes Act so it was "undisputed that first degree murder committed by a member of the Confederated Tribes on the

---

[1] The United States agrees with defendant that the Eighth Amendment prohibits a person convicted of raping an adult woman from actually suffering the death penalty.  (Mot. at 3 (citing Coker v. Georgia, 433 U.S. 584, 592 (1977)).)

5

Colville Reservation is not, as a practical matter, punishable by death." Id. at 939.

The Ninth Circuit nevertheless determined that the crime "remains subject to the federal statute of limitations for capital crimes." Citing the federal murder statute (18 U.S.C. § 1111, which provides "[w]however is guilty of murder in the first degree shall be punished by death or by imprisonment for life"), the Ninth Circuit explained first degree murder is ordinarily a capital crime. Id. at 939. The Gallaher Court reasoned that when Furman v. Georgia, 408 U.S. 238 (1972), "established a de facto moratorium on executions nationwide, we continued to categorize 'offenses that under existing statutory language are punishable by death' as capital crimes." Id. at 939-40 (emphasis added). That is because United States v. Kennedy, 618 F.2d 557 (9th Cir. 1980), held that Furman's prohibition on imposing death "rendered unconstitutional only the penalties that could be exacted under certain statutes. It did not necessarily have the effect of invalidating all statutes that were tied to the concept of 'capital' case. If the statute's purpose derives from the nature of the offense with which the defendant is charged and not from the potential severity of the punishment, it remains in effect." Id. at 558 (emphasis added); see also United States v. Watson, 496 F.2d 1125, 1127 (4th Cir. 1973) (in the wake of Furman, explaining that "[i]n a very literal sense, the offense defined in § 1111 is still a 'capital crime;' the statute still authorizes the imposition of the death penalty and Congress has not repealed it."). The Gallaher Court explained that "whether a crime is 'punishable by death' under § 3281 or 'capital' under § 3282 depends on whether the death penalty may be imposed for the crime under the enabling statute, not 'on

6

whether the death penalty is in fact available for defendants in a particular case.'" 624 F.3d at 940 (citation omitted); see also United States v. Helmich, 521 F.Supp. 1246 (M.D. Fla. 1981) (finding that the legislature providing unlimited time to charge the most serious crimes is unrelated to actual availability of the death penalty); United States v. Korey, 614 F.Supp.2d 573, 581 (W.D. Pa. 2009) ("Constitutional considerations regarding whether the defendant can actually be sentenced to death for a certain crime do not impact the statute of limitations analysis." (emphasis in original)); United States v. Johnson, 270 F.Supp.2d 1060, 1063 (N.D. Iowa 2003) (holding that a constitutionally effective death penalty is not required for a charged crime to be a capital offense within the meaning of § 3281). The Gallaher Court held that the "plain text of [the challenged statute] mandates that we continue to categorize [the crime] as a crime punishable by death." 624 F.3d at 941.

   Here too, the Court should look to the plain text of Section 242, which provides that a deprivation of liberty based on aggravated sexual abuse and attempt to commit aggravated sexual abuse are crimes punishable by death. As explained more fully in the next section, the practical effect that Coker, 433 U.S. 584 (1977), would prohibit the actual imposition of death, does not affect the analysis. The plain text of the statute provides for death and that is a "calibration of the seriousness of the crime as viewed by Congress." See Gallaher, 624 F.3d at 940; see also Kennedy, 618 F.2d at 559 ("We find that the specific treatment of 'capital' cases . . . derives from the nature of the offense charged and not the nature of the penalty.").

7

1    Although the question before the Court is resolved by the plain
2 text of Section 242, there is another reason to understand why
3 Section 242's provision for "death" for deprivations of liberty based
4 on aggravated sexual abuse and attempt to commit aggravated sexual
5 abuse is a calibration by Congress of the seriousness of the crime; a
6 reason why the statute still authorizes the imposition of the death
7 penalty and Congress has not repealed it.  The reason is the nature
8 of aggravated sexual abuse and attempt to commit aggravated sexual
9 abuse.
10   Specifically, as defendant acknowledges, in 1994 "Congress
11 created additional aggravating circumstances under § 242 that would
12 . . . be subject to a heightened statutory maximum."  (Mot. at 5.)
13 He concedes, as he must, that one "such aggravator is where the
14 violation of § 242 involved 'aggravated sexual abuse.'"  (Id. (citing
15 Pub. L. No. 103-322, § 320103(b)[3] (which inserted "from the acts
16 committed in violation of this section or if such acts include
17 kidnapping or an attempt to kidnap, aggravated sexual abuse, or an
18 attempt to commit aggravated sexual abuse, or an attempt to kill,
19 shall be fined under this title, or" after "death results")).)
20 Defendant agrees that, "[i]n doing so, [Congress] incorporated a
21 separate provision, 18 U.S.C. § 2241, a statute that has a statutory
22 maximum of life."  (Id.)  Under 18 U.S.C. § 3299, aggravated sexual
23 abuse and attempt to commit aggravated sexual abuse, as defined in
24 § 2241, can be brought "at any time without limitation."  Id.
25 (providing that charges under Chapter 109A, which include aggravated
26 sexual abuse and attempt to commit aggravated sexual abuse under
27 § 2241, can be brought "at any time without limitation").
28

