TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ELI A. ALCARAZ (Cal. Bar No. 288594)
Assistant United States Attorney
Riverside Branch Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6938
    Facsimile: (951) 276-6202
    Email:    Eli.Alcaraz@usdoj.gov
FRANCES S. LEWIS (Cal. Bar No. 291055)
Assistant United States Attorney
Deputy Chief, General Crimes Section
    312 North Spring Street, 15th Floor
    Los Angeles, California 90012
    Telephone: (213) 894-4850
    Facsimile: (213) 894-0141
    Email:    Frances.Lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 18-231-JGB |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S AMENDED MOTION *IN LIMINE* TO EXCLUDE OR LIMIT "SEXUAL ASSAULT EXPERT" TESTIMONY (DKT. 83); EXHIBIT 1 |
| v. | |
| JOHN JACOB OLIVAS, | |
| Defendant. | Hearing Date: November 15, 2021<br>Hearing Time: 2:00 P.M.<br>Location:    Courtroom of the<br>           Hon. Jesús G. Bernal |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Eli A. Alcaraz and Frances S. Lewis hereby files its opposition to defendant's

1  amended motion <u>in limine</u> to exclude or limit "sexual assault expert"

2  testimony (dkt. 83).

3       This opposition is based upon the attached memorandum of points

4  and authorities and the attached Exhibit 1, the files and records in

5  this case, and such further evidence and argument as the Court may

6  permit.

7   Dated: October 26, 2021          Respectfully submitted,

8                                    TRACY L. WILKISON
                                     Acting United States Attorney
9
                                     SCOTT M. GARRINGER
10                                   Assistant United States Attorney
                                     Chief, Criminal Division
11
                                      /s/
12                                   _____
                                     ELI A. ALCARAZ
13                                   FRANCES S. LEWIS
                                     Assistant United States Attorneys
14
                                     Attorneys for Plaintiff
15                                   UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Table of Authorities...............................................4

I.   INTRODUCTION..................................................1

II.  BACKGROUND...................................................2

III. ARGUMENT.....................................................5

     A.   Legal Standard..........................................5

     B.   Dr. Shelby's Opinion on Common Characteristics of
          Victims Is an Appropriate Subject for Expert Testimony....6

          1.   Dr. Shelby's Testimony on Sexual Abuse Will Help
               the Jury Understand the Evidence and Determine
               Facts in Issue......................................6

          2.   Dr. Shelby's Testimony Will Properly Help the
               Jury Evaluate the Credibility of the Victims and
               Other Witnesses.....................................9

          3.   Dr. Shelby's Opinions Are Based on Sufficient
               Facts and Data.....................................11

     C.   Dr. Shelby's Opinion on Common Characteristics of
          Perpetrators Is Also Relevant and Based on Her
          Experience.............................................12

          1.   Testimony about Perpetrators is Relevant...........12

          2.   Dr. Shelby is Qualified............................16

     D.   Dr. Shelby's Testimony Is Not Unfairly Prejudicial.......16

     E.   No Daubert Hearing is Required..........................17

IV.  CONCLUSION..................................................18

# **Table of Authorities**

Page(s)

**Cases**

Kumho Tire Co. v. Carmichael
    526 U.S. 137 (1999) .................................... 5

Daubert v. Merrell Dow Pharm., Inc.,
    509 U.S. 579 (1993) ................................. 5, 6

United States v. 14.38 Acres of Land,
    80 F.3d 1074 (5th Cir. 1996) .......................... 6

United States v. Alatorre,
    222 F.3d 1098 (9th Cir. 2000) ........................ 17

United States v. Batton,
    602 F.3d 1191 (10th Cir. 2010) ....................... 14

United States v. Bighead,
    128 F.3d 1329 (9th Cir. 1997) ....................... 7, 8

United States v. Brooks,
    610 F.3d 1186 (9th Cir. 2010) ........................ 10

United States v. Gillespie,
    852 F.2d 475 (9th Cir. 1988) ..................... 13, 14

United States v. Hankey,
    203 F.3d 1160 (9th Cir. 2000) ............ 6, 7, 16, 18

