MEGHAN BLANCO (California State Bar No. 238171)
LAW OFFICES OF MEGHAN BLANCO
28202 Cabot Road, Suite 300
Laguna Niguel, CA 92677
Telephone:  (949) 296-9869
Facsimile:  (949) 606-8988
mblanco@meghanblanco.com

Attorney for Defendant:
JOHN OLIVAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   vs.<br><br>JOHN JACON OLIVAS,<br><br>        Defendant. | Case No. 18-CR-231-JGB<br><br>***OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE NO. 1*** |

TO THE UNITED STATES ATTORNEY'S OFFICE: **Please note** Defendant John

Olivas files the instant Opposition to the Government's Motion in Limine No. 1.

//

//

//

//

//

//

1  |  This Opposition is based on the attached Memorandum of Points and Authorities,

2  |  the files in this case, and any additional arguments or evidence that the Court wishes to

3  |  hear.

4

5  |  Dated: October 28, 2021                    Respectfully submitted,

6

7

8  |  By:___/s/ Meghan Blanco_____

             MEGHAN A. BLANCO

9  |            Attorney for Defendant

Opposition to Government's MIL 1

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Bonsignore v. City of New York*, 683 F.2d 635  (2d Cir. 1982)........................................................ 8

*Gibson v. City of Chicago*, 910 18  F.2d 1510  (7th Cir. 1990)..................................................... 8

*Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138  (3d Cir.  2002).................................................... 10

*Johnson v. Hackett*, 284 F. Supp. 933 (E.D. Pa. 1968)............................................................... 8

*Perez,* 662 F. App'x 495, 497 (9th Cir. 2016),..................................................................... 9

*Screws v. United States*, 325 U.S. 91  (1945). ....................................................................... 7

*United States v. Daly,* 974 F.2d 1215 (9th Cir. 1992),............................................................ 6

*United States v. Dillon*, 532 F.3d 379 (5th Cir. 2008 ............................................................ 11

*United States v. Dorsey*, 677 F.3d 944 (9th Cir. 2012)........................................................... 4

*United States v. Guardia*, 135 F.3d 1326  (10th Cir. 1998))................................................... 10

*United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) ......................................................... 10

*United States v. Vizcarra–Martinez*, 66 F.3d 1006  (1995)..................................................... 5

*West v. Atkins*, 487 U.S. 42, 49 (1988) .................................................................................. 7

**Statutes**

42 USC § 1983............................................................................................................................ 8

18 USC §242............................................................................................................................... 8

FRE 404(b).................................................................................................................................. 6

FRE 413 ..................................................................................................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government seeks to introduce extensive prior bad act evidence against Mr. Olivas stemming from when he was a young, 20-something year old kid in the military, all of the way through the time of the charged offenses, in 2013.  It boldly asserts that every wrong Mr. Olivas allegedly committed in multiple previous relationships should be admitted under Evidence Code sections 403, 404(b) or 413.  The government is wrong.

## II. ARGUMENT

        A. Mr. Olivas's alleged conduct toward K.L. and N.B. during their months-long relationships is neither direct evidence, nor is it inextricably intertwined evidence, that supports the charges in the indictment.

The government seeks to introduce alleged prior bad act evidence involving victims K.L. and N.B. through evidence code section 403, on a theory that it is direct and inextricably intertwined evidence that supports the charges in the indictment.  It asserts that Mr. Olivas exerted control over the women he dated and that he "acted under color of law" for "the length of the relationships."  Specifically, the government claims that every time Mr. Olivas referenced his status as a law enforcement agent during these relationships, he was acting under color of law.

To support this novel (and incorrect) legal theory, the government cites a string of cases that are incongruous to the facts and issues presented in the current matter, but that condoned the prosecution's use of evidence of other acts, i.e., possession of firearms, that "bears directly on the commission of the charged crimes."  *United States v. Dorsey*, 677 F.3d 944, 951–52 (9th Cir. 2012).

*United States v. Dorsey* is one case the government relies upon for this proposition.  (Mot. at 16.).  However, *Dorsey* involved a defendant who was found guilty of witness tampering and discharging a firearm in relation to a crime of violence.

677 F.3d at 948.  In an effort to prove the discharge of a firearm, the government sought to introduce testimony of two witnesses who had seen the defendant with a gun before the relevant shooting.  *Id*. at 951.  The Ninth Circuit upheld the admission of the testimony, as inextricably intertwined, in pertinent part, "[b]ecause the testimony bore *directly* on the commission of the charged crimes."  *Id*. at 952 (emphasis added).  "[E]vidence that Dorsey had a gun of the same or a similar type as the gun used in the shooting . . .  was relevant because it tended to prove that Dorsey had the means to commit the charged crimes and that he was in fact the shooter."  *Id*.

