E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ELI A. ALCARAZ (Cal. Bar No. 288594)
Assistant United States Attorney
Deputy Chief, Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6938
     Facsimile: (951) 276-6202
     Email:    Eli.Alcaraz@usdoj.gov
FRANCES S. LEWIS (Cal. Bar No. 291055)
Assistant United States Attorney
Deputy Chief, General Crimes Section
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4850
     Facsimile: (213) 894-0141
     Email:    Frances.Lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 18-231-JGB |
|---|---|
| Plaintiff, | <u>UNITED STATES' SUPPLEMENT IN SUPPORT OF MOTION *IN LIMINE* TO ADMIT ADDITIONAL EVIDENCE CONCERNING WITNESSES M.O. AND C.N. (DKTS. 193, 196); EXHIBIT 2</u> |
| v. | |
| JOHN JACOB OLIVAS," | |
| Defendant. | Trial Date:  November 29, 2022<br>Trial Time:  9:00 a.m.<br>Location:    Courtroom of the Hon. Jesús G. Bernal |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Eli A. Alcaraz and Frances S. Lewis, hereby files a Supplement in Support of its Motion

in Limine to Admit Additional Evidence Concerning Witnesses M.O. and C.N.  (Dkts. 193, 196).

At the October 24, 2022 status conference, after a discussion about the Court's plan to permit the United States to present at trial prior statements by defendant from a September 2015 state change of plea hearing and a continuance for the defense to adjust to the admission of such statements, counsel for the United States let the Court know that it had additional details relevant to the Court's analysis whether to permit M.O. (sometimes referred to as M.H. in other filings) to testify about additional topics.  The Court told counsel for the United States to file the additional information. This filing submits Exhibit 2, which is transcript of an October 2017 interview of M.H.

Dated: October 26, 2022         Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division

                                 /s/*Eli A. Alcaraz*
                                ELI A. ALCARAZ
                                FRANCES S. LEWIS
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pending before the Court is the United States' Motion in Limine to Admit Additional Evidence Concerning Witnesses M.O. and C.N. (Dkts. 193, 196.)  In particular, concerning M.O. the United States seeks to introduce testimony that (1) defendant threatened M.O. with his agency-issued service weapon when they were in her car during an argument and (2) defendant bear hugged her and held her over a pool until she agreed to go on a trip with him.  (Dkt. 196 at 8.)

The United States described M.O.'s prior trial testimony, which included defendant leading M.O. to believe during an argument that law enforcement would not come to her aid if she called 911 because he told the Riverside Police Department to disregard any calls to his residence that day, in its motion in limine.  (Dkt. 196 at 2-3.)  The United States connected the additional requested testimony to trial testimony.  (Dkt. 196 at 3-4.)  The Court had permitted the admission of this testimony because of its similarity to defendant's use of his power and authority to make similar threats to N.B. during their relationship when she also wanted to leave, but defendant would not let her.

The Court should admit the two additional incidents between defendant and M.O. because, now with the benefit of trial testimony, it is clear how they also parallel the testimony of the charged victims and satisfy Rule 404(b).  Admission of the additional incidents will also rebut the mistaken impression created at the last trial that defendant's efforts to stop M.O. from leaving during the pretend 911 call were merely the product of a caring boyfriend. Exhibit 2 contains a transcript of an October 2017 interview with M.O., which provides more detail to the gun incident and the pool

incident.  The additional details, briefly described below, confirm that the testimony is admissible and relevant to show defendant's use of his federal law enforcement power and agency-issued firearm was no mistake.  The gun incident and pool incident -- just as the pretend 911 incident -- show his motive, identify, intent, modus operandi, and lack of accident or mistake.

As the Court knows from the first trial, M.O.'s incident where defendant relied on his federal law enforcement power to intimidate her from calling the police took place in spring 2013.  (RT 12/1/21 at 170-83; see also Ex. 2 at 27-28.)  In M.O.'s October 2017 interview, she explained that defendant brought up that he carried his gun "often" and would "show off" by "tak[ing] his gun and put[ting] it on his lap" and how she was intimidated by it.  (Ex. 2 at 9.)  She figured it was alright because "he was [a] federal agent."  (Ex. 2 at 9.)

