E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ELI A. ALCARAZ (Cal. Bar No. 288594)
Assistant United States Attorney
Deputy Chief, Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6938
     Facsimile: (951) 276-6202
     Email:    Eli.Alcaraz@usdoj.gov
FRANCES S. LEWIS (Cal. Bar No. 291055)
Deputy Chief, General Crimes Section
Assistant United States Attorney
     312 North Spring Street, 11th Floor
     Los Angeles, California 90012
     Telephone: (213) 894-4850
     Facsimile: (213) 894-0141
     Email:    Frances.Lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 18-231-JGB |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  November 29, 2022 |
| JOHN JACOB OLIVAS, | Location:    Courtroom of the Hon. Jesús G. Bernal |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Eli A. Alcaraz and

///

///

Frances S. Lewis, hereby files its trial memorandum for the retrial of defendant John Jacob Olivas.

Dated: November 26, 2022           Respectfully submitted,

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    SCOTT M. GARRINGER
                                    Assistant United States Attorney
                                    Chief, Criminal Division

                                     /s/
                                    ELI A. ALCARAZ
                                    FRANCES S. LEWIS
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.   INTRODUCTION......................................................1

II.  SCHEDULING MATTERS................................................1

     A.   Trial Estimate..............................................1

     B.   Scheduling Medical Professional Testimony...................2

     C.   Case Agent Testimony........................................3

     D.   Exhibit Stipulations........................................3

     E.   Potential Defense Case......................................4

          1.   Testimony from District Attorney Tara Powell...........4

          2.   Rule 412 Evidence......................................6

          3.   Defendant's Alleged Good Character.....................7

III. PRIOR TRIAL MEMORANDUM AND BRIEFING OF LEGAL ISSUES...............7

IV.  ADDITIONAL LEGAL AND EVIDENTIARY ISSUES...........................8

     A.   Evidence from Defendant's Digital Devices...................8

     B.   Forensic Extractions of N.B. and D.B.'s Devices............10

     C.   Chronology Testimony by Case Agent and Physical
          Demonstrative..............................................11

     D.   Exhibit Reflecting Defendant's Admissions from State
          Court Change of Plea Hearing...............................13

     E.   References to the First Trial..............................14

V.   CONCLUSION.......................................................15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In 2011 and 2012, defendant John Jacob Olivas ("defendant") was a Special Agent with United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), formerly known as "ICE, Office of Investigations."  Instead of using his badge, service firearm, and federal law enforcement power to better his community, defendant used his position and power for his own personal gratification: sexually abusing and attempting to sexually abuse two of his intimate partners and preventing them from reporting his sexual assaults, as well as other acts of violence, to law enforcement.  Defendant's abuse of his federal law enforcement authority violated the victims' constitutional rights: namely, their rights to liberty and bodily integrity.  For two specific sexual assaults of N.B. and one attempted sexual assault of K.L., defendant is charged with three counts of deprivation of rights under color of law, in violation of 18 U.S.C. § 242.

Defendant's first trial on these charges began in November 2021.  On December 15, 2021, this Court declared a mistrial after the jury deadlocked on all three counts.  The retrial is presently set to begin on November 29, 2022.

**II.   SCHEDULING MATTERS**

   **A.   Trial Estimate**

The United States estimates that its case-in-chief will last approximately six to eight court days, including and depending on cross examination, the outcome of proposed stipulations, and whether the Court will permit the pre-admission of exhibits.  At the October 17, 2022 pretrial conference, the Court ruled that the parties'

opening statements could be up to 30 minutes. The United States respectfully requests leave to present a rebuttal case if defendant presents a case and call witnesses.

Except for Jesse Macias, as described below, all the witnesses that the United States may potentially call at the retrial are listed in the Government's Witness List ("Original Witness List") and/or described in the Government's Trial Memorandum ("Original Trial Memo") filed in advance of the first trial on November 26 and 29, 2021. (Dkts. 137, 148.) The United States is still finalizing which of these witnesses it intends to call at the retrial and whether to make any changes to the witnesses called during the last trial or the witness order. The United States may not call every witness on the list and may also call some of the witnesses on the list that were not called at the first trial.

Finally, the United States reserves the right to call additional witnesses not identified in the Original Trial Memo or Original Witness List as warranted by the presentation of the evidence at trial.