8

Accordingly, although aggravated sexual abuse and attempt to commit aggravated sexual abuse do not on their own provide for death, they are crimes that can be brought at any time, which is a calibration by Congress of the seriousness of the crime.  The plain language of Section 242 provides for death, which in turn allows charges to be brought at any time.  Even in the absence of being able to put someone to death, it makes sense that a deprivation of liberty based on underlying crimes that can be brought without limitation, should be able to be brought at any time.  In other words, it makes sense why the plain language of Section 242 still authorizes the imposition of the death penalty and Congress has not repealed it. See United States v. Briggs, 141 S.Ct. 467, 473 (2020) ("[T]he factors that lawmakers are likely to take into account when fixing the statute of limitations for a crime differ significantly from the considerations that underlie our Eighth Amendment decisions.").

The bottom line is an unlimited limitations period applies under the plain language of Section 242, and the Motion should be denied.

    2. *Coker*'s Prohibition on Actual Death is a Distraction

Defendant conflates an enabling statute providing for death with the whether death may actually be imposed -- but those are two distinct issues.  (Mot. at 3 ("[I]t has been unconstitutional to impose the death penalty for sexual assault of an adult woman."), at 6 ("The Court should avoid this absurd result, and, as a matter of constitutional avoidance, should interpret the statute so that its text is constitutional. . . .  The only way to do so it to conclude that the 'may be sentenced to death' provision does not apply to sexual-abuse crimes.").)  Coker's prohibition on death for rape of an adult woman is assessed against United States v. Manning, 56 F.3d

9

1188 (9th Cir. 1995), which explained that a blanket prohibition on imposing the death penalty does not affect a statute of limitations based on a punishment of death. Defendant Manning was convicted of murder by mail bomb under 18 U.S.C. § 1716(a). Id. at 1193. Although defendant Manning's crime was actually punishable by death at the time it was committed, the Ninth Circuit later held in United States v. Cheely, 36 F.3d 1439 (9th Cir. 1994), that the provisions authorizing the death penalty for crimes committed in violation of 18 U.S.C. § 1716 were unconstitutional because those provisions "do not genuinely narrow the class of persons eligible for the death penalty." Id. at 1446. Accordingly, defendant Manning argued that because Section 1716's death provisions were unconstitutional, the five-year statute of limitations period applicable to noncapital offenses applied and the prosecution was thus time-barred. 56 F.3d at 1195.

    This is essentially the same argument defendant here presents in the instant Motion. The Manning Court, however, affirmed the reasoning that "[w]hen a decision renders unconstitutional a penalty for an offense, it does not necessarily have the effect of invalidating all statutes that were tied to the concept of a capital case. If the statute's purpose derives from the nature of the offense with which the defendant is charged and not from the potential severity of the punishment, it remains in effect. After all, in a very literal sense, the offense defined in section 1716 is still a capital crime; the statute still authorizes the imposition of the death penalty and Congress has not repealed it." Id. at 1196 (streamlined; emphasis in original.) Importantly, the Manning Court held that "Congress has made the judgment that some crimes are so

10

serious that an offender should always be punished if caught.  Murder by mail bomb is one such offense.  This means that Cheely did not effect the statute of limitations in sections 3281 and 3282, because those provisions derive their justification from the serious nature of the crime rather than from a concern about, for example, what procedural protections those who face a penalty as grave as death are to receive.  Thus, we hold that section 1716 offenses are still punishable 'at any time without limitation' notwithstanding Cheely." Id.; see also United States v. Ealy, 363 F.3d 292 (4th Cir. 2004) ("We have long recognized that a court's inability to impose the death penalty for a particular crime repeals neither the statute making that crime punishable by death nor statute that 'depend for their operation on the defendant being charged with a capital crime.' Even if a court cannot impose the death penalty for an offense, that does not render the offense 'not capital' with respect to other statutes 'predicated in their operative effect upon the concept of capital crimes.'" (streamlined)); see also United States v. Edwards, 159 F.3d 1117, 1138 (8th Cir. 1998) (murder by arson, in violation of 18 U.S.C. § 844(i): § 3281 applicable even though the death penalty procedures in the charging statute had been ruled unconstitutional); cf. Briggs, 141 S.Ct. at 473 ("One factor that legislators may find important in setting the statute of limitations for a crime is the difficulty of gathering evidence and mounting a prosecution for that offense.  This factors may have been influential in calibrating the statutes of limitations for rape and other sexual offenses in more recent years.").

    Here, a defendant cannot actually be put to death for violating Section 242 through aggravated sexual abuse, just like the defendant

in Manning could not be put to death under Section 1716 following Cheely. But, just like the defendant in Manning in the wake of Cheely, defendant Olivas's crimes are ones where "an offender should always be punished if caught" because the "statute still authorizes the imposition of the death penalty and Congress has not repealed it." The Court should not be distracted by defendant conflating what is authorized by the enabling statute and what can practically be imposed as punishment.