United States v. Hitt,
    473 F.3d 146 (5th Cir. 2006) ......................... 14

United States v. Johnson,
    860 F.3d 1133 (8th Cir. 2017) ....................... 7, 8

United States v. Romero,
    198 F.3d 576 (7th Cir. 1999) ......................... 14

United States v. Sioux,
    362 F.3d 1241 (9th Cir. 2004) ......................... 8

United States v. Taylor,
    239 F.3d 994 (9th Cir. 2001) ................. 10, 11, 13

United States v. Telles,
    6 F.4th 1086 (9th Cir. 2021) ...................... 7, 14

United States v. Whitted,
    11 F.3d 782 (8th Cir. 1993) ........................... 9

**Rules**

Fed. R. Evid. 702.................................................... 5, 6

Fed. R. Evid. 704(b).................................................. 15

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Defendant John Jacob Olivas ("defendant") used his position and

4  power as a federal law enforcement agent to sexually abuse two of his

5  intimate partners and prevent them from reporting violence to law

6  enforcement.  Defendant's abuse of his federal law enforcement

7  authority violated the victims' constitutional rights: namely, their

8  rights to liberty and bodily integrity.

9      At trial, the government intends to introduce expert testimony

10  from Dr. Janine S. Shelby, Ph.D, to explain primarily to the jury why

11  victims of sexual abuse may behave differently from common sense

12  expectations.  The government has provided defendant with (1) a four-

13  page July 8, 2019 expert notice with accompanying 25-page curriculum

14  vitae for Dr. Shelby; (2) a 25-page October 13, 2019 expert report

15  that provides detailed explanations to the opinions in the expert

16  notice and cites to various publications and manuals, among other

17  things, and (3) over 1,200 pages of materials listed in Dr. Shelby's

18  curriculum vitae.

19      Dr. Shelby is a trauma psychologist, with over 20 years'

20  experience helping victims of sexual assault.  She began her career

21  as the Clinical Director of the Santa Monica-UCLA Rape Treatment

22  Center, where she oversaw adult outpatient psychotherapy services,

23  school-based education and rape prevention programs, and emergency

24  crisis response systems for sexual assault survivors.  Dr. Shelby is

25  expected to offer her professional opinions as to the experiences and

26  characteristics of victims and perpetrators of sexual assault and

27  trauma to help account for how such victims respond and react to such

28  trauma.  Dr. Shelby will <u>not</u> testify about the application of her

opinions to the facts of this case, whether the victims are credible, or whether their behavior is consistent with the behavior of other victims of sexual abuse.

Defendant now moves in limine to exclude all of Dr. Shelby's testimony. ("Motion," Dkt. 83.)  Relying on nearly identical objections, defendant argues that seven of the noticed topics, which relate to characteristics of victims experiencing intimate partner violence, are excludable under Rules 701-704 as outside the need for expert testimony, outside of Dr. Shelby's expertise, and unduly inflammatory under Rule 403.  (Mot. at 7-12.)  Defendant does not, however, challenge the relevance of these topics under Rules 401 and 402.  Defendant's relevance challenge is limited to two specific topics, which relate to Dr. Shelby's anticipated testimony about the perpetrators of intimate partner violence.  (Mot. at 5-7.)  Fatal to defendant's Motion, his challenge appears to focus exclusively on the July 8, 2019 expert notice without any consideration whatsoever to the 25-page October 13, 2019 expert report or the over 1,200 pages of supporting presentation and other materials provided.  For the reasons set forth in this opposition, the Court should deny defendant's Motion.