However, *Dorsey* illuminated the difference between finding that evidence is inextricably intertwined and finding that evidence falls under one of Rule 404(b)'s permissible uses.  In determining whether particular evidence is necessary to the prosecution's "coherent and comprehensible story," courts must examine whether the evidence bears directly on the charged crime.  677 F.3d at 952 (internal quotation marks omitted).  "There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)."  *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1013 (1995).

There are two categories of cases in which the Ninth Circuit has found that "other act" evidence is inextricably intertwined with the crime with which the defendant is charged and therefore need not meet the requirements of Rule 404(b).  First, it is sometimes allowed because it constitutes a part of the transaction that serves as the basis for the criminal charge.  For example, in *United States v. Williams,* 989 F.2d 1061, 1070 (9th Cir.1993), the court found that that contemporaneous sales of cocaine and crank by the defendant were inextricably intertwined with the crime with which the defendant was charged: the sale of cocaine.  The *Williams* court noted that "[t]he policies underlying

rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions.' *Williams,* 989 F.2d at 1070 (quoting *United States v. Soliman,* 813 F.2d 277, 278 (9th Cir.1987)).  Thus, when it is clear that particular acts of the defendant are part of, and thus inextricably intertwined with, a single criminal transaction, courts have held that the admission of evidence regarding those acts does not violate Rule 404(b).  That is not the case here.

Second, the Ninth Circuit has allowed "other act" evidence to be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.  This exception is most often invoked in cases in which the defendant is charged with being a felon in possession of a firearm.  For example, in *United States v. Daly,* 974 F.2d 1215, 1216 (9th Cir. 1992), evidence regarding a shoot-out was considered to be "inextricably intertwined" with the charge that the defendant was a felon in possession of a firearm.  The court based its holding upon the fact that "evidence regarding the shoot-out was necessary to put [the defendant's] illegal conduct into context and to rebut his claims of self-defense."  *Id.* Recognizing the difficulty that the prosecution would encounter in proving that the defendant possessed a gun and in rebutting his proffered defense without relating the facts surrounding the commission of the crime, the court observed that "the prosecution is not restricted to proving in a vacuum the offense of possession of a firearm by a felon . . . .. '[The jury] cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'"  *Id.*

The government has cited no cases, and counsel for Mr. Olivas is aware of none, that have supported the government's requested use of prior bad act evidence via evidence code section 403 to show that a person acted "under color of law" during an

alleged sexual assault.  That is because sexual assault under color of law is not a continuing offense that spans the length of a relationship, as the government suggests in its moving papers.

The Supreme Court set the standard for what constitutes an act under color of law in *Screws v. United States*, 325 U.S. 91, 111 (1945).  As the Court in Screws explained, "under 'color' of law means under 'pretense' of law.  Thus acts of officers in the ambit of their personal pursuits are plainly excluded." *Id*. (emphasis added).  The officers in Screws arrested an individual, and then physically assaulted the individual while he was in custody. *See id*. at 92.  In finding that the officers acted under color of law, the *Screws* court held that the assault in question resulted from the officer's power to arrest: "They were officers of the law who made the arrest. . . .  It was their duty under [] law to make the arrest effective." *Id*. at 107-08.

The *Screws* color of law standard has been applied to claims under 42 U.S.C. § 1983, a civil action for deprivation of rights under color of law.  Indeed, many of the subsequent cases interpreting the Screws color of law standard originate in the context of § 1983 claims.  The Supreme Court in *West v. Atkins*, 487 U.S. 42, 49 (1988), in analyzing an inmate's § 1983 claim against a prison doctor, stated that in order to act under color of law, the defendant must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*.  (emphasis added), *citing United States v. Classic,* 313 U.S. 299, 326 (1941) (analyzing predecessor criminal statute 18 U.S.C. § 20).  Thus, a public employee acts under color of law while acting in his official capacity or while exercising his responsibilities pursuant to law. *Id*. at 50 (citations omitted).

Therefore, it is clear that acts committed under color of law must have been in pursuit or within the scope of official duties; the *Screws* and *West* courts

Opposition to Government's MIL 1

carefully point out that purely personal acts are excluded from the scope of § 242 and § 1983.