In September 2013 approximately 4-6 months after the call incident with M.O., defendant and M.O. were sitting in her car in the driveway of defendant's house.  (Ex. 2 at 34-35.)  Defendant "was sitting in the passenger seat" and M.O. and defendant were talking about marriage and "[w]e ended up getting into an argument and I said that I'm gonna leave."  (Ex. 2 at 35.)  "It was one of those . . . 'You know what? I'm just gonna leave. Get out of my car.'"  (Ex. 2 at 35.)  "[P]er usual, . . . he had his gun on his lap a lot.  He had his gun on his lap and he was like . . . he picks it up and like kinda points it at me to the side and he's like, 'You're not going anywhere.'"  (Ex. 2 at 35-36.)  When asked to confirm details, M.O. said the muzzle was pointed at her, that defendant was in the passenger seat, and she was in the driver's seat.  (Ex. 2 at 36.)

2

M.O. recounted that defendant either said (1) "You're not going anywhere" or (2) "You're gonna die before you're gonna go anywhere." (Ex. 2 at 36.)  They had not been drinking that day.  (Ex. 2 at 36.)

Important for the Court's analysis, M.O. did not call the police "because it's John."  (Ex. 2 at 38.)  She was asked if she would have called the police if the same thing had happened with her boyfriend from 2017 and she said she would have called.  (Ex. 2 at 38.)  She responded, "Yeah," when asked "Was it because [defendant] was a cop and you're afraid of calling the police?"  (Ex. 2 at 39.)  She added, "**I think I was intimidated by the fact that he was . . . a fed.**" (Ex. 2 at 39 (emphasis added).)  "**I thought he had like pull I guess.**"  (Ex. 2 at 39 (emphasis added).)  She even connects her decision not to call the police to the prior call from spring 2013 (which was what she testified about at the first trial) -- "And probably from the prior phone calls.  I mean it just kinda all . . . together started add[ing] up and it was like I didn't think anyone would ever believe anything I had to say."  (Ex. 2 at 39.)  She said, "Exactly," when asked, "At this point you don't call the police because you're afraid the police won't help you cause John's a fed?" (Ex. 2 at 39.)  M.O. said, "[H]e would make things sound like he would turn it against me" and "it's my word against a Fed.  You known that's how I felt.  I was like oh geez.  Like I don't even wanna . . . push the issue because once I do that he's gonna make up a story about me and it you know.  It . . . he's gonna switch it around."  (Ex. 2 at 40.)  The details of this incident show how defendant used his HSI-issued gun against M.O. and how he had over time convinced her that because of his power and position that local law enforcement would not come to her aid.

3

  Concerning the pool incident, it was in the summer of 2013 at defendant's house in Riverside.  (Ex. 2 at 19-20.)  Defendant had previously parked his car behind M.O.'s car or moved the couch in front of the door to prevent her from leaving the house.  (Ex. 2 at 21.)  Defendant wanted to go to New Mexico and wanted M.O. to go with him.  (Ex. 2 at 24.)  They had been dating a few months.  (Ex. 2 at 24.)  M.O. explained, "I think there was always arguments. . . . [W]e were just in an argument about something and I was like you know I don't even want to go. . . . I don't want to be in a car with you for 14 hours or whatever it is. . . . [I]t was the night before and I was telling him like, I don't wanna go."  (Ex. 2 at 24.)  Defendant told her, "No, you're going" and "it just escalated to the point where . . . he picked me up.  Took me to the backyard and then . . . was holding me over the pool."  (Ex. 2 at 25.)  **"I think he bear hugged."**  (Ex. 2 at 25 (emphasis added).)  M.O.'s belief was "you're threatening someone if you're over a pool."  (Ex. 2 at 25.)  As part of this escalation, defendant caused her to scrape her leg "[c]ause like he was like literally dragging me down."  (Ex. 2 at 25-26.)  M.O.'s interpretation was "this guy is completely psychotic."  (Ex. 2 at 26.)  M.O. confirmed defendant "wasn't playful."  (Ex. 2 at 26.)  The pool incident ended because "I think that I had to like actually agree [to go with him] and then it was like, okay."  (Ex. 2 at 30.)

  The additional detail in this supplement on the gun incident and the pool incident support permitting M.O. to expand her prior testimony with details about how defendant abused his power and HSI-issued firearm to intimidate and threaten M.O. to get what he wanted from her.  Such testimony is relevant and admissible to show motive,

4

identify, intent, *modus operandi*, and lack of accident or mistake of defendant concerning the charged assaults.