**B. Scheduling Medical Professional Testimony**

The United States intends to call two witnesses who are medical professionals: Dr. Jessie Rollins, who treated N.B. after defendant assaulted her in early November 2012, and Dr. Janine Shelby, the government's noticed expert on intimate partner violence. As was permitted at the first trial, the United States respectfully requests that these witnesses be able to testify out of order to prevent any adverse impacts on their patients with scheduled appointments. Specifically, the United States intends to call Dr. Rollins as the first witness of the day on Thursday, December 1, 2022, and Dr.

Shelby as the first witness of the day on Thursday, December 8, 2022, even if another witness is on the stand. The United States has conferred with defense counsel about this issue and as reflected at the October 17, 2022 pretrial conference in this case, defendant does not object.

### C. Case Agent Testimony

As discussed at the October 17, 2022 pretrial conference, the United States anticipates calling the case agent, FBI Special Agent David Staab, twice during its case-in-chief. Agent Staab is expected to testify early in the case about his investigation, including his collection and review of relevant evidence in this case. Agent Staab, however, also interviewed all the victims in this case. Thus, to the extent their credibility is attacked on cross-examination, thereby making their prior consistent statements admissible,[1] the United States intends to recall Agent Staab at the end of its case-in-chief to introduce such statements after the victims have testified. Defense counsel has no objection to Agent Staab testifying twice, as discussed at the October 17, 2022 pretrial conference in this case, and the Court agreed to permit Agent Staab to testify at two points during the United States' case-in-chief.

### D. Exhibit Stipulations

The United States has provided defense counsel a draft exhibit list, including advanced electronic copies of the new exhibits in this case. The parties are presently discussing a stipulation regarding the pre-admissibility of any exhibit that was introduced at

---

[1] The Original Trial Memo set forth the law on the admissibility of prior consistent statements as substantive evidence after cross-examination.

the first trial, as well as a stipulation regarding the authenticity and foundation of the government's exhibits, specifically the exhibits taken from the digital devices, which will streamline the presentation of evidence at trial and obviate the need to call the forensic experts.

### E. Potential Defense Case

Defendant has not provided notice that he intends to rely on any affirmative defenses or present an affirmative case. The United States anticipates that defendant again will rely largely on attacks on the credibility of the victims in this case. The United States also anticipates that defendant may try to introduce one or more of the following pieces of inadmissible evidence at trial:

#### 1. Testimony from District Attorney Tara Powell

On October 19, 2022, the United States filed a Declaration of Deputy District Attorney Tara Powell, née Tara Foy, in support of its motion to introduce defendant's statements at his state change of plea hearing in September 2015. (Dkts. 204, 221.) On October 24, 2022, with trial set to start the following day on October 25, 2022, defendant issued a subpoena[2] to Ms. Powell to appear at trial. During the pretrial conference that afternoon, the Court indicated that intended to grant the government's motion, and trial was continued to November 29, 2022.

Defendant has not reissued a subpoena for Ms. Powell to testify at the upcoming trial on November 29, 2022, or for any documents. Both the United States and the Riverside District Attorney's Office

---

[2] The subpoena was both for testimony and for documents. Defense counsel did not seek approval from the Court for documents, which is required where a defendant lacks the ability to pay and intends to apply for reimbursement. Fed. R. Crim. Pro. 17(b).

4

have asked defense counsel multiple times if she intends to issue a new subpoena to Ms. Powell and have made clear that if so, both entities would move to quash such a subpoena. Defense counsel has not responded.

Deputy District Attorney Tara Powell's testimony would serve no admissible purpose at the upcoming retrial. She did not witness any of the underlying facts in this case and played no role at all in this case until well after N.B. reported the crime in October 2013 and the case was presented to the Riverside District Attorney's Office. She also played no independent role investigating the case, which was handled by the Riverside Police Department, and later the FBI. At most, she is a witness to defendant's statements at his September 2015 state change of plea hearing. But no witness testimony from that hearing is required -- a court reporter transcribed the hearing and has certified her transcript as accurate. Thus, the transcript should be admissible as self-authenticating under Federal Rule of Evidence 902(4).

The United States has also gone to great lengths to sanitize this transcript and other aspects of its case-in-chief to avoid making any reference to the existence of state criminal proceedings. There would simply be no way to introduce any testimony by Ms. Powell without explaining who she is or her role in this case, thereby opening the door to the introduction of the state criminal proceedings.