### 3. Defendant's Request for Lenity Must Be Rejected

The rule of lenity only applies to statutes that are "grievously ambiguous." Dean v. United States, 556 U.S. 568, 577 (2009); see also United States v. Gallenardo, 579 F.3d 1076, 1087 (9th Cir. 2009) ("The rule of lenity applies only where after seizing everything from which aid can be derived, the Court is left with an ambiguous statute. The language of the statute must be grievously ambiguous.") (streamlined). Defendant has not shown there is an ambiguity in the text of Section 242, let alone shown that it is "grievously ambiguous," yet he asks the Court to use the rule of lenity to resolve the Motion in his favor. (Mot. at 9-10.) As noted, the text of Section 242 says that the penalty for deprivation of liberty under color of law through aggravated sexual abuse can be punished by death. There is no ambiguity in the words, so what defendant is really asking the Court is to apply lenity to the application of a statute of limitations based on unambiguous statutory text.

The Ninth Circuit has declined to apply the rule of lenity in situations like this, where a statute lists death as a punishment, but as a practical matter, a defendant cannot be subject to death. Gallaher, 624 F.3d at 941 ("Gallaher invoked the rule of lenity, but

we do not find the rule applicable to this case."); cf. United States v. Workinger, 90 F.3d 1409, 1419 (9th Cir. 1996) (Kozinski, J., concurring in part and concurring in judgment) (noting that when a statute of limitations is at issue, "I see no reason to apply the rule of lenity in any event. . . . [T]here's no concern here that a court will render criminal what the legislature meant to remain legal. . . . [T]he only doubt is whether the government waited too long to prosecute. There's no reason to apply the rule of lenity on that point."). Thus, in the absence of grievously ambiguous text and specifically concerning the applicability of a statute of limitations, the Court should decline to apply the rule of lenity.

        4.    <u>Relying on the Text of the Enabling Statute Rather Than Whether Death Can Actually Be Imposed Provides for Certainty and Avoids Disparities</u>

    The following examples show why, in an overall scheme, looking to the plain text of an enabling statute makes more sense than engaging in a case-by-case analysis of whether death can or will actually be imposed.

    First, it ties the statute of limitations to the nature of the crime and not the decisions of individual prosecutors, factfinders, or courts. In <u>United States v. Ledbetter</u>, 2015 WL 4751468 (S.D. Ohio Aug. 12, 2015), the United States filed a notice of its intent not to seek the death penalty for murder charges, and the defendants argued that "the murder counts are no longer 'punishable by death' within the meaning of 18 U.S.C. § 3281." <u>Id.</u> at *4. The defendants then argued that the prosecutor's decision not to seek the death penalty changed the statute of limitations to a five-year statute when death was no longer practically available. The <u>Ledbetter</u> Court held that to "determine whether the murder offenses are 'punishable by death'

13

within the meaning of § 3281, this Court looks to the character of the offenses and the penalties set out in the enabling statutes--not whether the Government is in fact seeking the death penalty." Id. at *6. It continued:

> Imagine the perverse incentives were the rule otherwise. If Defendants' view were correct, and the applicability of the statute of limitations hinged solely on prosecutorial discretion, to seek or forego the death penalty, what prosecutor in her right mind would ever forego the death penalty when prosecuting a capital crime that was committed more than five years before the filing of the charges? Such a prosecution would be time-barred under Defendants' view--virtually ensuring that no prosecutor would ever show discretion or leniency in the penalties sought.

Id. (emphasis in original); see also United States v. Payne, 591 F.3d 46, 58-59 (2d Cir. 2010) ("[I]n determining whether an offense is 'punishable by death' within the meaning of § 3281--a provision designed to deny the defendant any right of repose--we look to the character of the offense and the penalties that are set out by statute. An offense 'punishable by death,' within the meaning of § 3281, is one for which the statute authorizes death as a punishment, regardless of whether the death penalty is sought by the prosecution or ultimately found appropriate by the factfinder or the court."). A general approach of looking to the text of the enabling statute is consistent with Ninth Circuit precedent and in situations where death can actually be sought by the United States, promotes appropriate charging decisions.

Second, it provides certainty upfront. In Coon v. United States, 360 F.2d 550 (8th Cir. 1966), the court assessed the question "do the courts look to the charge as laid in the indictment or to the ultimate result of the trial in determining whether the offense under § 2113(e) is punishable by death within the meaning of the no-

14

limitations statute?" Id. at 554. The Eighth Circuit reasoned that to "hold, as appellant contends, that the death penalty must actually be assessed before an offense becomes 'capital' within the meaning of the statutes under consideration, would lead to the absurd result of subordinating the administration of criminal justice to a formula that would dictate either death or freedom in all offenses proscribed by § 2113(e) where the indictment has not been found within five years from the date the offense was committed or from the date the five-year statute became operative." Id.; see also Briggs, 141 S.Ct. at 471 ("[O]ne principal benefit of statutes of limitations is that typically they provide clarity.").

The plain, unambiguous text of Section 242 provides for "death," and not only should that guide the Court's decision, but looking to the plain text of the enabling statute makes additional sense considering these examples.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to dismiss the indictment based on the statute of limitations (dkt. 76).

15