## II.  BACKGROUND

In July 2019, the government sent defendant a four-page letter providing notice that it intended to call either in its case-in-chief or in rebuttal Dr. Janine S. Shelby, Ph.D.  (Mot., Ex. A.)  The government noticed nine specific topics, seven of which relate to common characteristics of victims experiencing intimate partner violence and two of which relate to common traits of perpetrators of such violence.  The noticed topics included, in sum:

2

(1)   common responses victims have to sexual assault and the reasons why victims do not report or report domestic violence in piecemeal fashion;

(2)   the influence of various factors, such as cultures, mental health, and family dynamics on how victims respond to sexual assaults and why that may cause victims to remain silent;

(3)   the roles that power imbalances and control dynamics play in interpersonal relationships and how victims may respond to sexual assault;

(4)   the roles that stigma and a sense of shame may play in how victims interact with their abusers;

(5)   reasons why victims of sexual assault may delay or forego reporting, including a desire to avoid retaliation or stigmatization and dissociative coping mechanisms, such as a desire to re-interpret sexual assaults as consensual acts to avoid facing the reality of an abusive relationship;

(6)   reasons why victims of sexual assault may remain in an abusive relationship despite continuing to suffer at the hands of the abuser;

(7)   coping mechanisms for victims of assault, including denial, wishful thinking, and avoidance;

(8)   characteristics shared by domestic violence perpetrators, including mental health or personality disorders, acceptance of male dominance ideology, narcissism, and sexual arousal linked to aggression or violence; and

(9)   typical methods by which some perpetrators of domestic violence and sexual assault gain and maintain power and

control over victims, including by creating some form of dependency, isolating the victim from family and friends, a gradual escalation in abuse, and undermining the victim's sense of self-esteem.

(Id.)  The government also provided defendant with Dr. Shelby's 25-page curriculum vitae.

The government further supplemented this notice in February 2020 when it produced a detailed 25-page October 13, 2019 report by Dr. Shelby identifying all of the materials she reviewed in support of her opinions and a thorough recitation of her opinions and the bases for them, with extensive citations to her own personal experience as well as research studies in her field.  (Ex. 1 ("Shelby Report").) Defendant does not cite to the Shelby Report when objecting to the introduction of her opinions, instead referring only to the four-page notice the government sent in July 2019.

On July 7, 2021, in response to defendant's supplemental discovery request for materials from Dr. Shelby's curriculum vitae, the government produced over 1,200 pages of presentations, trainings, and other materials prepared by Dr. Shelby reflecting some of her work in this space.[1]

---

[1] The government initially produced this material on July 7, 2021 without Bates numbering in order to provide it to counsel sufficiently in advance of the motion in limine deadline.  This material was then re-produced with Bates numbers USAO_100860-102100 on October 1, 2021 to current defense counsel.

1    **III.  ARGUMENT**[2]

2         **A.    Legal Standard**

3         Federal Rule of Evidence 702 governs the admission of expert

4    testimony.  It is based on the recognition that "[a]n intelligent

5    evaluation of the facts is often difficult or impossible without the

6    application of . . . specialized knowledge."  Rule 702, Adv. Comm.

7    Note.  Rule 702 provides:

8         A witness who is qualified as an expert by knowledge,
          skill, experience, training, or education may testify in
9         the form of an opinion or otherwise if: (a) the expert's
          scientific, technical, or other specialized knowledge will
10        help the trier of fact to understand the evidence or to
          determine a fact in issue; (b) the testimony is based on
11        sufficient facts or data; (c) the testimony is the produce
          of reliable principles and methods; and (d) the expert has
12        reliably applied the principles and the methods to the
          facts of the case.

13

14   Fed. R. Evid. 702.

15        In Daubert, the Supreme Court adopted a flexible test for

16   determining whether to admit scientific expert testimony under Rule

17   702.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 588 (1993).

18   The Supreme Court later extended Daubert to apply to "technical or

19   other specialized knowledge" in Kumho Tire Co. v. Carmichael,

20   526 U.S. 137, 147 (1999).  However, Kumho Tire rejected the

21   proposition that the Daubert factors should be rigidly applied,

22   stating instead that those factors "may or may not be pertinent in

23   assessing reliability, depending on the nature of the issue, the

24   expert's particular expertise, and the subject of his testimony."

25   Kumho Tire, 526 U.S. at 138.

26

27   _____

28        [2] The government incorporates by reference the additional
     factual and procedural background set forth in the government's
     motion in limine No. 1 filed on July 19, 2021. (Dkt. 80.)