Following *Screws* and *West*, courts have found that officers did not act under color of law where officers did not act in the performance of their professional duties.  *See Gibson v. City of Chicago*, 910 18  F.2d 1510, 1519 (7th Cir. 1990) (suspended police officer did not act under color of law when he shot and killed victim); *Bonsignore v. City of New York*, 683 F.2d 635, 639 (2d Cir. 1982) (off-duty police officer's shooting was not under color of law, "[officer's] actions were not 'committed in the performance of any actual or pretended duty'"); *Johnson v. Hackett*, 284 F. Supp. 933, 936-37 (E.D. Pa. 1968) (officers' on duty acts– the use of racial slurs– were not under color of state law and not committed in the performance of any actual or pretended duty of policemen).

Here, even if the government's proffered bad acts were true (they are not), they would merely show Mr. Olivas acting in the ambit of his personal pursuits and would not bear on whether Mr. Olivas acted under color of law during the charged sexual assaults. It is therefore inadmissible under 403.

Similarly, alleged acts of violence are not relevant to whether Mr. Olivas sexually assaulted the victims under color of law.  Whether any of the alleged victims subjectively felt like they could not notify law enforcement of his allegedly behavior has no bearing on whether Mr. Olivas acted under color of law during the specific charged events.

//

//

//

/

//

//

### B.  Allegations of Prior Sexual Assaults Should Not Be Admitted Under FRE 413

#### i.   The Government Has Not Met Its Burden of Proof to Introduce this Evidence Before the Jury

The government seeks to introduce evidence of several alleged prior sexual assaults involving multiple women.  Some of these alleged assaults are decades old. Some involved women with whom Mr. Olivas was engaged in contentious court proceedings, where the women complained of numerous misdeeds by Mr. Olivas.  None of these women ever reported prior sexual assaults to law enforcement, family law mediators, social workers, court appointed therapists, or their attorneys.  Introduction of any evidence of prior assaults will necessarily result in side-trials, where the truthfulness of these allegations will be tested.

As a threshold matter, allegations that a prior sexual assault was committed by Mr. Olivas cannot be put before the jury until the Court determines, outside the presence of the jury, that the jury would be permitted to conclude that Mr. Olivas committed each alleged prior sexual assault by a preponderance of the evidence.  *See United States v. Perez,* 662 F. App'x 495, 497 (9th Cir. 2016), holding that "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. [...]"  Thus, the government is required to introduce sufficient evidence for a reasonable jury to find by a preponderance of the evidence that the proffered sexual assaults occurred.  Counsel for Mr. Olivas should be allowed to *voir dire* any proposed witness to these events outside of the jury's presence before they are permitted to testify before the jury.

#### i.   The Proposed Testimony is Unduly Prejudicial

Rule 403 provides that relevant evidence may be excluded, among other reasons, if "its probative value is substantially outweighed by the danger of unfair prejudice."  A

court should pay 'careful attention to both the significant probative value and the strong prejudicial qualities' of [413] evidence." *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998)).  The Ninth Circuit has articulated several factors that district judges must evaluate in determining whether to admit evidence of a defendant's prior acts of sexual misconduct.  These factors are: (1) the acts charged, (3)"the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.  *United States v. LeMay*, 260 F.3d 1018, 1027- 29 (9th Cir. 2001).

In *LeMay*, applying this balancing test, the Ninth Circuit paid particular attention to the fact that "the evidence of LeMay's prior abuse of his cousins was [...] highly reliable." *Id* at 1028.  LeMay had been *convicted* of one of the prior rape charges arising out of one of the admitted prior instances.  *Id.* at 1029.  "To the extent that allowing the evidence permitted a propensity inference, it was an inference based on proven facts and LeMay's own admissions, not rumor, innuendo, or prior uncharged acts capable of multiple characterizations." *Id*.  The appellate court observed that "the extent to which an act has been proved is a factor that district courts may consider in conducting the Rule 403 inquiry." *Id*.  Additionally, in *LeMay*, "about eleven years had passed" between his abuse of his niece and his alleged abuse of the victims in the case at trial.  The gap of twelve years did not *automatically* render the admission an abuse of discretion.  *Id*.