Trial is also not the proper forum for defendant to collaterally attack his change of plea hearing or his state court convictions. To the extent defendant expects to use Ms. Powell, or anyone else, to relitigate the threshold evidentiary questions about the

admissibility of his statements and whether the September 2015 hearing was, in fact, a guilty plea hearing, that issue has been resolved by this Court and should not be discussed in the presence of the jury.  Both parties submitted declarations in support of their positions on the motion in limine: the United States from Ms. Powell; defendant from Mr. Greenberg, his state attorney.  Defendant did not ask for an evidentiary hearing or the opportunity to cross-examine Ms. Powell as to the statements in her declaration, and this Court has already ruled on the foundational factual questions presented by the competing declarations when it ruled that the hearing was a guilty plea hearing.  (Dkt. 227.)

As this Court held, the federal case is not the proper forum for defendant to collaterally attack the voluntariness of his guilty plea.  (Id. at 14-15.)  If he wishes to take the stand and testify that his admissions were, in fact, false or made under duress, he is free to do so.  But he should not be permitted to call other witnesses to make that implication for him, be they his father, his defense attorney, or the state prosecutor.

### 2. Rule 412 Evidence

The government's unopposed motion to exclude Rule 412 evidence (dkt. 101) was granted at the pretrial conference before the first trial on November 22, 2021.  Nonetheless, at trial, and without prior notice to the victims or compliance with Rule 412(c), defendant introduced testimony about the charged victims' alleged consensual sexual behavior with defendant under Rule 412(b)(1)(B).  To the extent defendant intends to introduce any additional testimony or evidence about the victims' sexual behaviors concerning defendant beyond what was introduced at the first trial, or to ask questions

about any sexual behaviors by the victims with regard to other individuals -- and defendant has given no notice of such intent -- the United States maintains its objection under Rule 412.

### 3. Defendant's Alleged Good Character

The government's unopposed motion to exclude good character evidence (dkt. 81) was granted at the pretrial conference before the first trial on November 22, 2021. At the first trial, defendant called two witnesses who knew him during 2011 and 2012: his oldest son, J.O., and his friend, B.H. Both witnesses testified purely to factual matters, not defendant's character.

To the extent defendant intends to introduce evidence of his good character at the second trial, the United States maintains its prior objection. The United States has also produced the criminal history of defendant's son, J.O., which reflects a recent misdemeanor conviction for domestic violence. The United States reserves the right to introduce such evidence to the extent J.O. testifies again, depending on the content of that testimony and whether it opens the door to the admissibility of his prior criminal conviction.[3]

**III. PRIOR TRIAL MEMORANDUM AND BRIEFING OF LEGAL ISSUES**

The Original Trial Memo set forth the facts as to the overall prosecution and the relevant law for the trial and charges in this case. (Dkt. 137.) The United States incorporates by reference the legal discussion from that memorandum, which anticipates certain of

---

[3] Such a misdemeanor conviction does not bear on truthfulness under Rules 608 and 609. But, to the extent J.O. testifies in a manner that suggests to the jury that he takes domestic violence seriously and he would remember or know if he ever saw his father engage in such behavior, the fact that he himself has been convicted of domestic violence would directly undermine his credibility. As the Court is well aware, credibility is always relevant.

7

the fundamental legal issues in this case, as well as the statement of the charges, the elements, and the facts of this case, all of which were born out at trial.

Specifically, the Original Trial Memo addressed the admissibility of, among other topics: (1) defendant's prior statements; (2) statements to the defendant; (3) medical evidence and testimony; (4) the victims' prior consistent statements; (5) business records, video and photographic records, and records from Facebook and Instagram; and (6) expert testimony, including by Dr. Shelby and by the forensic examiners. Although the parties are meeting and conferring about the possibility of pre-admitting the exhibits that were admitted at the first trial in an effort to streamline the retrial, absent such a stipulation, the United States anticipates that its prior analysis of all of those legal and evidentiary issues will remain applicable at the upcoming retrial.