                                    5

While <u>Daubert</u> directs trial courts to serve as "gatekeepers" by excluding testimony that is genuinely unreliable, the gatekeeper role "is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702, Adv. Comm. Notes (quoting <u>United States v. 14.38 Acres of Land</u>, 80 F.3d 1074, 1078 (5th Cir. 1996)).  Indeed, <u>Daubert</u> made clear that "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  <u>Daubert</u>, 509 U.S. at 595.  Further, the Ninth Circuit has stated that Rule 702 should be "construed liberally," as a rule of inclusion and not of exclusion.  <u>United States v. Hankey</u>, 203 F.3d 1160, 1168-69 (9th Cir. 2000) (testimony by expert on gang activity properly admitted as specialized knowledge where expert had extensive personal observations of gangs; "Rule 702 works well for this type of data gathered from years of experience and special knowledge").

**B.  Dr. Shelby's Opinion on Common Characteristics of Victims Is an Appropriate Subject for Expert Testimony**

    1.  <u>Dr. Shelby's Testimony on Sexual Abuse Will Help the Jury Understand the Evidence and Determine Facts in Issue</u>

Dr. Shelby's proposed testimony satisfies Federal Rule of Evidence 702 and should be admitted because it is relevant, reliable, the proper subject of expert testimony, and not unfairly prejudicial. Defendant does not dispute the relevance of the first seven noticed topics of Dr. Shelby's testimony, which all relate to common traits and key contexts for understanding victims of intimate partner violence, including coping mechanisms, the role of power imbalances and control, and the reasons for why a victim may at first deny or

minimize the abuse or delay reporting it to the authorities.  (Shelby Report (Topics 1-7).)  Instead, defendant argues that because these shared traits of victims are "common" they must therefore be "common knowledge," and thus do not require expert testimony for the jury to understand.  (Mot. at 7-12.)  Defendant further argues that Dr. Shelby's testimony about victim behavior would serve only to "bolster" the credibility of the victims.  (Id.)  Defendant is incorrect.

The Ninth Circuit and other Courts of Appeals have routinely affirmed the admission of expert testimony in cases involving sexual abuse, including child abuse, where such testimony is necessary to explain the relevance of conduct or behavior that is not obvious to those unfamiliar with the context.  See, e.g., United States v. Halamek, 5 4th 1081, 1087-89 (9th Cir. 2021) (affirming admission of expert testimony on behaviors commonly associated with sex offenders); United States v. Bighead, 128 F.3d 1329, 1330 (9th Cir. 1997), overruled in part by Kumho as discussed in Halamek, 5 4th at 1088; see also United States v. Telles, 6 F.4th 1086, 1097-98 (9th Cir. 2021) (affirming admission of behavioral expert in child abuse case) (citing favorably United States v. Johnson, 860 F.3d 1133, 1140-41 (8th Cir. 2017) (affirming admission of intimate partner violence expert in sexual abuse case)).

In Bighead, the government called a rebuttal expert witness to explain common (but not commonly understood) behaviors of abuse victims after the victim's ability to recall and to recount the incidents of sexual abuse and delay in reporting the abuse had been challenged on cross-examination.  Bighead, 128 F.3d at 1330.  The Ninth Circuit held that such opinion testimony was appropriate

because it was based on observations of typical characteristics of victims of child abuse draw from years of interviews and that it would assist the jury because "it rehabilitated (without vouching) for the victim's credibility after she was cross-examined about the reasons she delayed reporting and about the inconsistencies in her testimony." Id. at 1331. The Ninth Circuit affirmed the use of such expert testimony in the government's case-in-chief in Halamek, where the Ninth Circuit noted that it was conforming to the consistent holding across multiple circuits that expert testimony in this area in abuse cases was appropriate, so long as it did not cross the line into opinions about the credibility or specific behaviors of the victims in the case. Halamek, 5 4th at 1087-89.