Other Courts have excluded evidence under similar balancing tests due to a lack of "sufficient specificity" in the allegations of prior sexual assault.  *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 157-59 (3d Cir.  2002).  Furthermore, evidence should more often be excluded when there are substantial differences between the prior allegations of sexual assault at the allegations at trial creating factual dissimilarity between the two events.  *Id*. In *Johnson*, the prior bad act occurred "in another teacher's office with that teacher

present, involved an adult co-worker [...] and consisted of a bizarre incident in which Stevens lifted Radwanski off the ground and placed her on his shoulders.  The latter [took place] with no one else present, involved a minor whom Stevens served as a guidance counselor, and allegedly involved Stevens making more direction sexual advances upon a much younger female." *Id*.  These "dissimilarities reduced significantly the probative value" of the prior victim's testimony. *Id*. See, e.g., *Doe ex rel. Glanzer v. Rudy-Glanzer*, 232 F.3d value" of the prior victim's testimony.  *Id*.  *See*, *e.g*., *Doe ex rel. Glanzer v. Rudy-Glanzer*, 232 F.3d

In *United States v. Dillon*, 532 F.3d 379, 387-88 (5th Cir. 2008), the trial court admitted two prior bad acts that occurred close in time to the charged conduct, and that were substantially similar insofar as the defendant was alleged to have used his "official duties" as City Attorney to abuse his victims.  However, other prior bad act allegations were excluded where they were not close in time and where "the sexual assaults were not as related to Dillon's official duties [...] and they occurred more than seven years before the sexual assaults for which he was charged."  *Id*.

Here, the government seeks to introduce evidence from decades ago in circumstances that are dissimilar to the circumstances of the charged events.  The nature of the alleged sexual assaults, the remoteness of some of them, and well as the sheer number of alleged sexual assaults that the government wishes to introduce, would be overly prejudicial and deprive Mr. Olivas of a fair trial.

    ii.    FRE 413 is Unconstitutional

FRE 413 is unconstitutional.  Specifically, by targeting individuals accused of sexual assault and revoking the ordinary protection against propensity evidence, Congress violated equal protection, because propensity evidence is not more reasonable

to admit against those accused of sexual assault than those accused of, for example, acts of terrorism or murder.

Because this discriminatory evidentiary treatment is aimed at diminishing a constitutional and procedural protection of an accused individual, this Court should review FRE 413 under a strict scrutiny standard.  However, even if this is reviewed under rational basis, the categorical discrimination against individuals accused of sexual assault, based upon the nonsensical notion that criminal propensity is more probative in sexual assault cases, also warrants a finding that FRE 413 is unconstitutional.  The application of FRE 413 in this case would be arbitrary, capricious, and irrational.

Federal Rule of Evidence 413 is also unconstitutional on its face and as applied in this particular case.  413 is unconstitutional as it impermissibly undermines a fundamental due process protection against allowing defendants to be convicted through propensity or character evidence that exists in many, if not all, jurisdictions in the United States.  Second, FRE 413 violates the equal protection clause by treating similarly situated defendants differently for irrational reasons.  Specifically, it treats individuals accused of sexual assault different than individuals accused of any other category of crime and strips those individuals of their due process right not to be convicted by propensity evidence, while leaving that right intact for every other individual accused of a different category of crime.

      C.  Mr. Olivas's alleged conduct is not admissible under Rule 404(b) to show motive, identity, intent, absence of mistake, or lack of accident, and if it were admissible under 404, it should be excluded as overly prejudicial.

The government asserts that Mr. Olivas's alleged prior bad acts are admissible under FRE 404(b) to show motive, identity, intent, absence of mistake, or lack of accident.  However, it has not explained why this evidence should be admissible to prove any of these things.  Identity is not at issue, absence of mistake, and lack of accident are

not at issue.  Should Mr. Olivas open the door to any of these issues, then certainly the government may be permitted to offer evidence in rebuttal.  Similarly, this evidence does not bear on motive, and evidence of Mr. Olivas's alleged violence behavior has no bearing on whether he intended to sexually assault anyone under color of law.

As explained above, the evidence is also unduly prejudicial and should be excluded on that additional ground.

### D.  If Mr. Olivas Testifies, The Government May Not Use Third Party Evidence to Impeach

Should Mr. Olivas elect to testify and the government cross Mr. Olivas on alleged, unproven prior bad acts, it should be precluded from calling third party witnesses to impeach Mr. Olivas on these collateral topics.

## III.  CONCLUSION

Based on the foregoing, Mr. Olivas respectfully requests that the Court prohibit the government from using an of the prior bad act evidence for the proffered reasons.


Dated: October 27, 2021            Respectfully submitted,


_____/s/ Meghan Blanco_____
**MEGHAN A. BLANCO**
**Attorney for Defendant**
**JOHN OLIVAS**

Opposition to Government's MIL 1

13