## IV. ADDITIONAL LEGAL AND EVIDENTIARY ISSUES

In addition to the issues already identified in the Original Trial Memo, the United States anticipates that the following topics could be in dispute at the retrial if the parties are unable to reach agreement:

### A. Evidence from Defendant's Digital Devices

After the first trial had started, the United States learned for the first time that defendant had preserved records from one of his digital devices that he intended to admit at trial even though such materials had never been produced in reciprocal discovery. First, during cross-examination of victim K.L., defendant asked questions about purported text messages between K.L. and defendant in February 2012 after he had attempted to rape her. And second, defendant

8

called a forensic expert, Ernest Koeberlein, who testified that he was given six physical cell phones and a 2015 iPhone backup copy that he understood all came from defendant and that he had reviewed for sexually explicit content.

Despite multiple requests for reciprocal discovery before the first trial, in violation of Rule 16, defendant did not provide any of these materials to the United States before the first trial. After the first trial, the United States renewed its request for reciprocal discovery. In August 2022, defendant provided the United States with:

(1) four Blacklight/Lantern extraction reports in PDF format, identified as follows:

    (a) "blacklight.pdf";

    (b) "Lantern Report_2015-0041_Olivas iPhone.pdf";

    (c) "2014-0004.pdf"; and

    (d) "2015-0041_Olivas iPhone photos.pdf"; and

(2) a .zip file called "2015-0041_blacklight report html_Olivas iPhone.zip"

that reflected extractions conducted in or around August 2015 by Jesse Macias, defendant's Private Investigator, of materials that Mr. Macias represented had been provided by defendant (collectively, "defendant's phone").

The FBI then used a software tool called Axiom to access the contents in a reviewable format. The contents are merely a subset of what would have been on defendant's actual phone from the relevant

9

time period,[4] and thus appear to just be a selection of data as marked by Mr. Macias or another investigator in 2015. All that being said, no party disputes that the data at one point originated on a digital device used by defendant.

The United States has identified numerous additional exhibits from defendant's phone that it intends to introduce at trial and has provided those exhibits to defendant, first by list on October 23, 2022, and then by electronic copy on November 7, 2022 and by supplemental electronic copy on November 25, 2022. The parties are presently discussing a stipulation regarding the authenticity of those exhibits that would obviate the need to call Mr. Macias to the stand at trial to authenticate the extractions or their source.

### B. Forensic Extractions of N.B. and D.B.'s Devices

At the first trial, the United States introduced numerous exhibits that were text messages extracted from: (1) an iPhone 4s belonging to victim N.B; (2) an iPhone 4 belonging to victim N.B.'s mother, D.B.; and (3) a Motorola Droid cell phone and accompanying SD card belonging to victim N.B. The United States laid the foundation for the admissibility of these exhibits and the metadata reflected therein in three ways: (1) the testimony of Agent Staab, who reviewed the devices, (2) the testimony of N.B., who was a party to all of the relevant messages, and (3) the testimony of Murrieta Police Department Detective Paul C. Johnson, Computer Forensic Examiner with the Orange County Regional Computer Forensic Laboratory for the FBI,

---

[4] As Agent Staab is anticipated to testify, whole swaths of data categories are missing, like GPS and calendar entries, and the data starts and ends at random time periods, among other aspects that one would expect when reviewing the contents of complete forensic image of a digital device.

10

who performed extractions of the government's forensic evidence in this case.

Detective Johnson's testimony was necessitated out of an abundance of caution because defendant would not stipulate to the sufficiency of the foundation that was laid by Agent Staab and N.B. The parties are presently negotiating a stipulation that would obviate the need for Detective Johnson's testimony at the retrial.

The United States had also previously noticed James M. Watkins, Jr., a retired FBI Computer Analysis Response Team Examiner. Now that the United States is in possession of data from defendant's phone through the program tool Lantern, the United States has supplemented its expert notice to include opinions by Mr. Watkins about how Lantern organizes recovered text messages.

### C. Chronology Testimony by Case Agent and Physical Demonstrative

The forensic evidence from defendant's phone has also aided in the case agent's ability to reconstruct a forensic timeline of defendant's relationship with N.B. The FBI has prepared a calendar of March through December 2012 identifying the dates when, based on cell tower information from N.B.'s phone and communications on N.B. and defendant's phone, victim N.B. appeared to be in Riverside, California. The calendar also identifies the dates when the two appeared to be in the same geographic location outside of Riverside, California, as well as the window of time when, according to defendant's training records, he was in Georgia for training while N.B. remained in Riverside, California.