While these cases primarily relate to child abuse, there is no reason to conclude that similar testimony would be unhelpful in cases involving adult sexual abuse. Testimony about victims in sexual abuse cases is helpful to finders of fact because it helps illustrate "[r]egardless of the victim's age, . . . how individuals generally react to sexual abuse -- such as not reporting the abuse and not attempting to escape from the abuser," which in turn "helps jurors evaluate the alleged victim's behavior." Johnson, 860 F.3d at 1140. Indeed, the rules are frequently the same across child and adult sexual abuse cases, and the Ninth Circuit relied on Johnson in its recent published opinion on this issue in Telles. 6 F.4th at 1097. Congress for example in both types of cases has permitted a wide range of propensity evidence to be admitted. Compare Federal Rule of Evidence 413 with Rule 414; see also United States v. Sioux, 362 F.3d 1241, 1244 n.4 (9th Cir. 2004) ("We follow decisions interpreting Rule 414 in cases interpreting Rule 413.").

As these opinions recognize, victims of abuse -- children and adults -- are subject to unique pressures, and individuals involved in abusive relationships often behave in a manner that would be surprising to those who have not themselves been exposed to such situations.  Thus, an expert is both necessary and appropriate because the experience of such victims is beyond the ordinary experience of the typical trier of fact.  So long as the expert does not impermissibly "vouch" for the victim by, for example, diagnosing the victim with sexual abuse or expressing an opinion that sexual abuse has in fact occurred, the testimony does not necessarily invade the jury's exclusive responsibility to determine the credibility of witnesses.  See United States v. Whitted, 11 F.3d 782, 785-86 (8th Cir. 1993).  Dr. Shelby's opinions do not cross that line; therefore, they should be admitted.

      2.     Dr. Shelby's Testimony Will Properly Help the Jury Evaluate the Credibility of the Victims and Other Witnesses

Defendant also argues that the government may not call an expert to "bolster" another witness's credibility.  (Mot. at 7-12.)  This misstates the rule.  Although the government may not call an expert to directly opine on another witness's credibility, it is appropriate -- and commonplace -- for an expert witness to offer testimony that corroborates a witness, explains witness behavior that may appear to affect their credibility, or is otherwise probative of their credibility.  In Bighead, for example, the government's expert was called in rebuttal expressly to counter a particularly vigorous cross-examination of the victim that called into question her credibility because she delayed reporting and made inconsistent statements about her abuse.  The expert's explanation of why these

1  actions are common in intimate partner abuse scenarios did not

2  require the jury to conclude that the victim was credible, but

3  provided important context that would enable the jury to

4  independently evaluate whether to believe the victim.

5       In a different context, the Ninth Circuit approved expert

6  testimony on "the business of prostitution and the relationships

7  between pimps and prostitutes" for the purpose of "plac[ing] other

8  witnesses' testimony into context and provid[ing] the jury a <u>means to</u>

9  <u>assess their credibility</u>."  <u>United States v. Brooks</u>, 610 F.3d 1186,

10  1195-96 (9th Cir. 2010) (emphasis added).  In <u>United States v.</u>

11  <u>Taylor</u>, 239 F.3d 994 (9th Cir. 2001), the Ninth Circuit held that

12  expert testimony about the relationship between prostitutes and their

13  pimps was admissible to aid the jury in evaluating the credibility,

14  including to explain why a child prostitute may not have testified

15  truthfully about the relationship with her pimp in prior proceedings.

16  <u>Id.</u> at 998.

17       The government anticipates that defendant will attack the

18  credibility of the victims and witnesses in this case based on, among

19  other possibilities, arguably inconsistent statements, a failure to

20  report close in time to the assaults, and early efforts to minimize

21  the abuse to friends and family.  Dr. Shelby's explanatory testimony

22  will help the jury place the experiences and conduct of the victims

23  into context, and give them appropriate means to evaluate their

24  credibility.  Such expert testimony has been repeatedly approved by

25  the Ninth Circuit and other courts, and should be admitted here too.

26

27

28

    3. <u>Dr. Shelby's Opinions Are Based on Sufficient Facts and Data</u>

  Defendant also argues that Dr. Shelby's opinions fail to satisfy Rule 702 because the government's notice fails to sufficiently identify how she has formed her conclusions.  Specifically, defendant argues that Dr. Shelby should have to identify her specific sample size of cases and how many of those cases were substantiated.  (Mot. at 7-12.)  That is not the standard.