In explaining how Agent Staab was able to populate the contents of the calendar, he should be permitted to testify as to the contents

11

Case 5:18-cr-00231-JGB Document 232 Filed 11/26/22 Page 15 of 18 Page ID #:3656

of the specific text communications that enabled him to conclude where victim N.B. and defendant were on particular dates. Agent Staab should also be permitted to reference statements made to him by the victim in her interviews for the purpose of showing his investigative steps. For example, victim N.B. has never been able to provide an exact date of either of the charged rapes (indeed, she has expressly tried not to avoid creating an "anniversary" for these traumatic experiences to relive each year), but she was able to provide the FBI with key descriptors like the evening's heat, a broken bathroom fan, and an abrasion to her arm, among others. Agent Staab should be permitted to explain why he identified messages about these topics as significant.[5]

    This calendar will aid the jury in understanding the context of the text messages between defendant and N.B. by providing an easy visual reference to whether N.B. would have been in Riverside, California, at the time of the conversation, or back at her parents' house in Simi Valley. The United States has prepared two physical enlargements of this calendar to have on easels during Agent Staab's testimony so that the jury can have the benefit of the calendar while

---

[5] Most of these messages are admissible anyways through various hearsay exceptions, as outlined in the Original Trial Memo, e.g., as statements by defendant, as statements by N.B. reflecting her then-existing mental, emotional, or physical condition, or her present sense impression, or an excited utterance. However, to the extent no such exception applies, or the statements are being offered solely for the effect on the listener, the Court should nonetheless permit Agent Staab to introduce such statements and explain their relevance to the investigation because the United States bears the burden of proving that the events in question occurred on or about the dates as charged in the Indictment. If necessary, the Court can give a limiting instruction to the jury that the evidence is being introduced solely for the purpose of showing Agent Staab's course of conduct in the investigation, and not for the truth of a specific statement.

12

reviewing the text messages themselves on the computer screens.  Such physical demonstratives are admissible at the Court's discretion if they would aid in the jury's understanding of the evidence in this case, which this calendar undeniably will.  Indeed, at the last trial, defendant himself introduced a September 2012 calendar (Def. Ex. 504) to achieve a similar effect by providing context to the messages and enabling the jury to match days of the week to the events in question.

### D. Exhibit Reflecting Defendant's Admissions from State Court Change of Plea Hearing

As set forth above, this Court has already ruled that the United States can introduce a sanitized version of defendant's statements from his state change of plea hearing that eliminates any reference to the proceeding being a change of plea hearing.  The parties are meeting and conferring about the exact format by which the introduction of those admissions will occur.

The complete transcript itself as certified by the court reporter is currently Government's Exhibit 98 and would be admissible as a self-authenticating certified court record under Rule 902(4). Thus, the traditional way of introducing statements from a transcript would be to simply admit the relevant pages through the case agent or another witness familiar with the records.  As discussed in the government's motion, however, that would necessitate showing the jury that these statements were made as part of a state court change of plea hearing.  Therefore, as proposed in the motion, and as approved by the Court, the United States proposed introducing a summarized version of these statements that maintains their accuracy, but scrubs them of any reference to a criminal change of plea hearing.

The United States has provided defendant with a proposed stipulation containing Exhibit 98A, which sets forth the summarized statements approved by the Court (i.e., the "defendant previously admitted . . . ") and the parties' agreement that they were derived from the authentic transcripts. To the extent defendant does not agree to these summaries, the United States proposed two alternatives: (1) heavily redacting the transcript, which would maintain the question-and-answer format; or (2) revising the transcript itself to reflect the summarized statements approved by the Court. These alternatives are not as close to what the Court ordered as proposed Exhibit 98A, but they are closer to the original transcript.

The United States remains open to meeting and conferring with defendant on the least objectionable format through which it may introduce these admissible statements, recognizing that defendant maintains his objections to their admissibility in the first place.

### E. References to the First Trial

The parties have conferred and agree that neither the parties nor the witnesses should refer to the first federal trial or the Court's order declaring a mistrial in this case. To the extent a reference is necessary, i.e., to impeach a witness with his or her prior testimony from the first federal trial, the parties agree to refer to the first trial as a "prior proceeding" and would ask that the Court do the same. See, e.g., Ninth Circuit Manual of Model Jury Instructions No. 2.16, Defendant's Previous Trial ("A preferable practice is to avoid all reference to prior trials.")

**V.   CONCLUSION**

The United States respectfully requests leave to supplement this Trial Memorandum, as necessary.