  First, defendant's objection appears based exclusively on the four-page notice letter that the government provided in July 2019, not Dr. Shelby's 25-page expert report that the government produced in February 2020 or the additional materials produced in July 2021.  (<u>Compare</u> Mot., Ex. A, <u>with</u> Shelby Report.)  Dr. Shelby's Report explains that she is Clinical Director of the Santa Monica-UCLA Rape Treatment Center, the Director of Training and Lead Forensic Interviewer in the child advocacy service at Harbor-UCLA Medical Center, and the Founder/Director of Harbor-UCLA's Child Trauma Clinic.  (Shelby Report at 1.)  At Harbor-UCLA, Dr. Shelby taught and supervised psychology and psychiatry trainees in trauma-focused diagnosis and treatment.  (<u>Id.</u>)  She has 50 peer-reviewed presentations and publications, as well as in more than 30 additional publications, and her work has focused on research-based approaches to clinical care of trauma survivors.  (<u>Id.</u>)  She has been licensed in the State of California since 1997.  (<u>Id.</u>)

  Dr. Shelby's Report expressly cites her own experience treating patients along with 14 different reference citations, including multiple surveys of victims of domestic violence to support her own conclusions.  (<u>See, e.g.</u>, Shelby Report at 2 (citing Smith, S.G.,

Zhang, X., Basile, K.C., Merrick, M.T., Wang, J., Kresnow, M., & Chen, J., THE NATIONAL INTIMATE PARTNER AND SEXUAL VIOLENCE SURVEY (NISVS): 2015 DATA BRIEF – UPDATED RELEASE, National Center for Injury Prevention and Control, Centers for Disease Control and Prevention (2018)).) Defendant cites to no case law -- and the government is aware of none -- requiring an expert in this area of the law to identify exactly how many patients they have treated over a 20-year career.  It is enough that she has the practical and academic experience necessary to render the opinions she is offered to give in this case.  See, e.g., Halamek, 5 F.4th 1081 at 1088 (affirming introduction of expert testimony in an abuse case based on expert's "[e]xtensive experience interviewing victims").

### C.   Dr. Shelby's Opinion on Common Characteristics of Perpetrators Is Also Relevant and Based on Her Experience

Defendant also objects to topics eight and nine, which relate to common traits of perpetrators of domestic violence, on the grounds that such testimony is irrelevant and outside the scope of Dr. Shelby's experience.  Both arguments lack merit.

#### 1.   Testimony about Perpetrators is Relevant

Topics eight and nine of the expert notice, which are more fully explained in Dr. Shelby's expert report (Shelby Report at 21-25) are relevant because a response by a victim experiencing intimate partner violence should not be viewed in isolation.  The actions that trigger responses also matter, especially when they may in some instances appear innocuous, but are designed to impact a victim.  As Dr. Shelby explains in her report, for example, "several studies reveal that psychological aggression is the most prevalent form of [intimate partner violence]" (Shelby Report at 22 (citing sources)) and that

victims of intimate partner violence face various type of "coercive control" (id.).  Just as Dr. Shelby's testimony can help the jury understand how a victim might respond, it makes sense that she should be able to testify about the inputs and how they can be used to affect victims.

Topics eight and nine, which relate to common traits of perpetrators of intimate partner abuse and how they shape their victims, do not resemble the "criminal profile" testimony that defendant argues was excluded in United States v. Gillespie, 852 F.2d 475, 480 (9th Cir. 1988).  (Mot. at 6.)  There, the government called a clinical psychologist to rebut testimony by a defendant that he "could not have molested the child."  The Ninth Circuit ruled -- not on expert testimony grounds but on character evidence grounds -- that the defendant had not put his character into issue, and thus the testimony had low probative value and was highly prejudicial. Gillespie, 852 F.2d at 480. Here, Dr. Shelby's testimony is not about defendant's character, or the "profile" of a domestic abuser, but about commonly misunderstood behaviors used by those engaging in intimate partner abuse that may appear innocuous on their face (expressions of love while trying to exert control), but are designed to make it difficult for victims to leave.  (Shelby Report at 21-25.)

Dr. Shelby's testimony is more closely analogous to common expert testimony on "grooming," which is routinely admitted in child abuse cases.[3]  An explanation of grooming behavior is properly

_____

[3] In that context, "'grooming' children for sexual abuse" can include "giving a child gifts and support, treating a child as special, isolating a child from his/her social support, [and] gradually increasing sexually explicit talk about sex through jokes" and the result of the perpetrator's actions is a child is "gradually

*(footnote cont'd on next page)*

admitted because behavior "such as cuddling and paying special
attention to [the victim]--that could be innocent parental behavior,
could actually have been part of his plan to engage in illicit sexual
activity."  Id.  The Ninth Circuit in Halamek, approved introducing
expert testimony on grooming, citing as persuasive other circuits'
reasoning that such testimony "illuminates how seemingly innocent
conduct could be part of a seduction technique."  Id. at 1088
(streamlined) (citing United States v. Romero, 198 F.3d 576, 585 (7th
Cir. 1999) ("[T]here is no question that allowing [expert testimony
on modus operandi of modern child molesters] was generally proper
because his testimony was helpful to the jury in understanding how
child molesters operate—something with which most jurors would have
little experience."); United States v. Batton, 602 F.3d 1191, 1201
(10th Cir. 2010) (permitting testimony that sex offenders could be
"well-respected individuals in a community who often use their
positions to groom their victims into trusting them" and that this
"specialized information may very well be beyond the knowledge of any
jurors"); United States v. Hitt, 473 F.3d 146, 158-59 (5th Cir. 2006)
("We hold that the admission of the testimony regarding typical
behavior of child molesters was not an abuse of discretion.")).

    The modus operandi of intimate partner abusers toward their
victims is similar.  Dr. Shelby explained in her report for topic
nine, for example, that "[c]oercive control includes attempting to
limit or prevent the victim's contact with family or friends, making
decisions for the victim, monitoring or demanding to know what the
victim is doing, the perpetrator threatening to hurt him/herself,

_____

desensitize[ed] . . . to touch."  Halamek, 5 4th at 1086 (describing
expert notice) (internal quotation and citation omitted).

14

. . . taking steps to prevent the victim from leaving," etc.  (Shelby Report at 22.)  The government anticipates testimony by a victim that she believed, based on defendants statements and her interactions with him, that defendant tracked her movements.  The government also anticipates victim testimony that defendant would park his car behind hers to prevent her from leaving.  Dr. Shelby's testimony is relevant and would be useful to the jury to consider how the victim responded to such inputs, and would also be useful to understand what a perpetrator can accomplish by taking such actions.  This is relevant to the jury's determination of the case by understanding how victims respond to defendant's actions that he could track them and prevent their movement and ultimately prevent them from reporting his abuses.

Defendant cites generically to "Rule 704" in the title of his motion and throughout, but makes no arguments as to why Dr. Shelby's noticed testimony may violate the Rule.  (See, e.g., Mot. at 2, 4, 5, and 8.)  Under Rule 704(b) of the Federal Rules of Evidence, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or a defense."  Fed. R. Evid. 704(b).  Dr. Shelby's testimony will not violate Rule 704(b) because she will not testify as to any ultimate issue, including, for example defendant's mental state.  She will also not opine as to any specific mental state of the victims in this case.  Dr. Shelby is expected to testify about general characteristics of abuse victims -- how and why they typically do not report these crimes or try to escape their abusers -- and their perpetrators -- how they groom their victims and create a culture that makes the victim doubt themselves and whether they will be believed.  This testimony will

15

aid the jury in its own assessment of the victims' and defendant's behavior in this case.

For all the reasons discussed above, Dr. Shelby's testimony resembles the kind of expert testimony routinely admitted in abuse cases because it will help the jury understand the circumstances that are unique to intimate partner abuse without crossing the line into vouching or opining on any specific mental state in this case.

### 2.   Dr. Shelby is Qualified

Defendant also argues that Dr. Shelby's experience interviewing victims of abuse does not make her qualified to opine about traits of perpetrators unless she has also interviewed them.  This argument was squarely rejected in Halamek.  Halamek asserts that Blackwell's experience interviewing children did not qualify her to testify about the behavior of abusers, because the experts interviews with the victims included "statements about the behavior of their abusers. . . . Extensive experience interviewing victims can qualify a person to testify about the relationships those victims tend to have with their abusers."  Halamek, 5 F.4th at 1088.

### D.   Dr. Shelby's Testimony Is Not Unfairly Prejudicial

Finally, defendant argues that all of the noticed topics of Dr. Shelby's testimony run afoul of Rule 403 because they are highly "inflammatory."  (Mot. at 6, 8, 9, 10, 11, 12.)  Rule 403 provides a court may exclude evidence -- even if relevant -- "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Unfair prejudice is defined as having an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Hankey, 203 F.3d at 1172.

As discussed extensively above, the Ninth Circuit has repeatedly approved of expert testimony substantially identical in nature to that of Dr. Shelby.  There is little risk of unfair prejudice to defendant.  The jury may or may not conclude that the victims are credible in this case even if they accept and understand Dr. Shelby's opinions about how intimate partner violence makes it difficult for victims to report.  This, even if the jury fully credits her testimony, because she is providing background information and hypothetical testimony about similar situated typical actors, the jury may conclude that either the victims or defendant are atypical, and that her testimony does not apply to them.

Finally, to mitigate any risk of prejudice, the government intends to propose Ninth Circuit Model Criminal Jury Instruction No. 4.14, cautioning jurors that they should treat expert testimony like any other testimony, and are free to accept or reject it.  In light of the inferences the jury will have to draw independent of Dr. Shelby's testimony, the jury instruction cautioning jurors against simply accepting Dr. Shelby's testimony because she is an expert, and substantial Ninth Circuit case law supporting the admissibility of similar testimony, Rule 403 does not bar Detective Reed's testimony

### E.    No Daubert Hearing is Required

Although defendant has challenged the bases of Dr. Shelby's opinions, defendant has not asked for a Daubert hearing.  No such hearing is necessary in this case.  Trial courts are not compelled to conduct separate, pretrial Daubert hearings to discharge their gatekeeping duties outside the presence of the jury.  United States v. Alatorre, 222 F.3d 1098, 1102-05 (9th Cir. 2000).  Here, defendant's challenge was based on only the four-page notice provided

1   by the government, not Dr. Shelby's 25-page report, which fully and

2   completely sets forth her opinions and their bases, including

3   citations to extensive research studies and other relevant

4   literature.

5       Relying on the inherent flexibility of the <u>Daubert</u> standard, as

6   explained in <u>Kumho</u>, the Ninth Circuit has made clear that specific

7   <u>Daubert</u> factors have no application to an expert whose expertise is

8   based on training and experience, rather than the application of a

9   specific methodology.  <u>See Hankey</u>, 203 F.3d at 1169 (holding that

10  <u>Daubert</u> factors "simply are not applicable to this kind of testimony,

11  whose reliability depends heavily on the knowledge and experience of

12  the expert, rather than the methodology or theory behind it.").  Dr.

13  Shelby's testimony is based on his 25 years of experience treating

14  victims of intimate partner violence.  The government has also

15  provided defense in July and October 2021 with Dr. Shelby's five-year

16  record of forensic testimony, with citations to cases and whether she

17  was retained by plaintiffs or defendants.  Therefore, a <u>Daubert</u>

18  hearing is unnecessary to determine the reliability of her testimony

19  because such testimony will be based on her training and extensive

20  experience working with these types of victims.  However, to the

21  extent the Court deems a hearing necessary, Dr. Shelby is ready and

22  available to attend such a hearing.

23  **IV.  CONCLUSION**

24      For the foregoing reasons, the government respectfully requests

25  that this Court deny defendant's amended motion <u>in limine</u> to exclude

26  or limit "sexual assault expert" testimony (dkt. 83).

27

28

                                    18